JOHN ULIN (SBN 165524)
Email: julin@troygould.com
AMY STALLING (SBN 316353)
Email: astalling@troygould.com
TROYGOULD PC
1801 Century Park East, 16th Floor
Los Angeles, CA 90067-2367
Telephone:    (310) 553-4441
Facsimile:    (310) 201-4746

Attorneys for Plaintiff
MAFFICK LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAFFICK LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., a Delaware corporation, and Does 1-10, inclusive, <br><br> Defendants. | Case No. <br><br> COMPLAINT FOR: <br><br> (1) DEFAMATION; <br> (2) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; <br> (3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; <br> (4) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; <br> (5) VIOLATION OF § 43(a) OF THE LANHAM ACT; AND <br> (6) VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET. SEQ. <br><br> DEMAND FOR JURY TRIAL |

Plaintiff MAFFICK LLC, a Delaware limited liability company ("Maffick"), for its Complaint against Defendant FACEBOOK, INC., a Delaware corporation ("Facebook"), and Does 1-10, inclusive, hereby alleges as follows:

**THE PARTIES**

1. Maffick is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California.

2. At all relevant times, Maffick has been a single member LLC. Its sole

member is Anissa Naouai ("Naouai"), a United States citizen living in Los Angeles.

3. Maffick is a social media and e-commerce company that focuses on social media optimization and brand development. It operates three social media channels on Facebook and Instagram: "In the Now," "Soapbox," and "Waste-Ed" and engages in e-commerce through one of its social media channels, which allows for direct purchases of products within Facebook and Instagram.

4. Facebook is a corporation organized under the laws of the State of Delaware, with its principal place of business in Menlo Park, California.

5. At all relevant times, Facebook has operated social media platforms through its Facebook and Instagram websites and applications, on which millions of users publish content and engage in commercial activities, including Maffick.

6. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants sued as Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues those defendants by fictitious names. Plaintiff will amend this Complaint to state their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named defendants were responsible in some manner for the acts and transactions alleged in this Complaint and are liable to Plaintiff therefor.

7. Plaintiff is informed and believes, and based thereon alleges, that each defendant is, and at all relevant times herein mentioned was, the agent, servant, employee, alter-ego, instrumentality, representative, co-venturer and/or partner of one or more of the other defendants, and in doing the actions herein alleged, acted within their scope and authority and with the knowledge, consent, approval and ratification of each of the other defendants.

**JURISDICTION**

8. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1337.

**INTRADISTRICT ASSIGNMENT**

9. Venue is proper in the Northern District Court of California because Facebook's terms and conditions require that suit be brought there. Defendant Facebook's headquarters are in

San Mateo County, California and assignment is appropriate to the San Francisco / Oakland division pursuant to Civil Local Rule 3-2(c).

**FACTUAL BACKGROUND**

10. Maffick is a social media company that focuses on social media optimization and brand development. It operates three social media channels on Facebook and Instagram. Maffick also offers e-commerce merchandise for sale over its social media pages. Its revenue is derived from monetization of media content, advertising for branded content that is promoted on its social media channels, and the re-sale of original content that is created for its channels.

11. Maffick's channel "In the Now" is directed toward a community of mindful media consumers and is centered around important, curious and purpose-driven content. It tells stories about social justice, everyday heroism, acts of kindness and doing good where it matters most. Examples of recent stories include a delivery man who received a surprise gift from a customer, a man whose family was killed in a plane crash, and lessons we can learn from indigenous people about connectedness.

12. Maffick's channel "Waste-Ed" focuses on environmental issues and sustainability, both in the content it delivers, and the companies and brands promoted on the channel. Examples of recent stories include an eleven-year-old who recycled nearly one million cans, a trach picking action figure, and the relocation of a one-hundred-year-old tree. Maffick also promotes the sale of environmentally conscious products.

13. Maffick's channel "Soapbox" delivers political opinion and seeks to expose hypocrisy across the political spectrum. Examples of recent stories include an Iraq War veteran relating his experiences, a video of Nelson Mandela responding to a reporter who was critical of him, and a finding that prison sentences are 20% longer for black men than for white men for similar crimes.

14. Maffick's channels are intentionally non-partisan and Maffick does not seek to represent any one point of view. Its mission statement makes clear that there are more than two sides to every story and it actively seeks to produce content that rises above any one perspective to tell stories in a neutral manner that encourages its audience to form their own opinions. Maffick

determines what content to post based on analytical data from CrownTangle and Tubular Labs concerning audience preferences.

15. On May 18, 2020, Facebook contacted Maffick and threatened to shut down all of its social media pages by May 22, 2020, unless Maffick posted a disclosure on all of its accounts stating that Maffick was "a brand of Maffick Media, which is owned and operated by Ruptly GmbH, a subsidiary of RT news."

16. Maffick is not owned or operated by Ruptly GmbH ("Ruptly") and is not a brand of Maffick Media GmbH ("Maffick Media"). Maffick is owned and operated by Anissa Naouai.

17. Ruptly is a part-owner of the inactive German entity, Maffick Media, in which Ms. Naouai owned a 49% interest. Maffick Media no longer does business of any kind.

18. In July 2019, Ms. Naouai formed an entirely new entity known as Maffick LLC, a Delaware company in which neither Maffick Media nor Ruptly has any involvement. While Ms. Naouai chose to continuing using the "Maffick" name for the new LLC, the company is not related to or associated with Maffick Media (or Ruptly). The social media pages at issue were created by Ms. Naouai, are owned by Maffick LLC, and have been continually operated and controlled by her. She has and always has had final editorial control over what she and the staff at Maffick post on those pages.

19. On May 19, 2020, Maffick responded to Facebook, indicating that its pages were actually owned by Maffick LLC, an independent company owned and operated by a United States citizen, and that complying with Facebook's demand that it disclose publicly that it was "owned and operated by Ruptly GmbH, a subsidiary of RT news" would require Maffick to post inaccurate information. Facebook did not respond.

20. Maffick reached out to Facebook again on May 20, 21 and 22 seeking to resolve the situation without being required to post misinformation, but Facebook did not respond to any of those communications either.

21. On May 22, 2020, Maffick was concerned that Facebook would follow through on its threat to shut down its pages completely, so as a temporary, stop-gap measure, Maffick posted the phrase "Affiliated with RT" in the "About section of Soapbox's Facebook and Instagram

accounts, because Soapbox is a channel that posts what can be considered political content. Maffick's intention was to compromise, keep its Facebook pages operating, and engage in further dialogue with Facebook, so that it would not be required to post further inaccurate information on any of its pages. Maffick reached out again to Facebook and again received no response.

22. On June 4, 2020, Facebook publicly announced its plan "to label media outlets that are wholly or partially under the editorial control of their government," and indicated that, "today we're starting to apply labels to those state-controlled media outlets." Facebook explained that it would label state-controlled media entities in order "to provide an extra layer of protection against various types of foreign influence in the public debate ahead of the November 2020 election in the US."

23. According to Facebook, its "definition of state-controlled media extends beyond just assessing financial control or ownership and includes an assessment of editorial control exerted by a government."

24. In determining whether social media pages are under "editorial control by a foreign government," Facebook indicated it considers the following criteria:

> Mission statement, mandate, and/or public reporting on how the organization defines and accomplishes its journalistic mission
>
> Ownership structure such as information on owners, stakeholders, board members, management, government appointees in leadership positions, and disclosure of direct or indirect ownership by entities or individuals holding elected office
>
> Editorial guidelines such as transparency around sources of content and independence and diversity of sources
>
> Information about newsroom leadership and staff
>
> Sources of funding and revenue
>
> Governance and accountability mechanisms such as correctional policies, procedure for complaints, external assessments and oversight boards

25. On June 5, 2020, without reaching out to Maffick beforehand, Facebook published

a notice on the "Page Transparency" section of In the Now, Waste-Ed, and Soapbox, indicating that each page is "Russia state-controlled media" ("the Notice").

26. The Notice now appears on every social media post by In the Now, Waste-Ed, and Soapbox. It also appears on sponsored and e-commerce posts concerning the sale of merchandise over Maffick's social media pages, giving the impression that the products are connected or associated with, or originate from, the Russian government.

27. The Notice is false. Maffick is not controlled operationally or editorially by the Russian government or by Russian state entities or officials.

28. The Notice immediately resulted and continues to result in negative comments from visitors to Maffick's social media pages and viewers of its posts.

29. Maffick was and is understandably concerned about having a false statement that it is "Russia state-controlled media" published on its Facebook pages and on every post that appears on In the Now, Waste-Ed, or Soapbox, and on posts relating to materials sold on the Waste-Ed e-commerce shop. It is also concerned about the harm to its reputation and business relationships and opportunities that the Notice is causing.

30. As a result of these concerns, Maffick wrote to Facebook on June 30, 2020. Maffick informed Facebook that it was owned and operated by Maffick LLC and Anissa Naouai and not by any Russian governmental entity or official. It further detailed why none of Facebook's own criteria support the conclusion that Maffick is "Russia state-controlled media."

31. With respect to Facebook's criteria concerning "mission statement, mandate, and/or public reporting on how the organization defines and accomplishes its journalistic mission," Maffick informed Facebook that its mission statement is laid out in the Maffick Optimization Policy ("MOP"), a commercially sensitive and confidential document that Maffick offered to share with Facebook, subject to appropriate protections against disclosure to third parties. Maffick noted that it is a social media company, not a news outlet. Its focus is social media optimization and brand development. Maffick is intentionally non-partisan and does not seek to represent any one point of view.

32. With respect to Facebook's criteria concerning "ownership structure such as information on owners, stakeholders, board members, management, government appointees in leadership positions, and disclosure of direct or indirect ownership by entities or individuals holding elected office," Maffick reiterated that it is wholly owned by Maffick LLC and that Anissa Naouai is its sole shareholder. No Russian governmental entities or officials own any direct or indirect ownership interest in Maffick or any position in management or corporate governance. Maffick offered to provide documentation of this.

33. As for "editorial guidelines such as transparency around sources of content and independence and diversity of sources," Maffick noted that, while it is not a news organization, it adheres to journalistic standards in publishing, with a particular emphasis on transparency around independence and diversity of sources. Maffick fact checks to protect against disseminating misinformation and verifies original videos not only for copyright and licensing purposes, but for accountability. In the case of conflicting reports, Maffick bases the choice to run a story on the availability of three independent collaborations. Maffick cites both information and media sources on screen and/or in its social copy, cites all statistics and hard facts on which opinion pieces are based, and clearly identifies archival footage to avoid audience confusion as to when an event took place. Maffick informed Facebook that all its editorial decisions are rooted in MOP, an internal company document, which contains its editorial policy and outlines its brand mission and best practices for the optimization of visual media.

34. With regard to "information about newsroom leadership and staff," Maffick informed Facebook that it has a global production team based in Los Angeles, Berlin and Moscow and final authority on editorial matters rests with Maffick's leadership in Los Angeles, specifically Anissa Naouai and Amanda Getty. No Russian state entities or officials have any input into editorial decisions at Maffick or any of their social media channels.

35. Maffick informed Facebook that its "sources of funding and revenue" are monetization of media content, advertising for branded content that is promoted on its social media channels, and the re-sale of original content that is created for its channels.

36. Finally, with respect to "governance and accountability mechanisms such as correctional policies, procedure for complaints, external assessments and oversight board," Maffick noted that it has an express policy on corrections which provides: "We acknowledge our mistakes when we make them and we're eager to learn from them. If we get it wrong, we take it down. Period. And we have systems in place to ensure that the chances of us getting it wrong are slim. In the event of a harmless mistake that can't be changed immediately (like a typo in a video), we leave the post active until engagement dies down, and then we expire it. If needed we add updates to comments/descriptions to ensure we're providing the best information we have. We have not had an instance in which we're required to publish a statement, but in the event that we do, we will make it clear publicly we understand where we went wrong."

37. While there have not been external assessments of Maffick's editorial processes or accountability procedures, Maffick noted that, in 2019, it won several awards for its excellence in digital media including "Media Agency of the Year" from Digiday, the Shorty Award for Best Overall Facebook Presence, and the Lovie Award for Best Viral Video. Maffick's film about "fast fashion" was recently selected for the Los Angeles Fashion Film Festival and the United Nations Association Film Festival.

38. Given that none of Facebook's own criteria for determining whether a social media provider is state-controlled media supported the conclusion that Maffick is controlled by the Russian state, which it is not, Maffick asked Facebook to remove the Notice from its pages immediately and, in any event, to respond to its June 30 letter by July 7, 2020.

39. Facebook did not respond. On July 8, 2020 Maffick wrote to Facebook again, asking that it immediately remove the false Russia state-controlled media designation from its pages and respond to the June 30 letter by no later than July 15, 2020.

40. By July 14, 2020, when Facebook still had not responded to Maffick's repeated outreach, Maffick reached out again to a contact at Facebook's legal department. Finally, on July 15, 2020, Facebook wrote to Maffick indicating that a response to the June 30 letter would be forthcoming.

41. On July 20, 2020, Facebook finally responded to Maffick's letter. Facebook's outside counsel wrote to indicate that Facebook was not willing to take down the Notice. Instead, Facebook proposed that Maffick resolve its dispute over the false Russia state-controlled media designation through Facebook's internal appeal process. Facebook noted that Maffick had already initiated an appeal on June 30, 2020. Facebook counsel's July 20 letter was the first acknowledgment Maffick had from anyone at Facebook that Maffick had even submitted an appeal.

42. Maffick wrote back to Facebook on July 21, 2020, indicating its willingness to utilize the Facebook appeal process, if Facebook would agree to remove the Notice from Maffick's pages during the pendency of the appeal, provide Maffick with a point person with whom to communicate about the appeal, and agree to a time period within which it would complete the appeal. Maffick expressed its concern about the efficacy of the appeal process without these protections, in light of its past experiences with Facebook's slow response or non-response, including in connection with the dispute that is the subject of this case.

43. On July 24, 2020, Facebook's counsel wrote to reject each of Maffick's proposals, insisting instead that Maffick participate in a "black box" appeal, in which it submits documentation to Facebook without any discussion about whether the documentation is sufficient, explanation of what else might be needed, or opportunity to supplement, and wait for an indefinite period of time for any response from Facebook, which would, of course, be judging the propriety of its own decisions.

44. Facebook knows or should know that the Notice is false and that Maffick is not operated or controlled, editorially or otherwise, by any Russian government entity or official. At the very least, it knows that its public statement that Maffick is Russia-state controlled media is based on obsolete ownership information that requires further investigation. Facebook's statement that Maffick is Russia state-controlled media is therefore either an intentional falsehood or has been made with reckless disregard for its truth or falsity.

45. Maffick has provided proof to Facebook that it is not owned or controlled by the Russian government, and that it is an independent, U.S.-based company, operated and controlled by

U.S. citizens from Los Angeles. Nevertheless, Facebook has continued to publish the Notice on Maffick's pages.

46. Maffick has repeatedly demanded that Facebook remove the false and defamatory language in the Notice and Facebook has failed to do so.

47. In addition to being false, the Notice has caused and will continue to cause immediate and irreparable harm to Maffick's reputation, its ongoing business relationships, and the viability of several current business development opportunities.

48. In the first weeks since Facebook posted the Notice, Maffick's monetization of its social media content (through advertising, e-commerce and otherwise) is down 50% from its monthly average for 2020. Maffick's "reach," a metric that measures the number of people who encounter its social media content, is down 74% over the same time period.

## FIRST CAUSE OF ACTION

### (Libel Per Se – against all Defendants)

49. Maffick incorporates by reference the allegations set forth in Paragraphs 1-48 above as though fully set forth herein.

50. Facebook has falsely published to Maffick's millions of subscribers and social media visitors and to the public at large the false factual statement that Maffick is a "Russia state-controlled media" entity.

51. The individuals who have viewed Maffick's Facebook pages and posts have reasonably understood that the statements are about Maffick, as the Notice is prominently displayed on each of its "Page Transparency" pages and above each of its individual posts.

52. The individuals who have viewed the Notice reasonably understand the statement to mean that Maffick is under Russian government control and that it is operating with the purpose of furthering Russia's agenda, including in connection with influencing the 2020 U.S. elections.

53. In reality, Maffick is not owned, operated, controlled, or managed by the Russian government or any Russian governmental entities or officials, but is an independent U.S. company, operated and controlled by a U.S. citizen who lives and works in Los Angeles, California.

54. Facebook knows that Maffick is not a Russia state-controlled media entity and has been provided with information regarding Maffick's true nature, ownership structure and operations.

55. Nevertheless, Facebook improperly coerced Maffick into posting a false "disclosure" that it was owned and operated by a Russian media organization, and then posted its own false Notice on each of Maffick's pages.

56. Despite knowing the truth and knowing the harm that has been engendered by the false Notice, Facebook has refused to take the Notice down, despite numerous requests that it do so.

57. In doing all of these actions, Facebook has acted fraudulently, with actual malice and in reckless disregard for the truth.

58. Facebook's wrongful conduct is a substantial factor in threatening to cause and causing immediate and irreparable harm to Maffick's business relationships, opportunities and reputation.

## SECOND CAUSE OF ACTION

**(Intentional Interference with Contractual Relations – against all Defendants)**

59. Maffick incorporates by reference the allegations set forth in Paragraphs 1-58 above as though fully set forth herein.

60. Maffick has existing contracts with various brands and organizations and it earns a substantial portion of its revenue by advertising and marketing through these strategic partnerships.

61. Facebook knows about the existence of Maffick's contractual relationships.

62. By falsely labeling Maffick as "Russia state-controlled media," Facebook has intentionally acted to induce the breach of the afore-mentioned contracts and has intentionally disrupted Maffick's contractual relationships in order to cause harm to Maffick and to prevent it from successfully operating on Facebook's platforms.

63. As a result of Facebook's intentional interference, Maffick's partners are likely to withdraw from their contractual agreements. In addition, Maffick's viewers have been misled to

believe that the products advertised by Maffick are somehow linked to or sponsored by the Russian government. This has caused and continues to cause financial and reputational damage to Maffick.

64. Maffick has been harmed by Facebook's intentional interference with its contractual relations in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Relations – against all Defendants)**

65. Maffick incorporates by reference the allegations set forth in Paragraphs 1-64 above as though fully set forth herein.

66. Maffick works with various brands and organizations and earns a substantial portion of its revenue by advertising and marketing through these strategic partnerships.

67. In addition, Maffick has been actively expanding its paid partnerships, especially with companies producing sustainable and eco-friendly product lines, and has been developing additional branding to provide health and mindfulness content. Maffick's brand, "In the Now", has been working on programs to combat homelessness and support grass roots initiatives.

68. Facebook knows about Maffick's prospective economic relations, and Facebook knows that by posting the false Notice on Maffick's pages, that those prospective economic relationships have been and will continue to be disrupted.

69. Indeed, as a result of Facebook's intentional interference, Maffick's prospective partners have expressed concern about entering into economic relationships with Maffick and other potential partners have been discouraged from reaching out to Maffick in the first place. This has caused and continues to cause financial and reputational damage to Maffick, which is losing significant monetization and reach from its social media channels.

70. Maffick has been harmed by Facebook's intentional interference with its prospective economic relations in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**(Negligent Interference with Prospective Economic Relations – against all Defendants)**

71. Maffick incorporates by reference the allegations set forth in Paragraphs 1-70 above as though fully set forth herein.

72. Maffick works with various brands and organizations and earns a substantial portion of its revenue by advertising and marketing through these strategic partnerships.

73. In addition, Maffick has been actively expanding its paid partnerships, including specifically with companies producing sustainable and eco-friendly product lines, and has been developing additional branding to provide health and mindfulness content. Maffick's brand, "In the Now", has been working on programs to combat homelessness and support grass roots initiatives.

74. Facebook knew or should have known about Maffick's prospective economic relations, and Facebook knew or should have known that by posting the false Notice on Maffick's pages, that those prospective economic relationships would be disrupted.

75. Facebook failed to act with reasonable care and acted wrongfully by posting a false Notice on Maffick's pages accusing Maffick of being "Russia state-controlled media."

76. Indeed, as a result of Facebook's actions, Maffick's prospective partners have expressed concern about entering into economic relationships with Maffick and other potential partners have been discouraged from reaching out to Maffick in the first place. This has caused and continues to cause financial and reputational damage to Maffick, which is losing significant monetization and reach from its social media channels.

77. Maffick has been harmed by Facebook's negligent interference with its prospective economic relations in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**(Violation of Section 43(a) of the Lanham Act – against all Defendants)**

78. Maffick incorporates by reference the allegations set forth in Paragraphs 1-77 above as though fully set forth herein.

79. Section 43(a) of the Lanham Act prohibits commercial activities that tend to mislead the consuming public, including but not limited to false descriptions or representations of fact concerning the origin, sponsorship, or approval of services or commercial activities or misrepresentation of their nature, characteristics, qualities or geographic origins.

80. Facebook has violated the Lanham Act by applying the false and misleading label of "Russia state-controlled media" to Maffick, in connection with the goods and services marketed by Maffick on Facebook and Instagram, and by publishing the Notice on Maffick's social media pages.

81. Facebook's platforms are used in interstate commerce and throughout the world for the purposes of commercial advertising and promotion.

82. By falsely labeling Maffick's pages as "Russia state-controlled media," and thereby falsely representing that Facebook's own criteria support that conclusion, Facebook is making misleading representations and descriptions of fact about the origin, sponsorship or approval of portions of its own social media platform, in violation of Section 43(a)(1)(A) of the Lanham Act. Specifically, Facebook falsely represents that certain pages that it serves are Russia state-controlled media, when that is not true, as part of an effort to promote itself as a responsible social media company, at a time when it has been under scrutiny by the press and the federal government concerning whether it has taken sufficient actions to preserve the integrity of U.S. elections from improper social media influence by foreign governments.

83. In addition, because Facebook's falsely labeling Maffick as "Russia state-controlled media" is part of a campaign intended to promote Facebook's image as a responsible social media company, it is also violating Section 43(a)(1)(B) of the Lanham Act, which prohibits statements "in… promotion [that] misrepresent[ ] the nature, characteristics, qualities, or geographic origin of his or her or another person's… services, or commercial activities[.]"

84. Facebook's false and misleading labeling of Maffick has actually deceived and has the tendency to deceive a substantial segment of the public and is material in that it is likely to influence economic decisions by Maffick's existing and potential customers and business relations.

Facebook has thus caused and threatened to cause Maffick significant reputational harm and damage to its business interests, including lost sales.

85. Maffick has been and will continue to be damaged by Facebook's acts in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Unfair Competition – against all Defendants)

86. Maffick incorporates by reference the allegations set forth in Paragraphs 1-85 above as though fully set forth herein.

87. California's Unfair Competition Law at Cal. Bus. & Prof. Code 17200, *et seq*. defines unfair competition as "any unlawful, unfair or fraudulent business act or practice."

88. Facebook has violated the Unfair Competition Law by applying the false, disparaging and misleading label of "Russia state-controlled media" to Maffick's social media pages, in connection with the goods, services and commercial activities offered by Maffick on Facebook and Instagram, and by publishing the Notice on Maffick's social media pages.

89. Facebook's platforms are used in interstate commerce and throughout the world for the purposes of commercial advertising and promotion. In publishing the Notice on Maffick's social media pages and each of its posts, Facebook is causing Maffick material reputational and commercial harm.

90. Facebook's false and misleading labeling of Maffick has actually deceived and has the tendency to deceive a substantial segment of the public and is material in that it is likely to and has influenced economic decisions by Maffick's existing and potential customers and business relations. Facebook's false Notice has negatively affected Maffick's monetization of its social media pages and their reach and threatens to cause Maffick additional irreparable harm in the future.

91. Maffick has been and will continue to be damaged by Facebook's acts.

**WHEREFORE**, Plaintiff prays for the following relief and seeks judgment against Defendants as follows:

1. For a preliminary and permanent injunction enjoining Defendants, and their officers, directors, agents, servants, employees, successors and assigns, as well as those acting under, in concert or participation with, from publishing the Notice on any of Maffick's three social media pages, or in conjunction with any posts published by In the Now, Soapbox, or Waste-Ed, indicating they are "Russia state-controlled media."

2. For a preliminary and permanent injunction enjoining Defendants, and their officers, directors, agents, servants, employees, successors and assigns, as well as those acting under, in concert or participation with, from labeling, publishing, describing or otherwise representing to anyone that Maffick is a Russia state-controlled media organization, or that Maffick is otherwise owned, operated or controlled by the Russian government or any person or entity acting on the Russian government's behalf;

3. For an order awarding Maffick monetary relief for all damages, according to proof, sustained by it as a result of Defendants' wrongful actions;

4. For an order awarding Maffick equitable relief for its reputational damages suffered as a result of Defendants' wrongful actions, including but not limited to a public retraction issued by Defendants, and other such relief as the Court deems fair and just; and,

5. For such other and further relief as the law provides.

Dated: July 29, 2020

TROYGOULD PC

By: */s/ John Ulin*
JOHN ULIN
Attorneys for Plaintiff
MAFFICK LLC

**DEMAND FOR JURY TRIAL**

Plaintiff Maffick LLC hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) and Civil Local Rule 3-6.

Dated: July 29, 2020

TROYGOULD PC

By: */s/ John Ulin*
    JOHN ULIN
Attorneys for Plaintiff
MAFFICK LLC