JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
MARIANNA MAO (State Bar No. 318070)
marianna.mao@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

JONATHAN KRAVIS (*pro hac vice* application pending)
Jonathan.kravis@mto.com
ZOE BEDELL (*pro hac vice* application pending)
zoe.bedell@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, DC  20004-1361
Telephone:     (202) 220-1100
Facsimile:      (202) 220-2300

Attorneys for Defendant
FACEBOOK, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAFFICK LLC, a Delaware limited liability company,<br><br>                Plaintiff,<br><br>       vs.<br><br>FACEBOOK, INC., a Delaware corporation, and Does 1-10, inclusive.<br><br>                Defendants. | Case No. 3:20-cv-05222-JD<br><br>**DEFENDANT FACEBOOK, INC.'S (1) OBJECTION TO PLAINTIFF'S NEW REPLY EVIDENCE PURSUANT TO CIV. LOCAL RULE 7-3(D)(1), AND (2) REQUEST FOR LEAVE TO RESPOND TO EVIDENTIARY OBJECTIONS ASSERTED BY PLAINTIFF IN REPLY, AND RESPONSE FOR COURT'S CONSIDERATION**<br>_____ |

Pursuant to Civil Local Rule 7-3(d)(1), Facebook respectfully requests that the Court strike Paragraphs 13-20 and Exhibit 1 of the Second Declaration of Anissa Naouai and the references to these paragraphs and exhibit in the reply brief in support of the *ex parte* application for a temporary restraining order filed by Plaintiff Maffick LLC ("Maffick").  These materials constitute new evidence submitted in a reply in violation of Rule 7-3(d)(1) and Paragraph 15 of the Court's Standing Order for Civil Cases.

Separately, Facebook respectfully requests leave to respond to Maffick's hearsay objection in its reply to the news articles and online materials submitted in connection with Facebook's opposition to Maffick's application.  Under settled law, hearsay evidence is admissible and routinely considered by courts in resolving motions for temporary restraining orders and preliminary injunctions.  The objection should be denied.

## I.   BACKGROUND

On July 29, 2020, Maffick filed an *ex parte* application for a temporary restraining order and an order to show cause regarding a preliminary injunction.  Accompanying that filing was a declaration from Maffick CEO Anissa Naouai describing Maffick's business and harms purportedly suffered by the company as a result of Facebook's decision to apply the state controlled media entity ("SCME") label to Maffick's Facebook Pages.  *See* ECF No. 3-2 ("First Naouai Decl."). This declaration was seven pages long and accompanied by four exhibits totaling 137 pages.

On August 4, 2020, Facebook filed its opposition to Maffick's application.  In its opposition, Facebook argued, among other things, that Maffick had failed to establish imminent irreparable harm because the injuries claimed by Maffick were speculative and in any event could be remedied through monetary damages, and that Maffick was unlikely to prevail on the merits of its tortious interference claim because Maffick failed to identify any business relationships with specific third parties that Facebook intentionally disrupted.  *See* ECF No. 9 at 10-14, 22-23.

On August 10, 2020, Maffick filed its reply.  Attached to that reply was a second declaration from Ms. Naouai.  *See* ECF No. 17-1 ("Second Naouai Decl.").  This second declaration contained new information about Maffick's purported "existing branded relationships" with 12 identified companies and its "cross-posting partnerships" with 15 identified "content

providers." Second Naouai Decl. ¶ 18. Accompanying the declaration was a new exhibit ("Exhibit 1") purporting to be "copies of Facebook analytical data" from May through July 2020 allegedly "showing the extremely negative effects" of the SCME label on the monetization and reach one of Maffick's Pages. *Id. ¶* 20 & Ex. 1. This new information is discussed at length in Maffick's reply in support of its irreparable harm, actual malice, and tortious interference arguments. The declaration also contained new information describing Maffick's alleged relationship with Russia and the Russian state news agency RT following the dissolution of "Maffick Media GmBH" and the subsequent creation of "Maffick LLC." *Id*. ¶¶ 11, 13-17, 19.

## II. THE COURT SHOULD STRIKE THE NEW INFORMATION AND EXHIBIT OF THE SECOND NAOUAI DECLARATION

The new information set forth in the Second Naouai Declaration and discussed in Maffick's reply should be struck under Civil Local Rule 7-3(d)(1) and Paragraph 15 of the Court's Standing Order for Civil Cases. Rule 7-3(d)(1) provides, "If new evidence has been submitted in the reply, the opposing party may file and serve an Objection to Reply Evidence." Likewise, Paragraph 15 of the Court's Standing Order states, "Reply papers should not raise new points that could have been addressed in the opening motion or brief."

Courts in this District consistently have recognized that, under Rule 7-3(d)(1), "[i]t is improper for a moving party to introduce in a reply brief new facts or different legal arguments than those presented in the moving papers." *Kolker v. VNUS Med. Techs.*, 2012 WL 161266, at \*6 (N.D. Cal. Jan. 17, 2012). As the Court has noted, "[r]aising new arguments" and evidence "in a reply brief is a classic form of sandbagging that is barred under Paragraph 15 of the Court's Standing Order for Civil Cases." *In re Capacitors Antitrust Litig.*, No. 14-CV-03264-JD, 2017 WL 897340, at \*1–2 (N.D. Cal. Mar. 7, 2017) (striking new reply declaration and arguments).

Pursuant to Rule 7-3(d)(1), courts in this District routinely disregard new declarations submitted for the first time in a reply in support of a motion for a preliminary injunction as well as other motions. *See, e.g., Citcon USA, LLC v. RiverPay Inc.*, 2019 WL 2603219, at \*3 (N.D. Cal. Jun. 25, 2019) ("In its reply to defendants' opposition to its motion for preliminary injunction, Citcon provides new evidence … in the form of a declaration from Dr. Dean Sirovica…. However,

the Court cannot consider his declaration because it is impermissible new evidence submitted on a reply brief in violation of Civil Local Rule 7-3(d)(1).  The Court thus disregards the Sirovica declaration."); *Single Touch Interactive, Inc. v. Zoove Corp.*, 2013 WL 3802805, at *1 n.2 (N.D. Cal. July 17, 2013) (refusing to consider declaration containing "new evidence offered for the first time on reply"); *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *15 (N.D. Cal. Jun. 9, 2010) (refusing to consider declaration submitted in support of reply brief on the ground that "such evidence should have been proffered with Plaintiffs' moving papers in order to afford Defendants a full and fair opportunity to respond").

The paragraphs and attached exhibit of the Second Naouai Declaration set forth above fall squarely within the Rule's prohibition on the submission of new evidence in reply.  Indeed, the second declaration amounts to nothing more than a belated effort to correct obvious deficiencies in the First Naouai Declaration submitted with the application.  For example, the First Naouai Declaration offered a few conclusory assertions regarding the purported effect of the SCME label on Maffick's business, but did not specifically identify a particular business relationship that was allegedly harmed and did not explain the basis for linking any loss of revenue to the label.  First Naouai Decl. ¶ 25 ("Maffick's monetization from its Facebook pages for July has dropped by 50% from its monthly average for 2020."); *id.* ¶ 26 ("Maffick has existing contracts with various brands and organizations and it earns substantial revenue by advertising and marketing through these strategic partnerships.").  As Facebook argued in its opposition, these assertions are plainly insufficient under well-settled case law to establish irreparable harm or tortious interference with a business relationship.  ECF No. 9 at 11-15 (explaining why Maffick's original application failed to establish irreparable harm); *id.* at 22 (explaining that Maffick is unlikely to prevail on its interference claim because it "has failed to establish a 'relationship with a *particular individual*'").

The Second Naouai Declaration submitted with Maffick's reply reflects an untimely effort to patch these obvious deficiencies in Maffick's presentation with new information that should have been included in its initial application.  This presentation of new factual information in Maffick's reply clearly illustrates the unfairness Rule 7-3(d)(1) is intended to prevent.

1    *Maffick's Alleged Business Relationships*.  The Second Naouai Declaration contains new
2    information about Maffick's purported "existing branded relationships" with 12 identified
3    companies and its "cross-posting partnerships" with 15 identified "content providers."  Second
4    Naouai Decl. ¶ 18.  Setting aside the obvious deficiencies even in the second declaration itself
5    (including the failure to show that any of the specific business relationships identified were actually
6    affected by the SCME label, or Facebook's awareness of and intent to disrupt these specific
7    relationships), nothing prevented Maffick from describing these relationships in its opening papers
8    to support its irreparable harm showing and tortious interference claims.
9    *Analytical Data*.  Maffick presents for the first time 17 pages of "Facebook analytical data"
10   purporting to show "the extremely negative effects that the Notice has had on" Maffick's
11   monetization and reach (which at any rate is compensable in nature).  *Id*. ¶ 20 & Ex. 1.  This data
12   from May through July 2020 precedes Maffick's filing of its application by several months.
13   *Maffick's Relationship with RT and Russia.* Following the prior and extensive relationship
14   between Maffick Media GmBH and Naouai with RT and the Russian government, the new
15   declaration conclusorily asserts for the first time that, subsequent to the creation of corporate entity
16   "Maffick LLC," Naouai is "not an employee of RT or any of its affiliates," that "RT does not
17   exercise editorial control" over Maffick, and that Maffick's "interaction with RT is limited to the
18   sale of content to RT."  *Id.* ¶¶ 13-17, 19.
19   Maffick cannot plausibly claim any reason that it could not have included all this
20   information in its original submission.  The case law requiring specificity in establishing imminent
21   irreparable harm and the likelihood of success on its claims such as tortious interference is well
22   established.  Facebook's arguments highlighting the deficiencies in Maffick's original application
23   drew on a settled body of controlling authority from within this jurisdiction and did not rely on
24   novel legal contentions.  And it should have been perfectly foreseeable from the outset to Maffick
25   that the topics addressed in the Second Naouai Declaration were relevant to its claim of irreparable
26   harm and the merits of its causes of action.  In sum, Maffick should have known that the details set
27   forth in the second declaration should have been included with its application.  The Court therefore
28

should disregard and strike Paragraphs 13-20 and Exhibit 1 of the Second Naouai Declaration.[1]

### III.   MAFFICK'S EVIDENTIARY OBJECTIONS ARE BASELESS

Facebook separately requests leave to respond to Maffick's evidentiary objections raised in its reply.  *E.g., Johnson v. City & Cty. of S.F.,* 2016 WL 467471, at *1 n.1 (N.D. Cal. Feb. 8, 2016) ("GRANT[ING] Plaintiffs' motion for leave to file written responses to Defendants' evidentiary objections made on reply").  A response is provided below for the Court's consideration.

\* \* \*

In its reply, Maffick objects to the news articles and online materials submitted in connection with Facebook's opposition detailing the extensive history and connections between Maffick and Ms. Naouai, and the Russian state news agency RT, as well as various governments' conclusions regarding the propagandistic and divisive nature of Maffick's and RT's content, such as In The Now.  ECF No. 17 at 3 n.1.  Maffick's objection is baseless and should be denied.

Maffick's contention that these articles are "inadmissible hearsay offered for the proof of the matter asserted therein" founders on the well-established rule that hearsay evidence *is admissible* in connection with a motion for a temporary restraining order or preliminary injunction, and that courts routinely consider such evidence.  *See S.F. Veteran Police Officers Ass'n v. City & Cty. of S.F.*, 18 F. Supp. 3d 997, 1006 (N.D. Cal. 2014) (denying request to strike declarations submitted in opposition to a preliminary injunction application on the ground that "the district court may rely on otherwise inadmissible evidence, including hearsay evidence" and citing several N.D. Cal. decisions doing so); *Torres v. Milusnic*, 2020 WL 4197285, at *3 n.21 (C.D. Cal. July 14, 2020) ("The Court, however, may consider inadmissible evidence, including hearsay evidence, in determining whether to issue a temporary restraining order or preliminary injunction."); *Houdini Inc. v. Goody Baskets LLC,* 166 F.App'x 946, at *1 (9th Cir. 2006) ("[T]he district court did not abuse its discretion in considering hearsay ... because the rules of evidence do not strictly apply to preliminary injunction proceedings.").

---

[1] If the Court is inclined to consider this new information and evidence, Facebook respectfully requests leave to file a response to such material, as none of it changes the outcome here; it neither demonstrates imminent irreparable harm nor helps establish the elements of Maffick's claims.

DATED: August 12, 2020                MUNGER, TOLLES & OLSON LLP


By: */s/ Jonathan H. Blavin*
    JONATHAN H. BLAVIN
Attorneys for Facebook, Inc.