JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
MARIANNA MAO (State Bar No. 318070)
marianna.mao@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

JONATHAN KRAVIS (*pro hac vice* application pending)
jonathan.kravis@mto.com
ZOE BEDELL (*pro hac vice* application pending)
zoe.bedell@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, Seventh Floor
Washington, DC  20004-1361
Telephone:    (202) 220-1100
Facsimile:    (202) 220-2300

Attorneys for Defendant
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAFFICK LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FACEBOOK, INC., a Delaware corporation, and Does 1-10, inclusive.<br><br>Defendants. | Case No. 3:20-cv-05222-JD<br><br>**ADMINISTRATIVE MOTION PURSUANT TO LOCAL CIVIL RULE 6-3 TO SHORTEN TIME FOR A HEARING ON DEFENDANT'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16**<br><br>Judge:          Hon. James Donato |

1	Defendant Facebook, Inc. ("Facebook") respectfully moves this Court, pursuant to Local
2	Civil Rule 6-3, for an order shortening time to set a hearing date of September 24, 2020, on
3	Facebook's forthcoming Special Motion to Strike Pursuant to California Civil Code § 425.16 and
4	Motion to Dismiss, to be filed by this Friday, September 4.

5	This relief is warranted in light of the Court's decision to set this case for trial on December
6	14, 2020.  Facebook's forthcoming motions raise dispositive threshold questions of law that apply to
7	*all* of Maffick's claims.  In particular, Facebook will argue that: (1) Facebook's state-controlled
8	media entity ("SCME") label on Maffick's Pages constitutes a nonactionable statement of opinion
9	under the First Amendment; (2) Maffick has failed to allege facts that would establish actual malice
10	as required by the First Amendment in light of Maffick's status as a limited purpose public figure;
11	and (3) the SCME label is not commercial speech and therefore is not actionable under the Lanham
12	Act, which is the only federal claim in the complaint, or under California's Unfair Competition Law.

13	Under California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP")
14	statute, these contentions should be resolved as soon as possible.  California's anti-SLAPP statute
15	"is designed to protect the defendant *from having to litigate meritless cases* aimed at chilling First
16	Amendment expression," and "to protect speakers *from the trial itself* rather than merely from
17	liability."  *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) (emphasis added).  A "defendant's
18	rights under the anti-SLAPP statute are in the nature" of a "substantive immunity from suit."  *Id*.
19	Accordingly, "'the purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to
20	chill [a] defendant's free speech rights at the *earliest* stage of the case.'"  *Chevron Glob. Tech.*
21	*Servs. Co. v. Little*, 2007 WL 2021804, at *3 (N.D. Cal. July 10, 2007) (quoting *Kunysz v.*
22	*Sandler,* 146 Cal. App. 4th 1540, 1543 (2007) (emphasis in original)).

23	In light of the expedited trial schedule, Facebook will lose these statutory protections if the
24	Court does not expedite briefing on Facebook's motions.  Otherwise, Facebook's motions will be
25	heard at the earliest on October 8 or (as Maffick desires) even later.  At that point, Facebook already
26	would have incurred the substantial costs and burdens of discovery and litigation that anti-SLAPP
27	immunity is intended to avoid.  And given that the parties already have briefed many of these issues
28	in the TRO context, the prejudice to Maffick is minimal.  The motion should be granted.

## I. BACKGROUND

On July 29, 2020, Maffick filed a motion for a temporary restraining order, which Facebook opposed. At the August 27, 2020 hearing, the Court denied the TRO motion and set an expedited case schedule, with discovery to begin immediately and trial to start on December 14, 2020. Immediately after the hearing, Facebook's counsel contacted Maffick's counsel to request consent to the expedited briefing schedule that Facebook now seeks through this motion pursuant to Local Civil Rule 6-3, with a hearing date set for September 24, 2020. Blavin Decl. ¶¶ 3-4. Maffick's counsel advised that Maffick opposes Facebook's request to expedite briefing on these motions, and in fact will request an extra week for Maffick to respond. *Id.* ¶ 5. The next day, Facebook's counsel responded noting that Maffick had pressed for an early trial date, and that expedited consideration of its motions is warranted if Maffick is not willing to delay the trial. *Id.* ¶ 6. Facebook intends to file its anti-SLAPP motion and motion to dismiss no later than September 4, 2020, as the parties had previously agreed by stipulation.[1]

The only prior modification to the schedule in this case was the stipulated two-week extension for Facebook to respond to the complaint, which was agreed upon and filed prior to the Court's decision to set this case for trial on December 14, 2020. Blavin Decl. ¶ 8. The requested briefing schedule will not affect the expedited trial schedule. If anything, it will facilitate that schedule by allowing the Court promptly to resolve dispositive threshold legal issues.

## II. ARGUMENT

### A. The anti-SLAPP Statute Provides Immunity from Suit Warranting an Early Hearing Date Under the Court's Expedited Case Schedule

"The anti-SLAPP statute was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Batzel*, 333 F.3d at 1024. This "allow[s] for the prompt resolution" of cases "prior to the time significant pretrial discovery expenses are incurred." *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12129944, at *3 (C.D. Cal. Jan. 14, 2013). Indeed, because "California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit," the denial of an anti-

---

[1] Facebook proposes that Maffick's oppositions be filed by September 11, Facebook's replies by September 16, and the hearing set for September 24.

1  SLAPP motion is immediately appealable in federal court.  *Id.* at 1025-26.  And the "appeal of the
2  denial of the Anti-SLAPP motion automatically stays all proceedings (including discovery)
3  regarding the state law claims."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
4  2016 WL 8607505, at *1 (N.D. Cal. Dec. 22, 2016).  That is because "'the point of the anti-SLAPP
5  statute is that you have a right not to be dragged through the courts because you exercised your
6  constitutional rights.'"  *Corcept Therapeutics, Inc. v. Rothschild*, 2008 WL 11446505, at *2 (N.D.
7  Cal. June 12, 2008) (quoting *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180 (2005)).

8        The anti-SLAPP statute clearly applies to this case.  As a statement about an entity in the
9  public eye that directly affects Facebook's users and concerns a topic of widespread public concern,
10 the SCME label constitutes speech by Facebook in a public forum on an issue of public interest.
11 Cal. Code Civ. Proc. § 425.16(e)(3).  Moreover, the statute's "narrowly" construed commercial
12 speech exception (§ 425.17(c)) does not apply to the SCME label because, *inter alia*, it concerns the
13 operations of Maffick, which is not a competitor of Facebook, and it does not propose a commercial
14 transaction (or even advertise anything).  *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 31 (2010).

15       In this case, the statute's purposes are best served by an expedited briefing schedule on
16 Facebook's anti-SLAPP motion and motion to dismiss.  A schedule that allows for prompt
17 resolution of the dispositive issues raised by those motions will ensure that Facebook is not
18 required to litigate this lawsuit aimed at chilling its First Amendment expression prior to a
19 determination of Facebook's immunity under the anti-SLAPP statute—exactly the harm that the
20 anti-SLAPP statute was intended to remedy.  If the briefing schedule is not expedited, Facebook's
21 motions, at the earliest, cannot be heard until October 8, or even later if Maffick follows through
22 on its request for an extension.  Requiring Facebook to incur the substantial expense and burden of
23 responding to discovery and preparing for an expedited trial during that time while these motions
24 are pending would destroy Facebook's statutory immunity from suit under the anti-SLAPP statute.

25       Furthermore, it makes little sense to have the motions heard in October or later under the
26 current case schedule given Facebook's right to appeal any denial of its anti-SLAPP motion, and
27 the automatic stay of all proceedings (including discovery) of Maffick's state-law claims pending
28 appeal (five of its six causes of action).  Further, the constitutional and legal arguments that would

1  be the subject of any appeal to the Ninth Circuit are equally applicable to the sole federal claim in

2  this case, Maffick's Lanham Act claim.  If the motions are not heard expeditiously, the parties may

3  needlessly incur substantial costs of discovery and trial preparation.

4          **B.**        **Facebook's Motions Will Raise Several Case-Dispositive Arguments**

5          An expedited briefing schedule on Facebook's motions is warranted for the additional

6  reason that those motions will raise threshold questions of law that are dispositive of all claims.

7          *First,* Facebook's motions will argue that all claims against it should be dismissed because

8  the SCME label is a nonactionable statement of opinion as a matter of law.  As alleged, the label

9  reflects Facebook's "*assessment of editorial control* exerted by a government," based upon several

10 criteria.  Compl. ¶¶ 23-24 (emphasis added).  The First Amendment protection for statements of

11 opinion extends to a speaker's expression of its judgment based on the weighing of multiple criteria,

12 like Facebook does with respect to its application of the SCME label.  *E.g., Botos v. L.A. Cnty. Bar*

13 *Ass'n*, 151 Cal. App. 3d 1083, 1089-90 & n.3 (1984) (rating of judicial candidate as "not qualified"

14 where based on multiple criteria including "ability," "experience" and "integrity," was nonactionable

15 "opinion"); *Aviation Charter, Inc. v. Aviation Rsch. Grp.*, 416 F.3d 864, 870-71 (8th Cir. 2005)

16 (statement airline had "unfavorable safety record" was nonactionable "opinion" where defendant

17 "defined 'safety' relative to its own methodology" and "performed a subjective review of" data).

18         Because the legal protection for statements of opinion flows from the First Amendment, this

19 defect is fatal to *all* of Maffick's claims.  *E.g., Coastal Abstract Serv., Inc. v. First Am. Title Ins.*,

20 173 F.3d 725, 730–31 (9th Cir. 1999) (statements of "opinion" nonactionable under Lanham Act

21 and defamation law); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (dismissing "tortious

22 interference" claims for "nonactionable opinion protected by the First Amendment"); *Bernardo v.*

23 *Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 342–45 (2004) ("expressions of

24 opinion" are "fully protected under the First Amendment" and "not actionable under … the UCL").

25         *Second,* Facebook will argue that all of Maffick's claims should be dismissed because it has

26 not pled specific facts sufficient to establish actual malice.  *E.g., Hoffman v. Cap. Cities/ABC, Inc.*,

27 255 F.3d 1180, 1186-87 (9th Cir. 2001) (dismissing UCL and Lanham Act claims for failure to

28 plead actual malice).  Because Maffick is at least a limited purpose public figure for purposes of

this case, Maffick must plead specific facts that would show that Facebook knew that the SCME label was false or acted with reckless disregard for its truth.  Maffick's general allegations and conclusory statements do not meet the heightened pleading standard that the First Amendment demands for defamation claims and the like brought by public figures.  *Franchise Realty Interstate Corp. v. S.F. Loc. Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976).  Under this heightened standard, Maffick's "general allegations," *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014), and "conclusory statements that [Facebook] should have known the truth," *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999), are legally insufficient.

*Third*, Facebook will argue that Maffick's Lanham Act and UCL claims separately fail because the SCME label is not commercial speech.  "[T]he 'core notion of commercial speech' is that it 'does no more than propose a commercial transaction.'"  *Hoffman*, 255 F.3d at 1184 (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)).  The SCME label does not propose a commercial transaction—it is not directed to Facebook's customers, it does not advertise products, and it concerns a topic of strong public interest to Facebook's users and the public.  According to Maffick itself, Facebook uses the label to show Facebook as "a responsible social media company" that it is "tak[ing] sufficient actions to preserve the integrity of U.S. elections from improper social media influence by foreign governments"—not to sell anything.  Compl. ¶ 82.  Facebook's label communicates ideas "on an issue of public importance," and is not commercial speech.  *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1117 (C.D. Cal. 2004).  The primary authority Maffick cites in support of the contrary proposition, *Kasky v. Nike*, 27 Cal. 4th 939 (2002), involved statements about Nike's own products and labor practices to its own customers, for the purpose of "increasing sales and profits," and is readily distinguishable and inapposite.  *Id*. at 963, 970.

### C.  Any Prejudice to Maffick Will Be Minimal

Any prejudice to Maffick by shortening the briefing schedule will be minimal.  These issues already have been substantially briefed in the context of Maffick's TRO motion and are straightforward.  Further, Maffick itself urged the Court to adopt this highly-expedited trial schedule.  It should equally be willing to proceed quickly to resolve these dispositive legal questions, which will dictate the future of these proceedings.

| | | |
|---|---|---|
| DATED: August 31, 2020 | | MUNGER, TOLLES & OLSON LLP |

By:  */s/ Jonathan H. Blavin*
JONATHAN H. BLAVIN

Attorneys for Defendant
FACEBOOK, INC.