UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAFFICK LLC,<br><br>    Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No. 20-cv-05222-JD<br><br>**ORDER RE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 3 |

Plaintiff Maffick LLC seeks a temporary restraining order directing defendant Facebook, Inc., to take down a "Russia state-controlled media" label that Facebook posted on Maffick's "In the Now," "Waste-Ed" and "Soapbox" pages. Dkt. No. 3. A TRO is denied, and the Court will set the case for trial on an expedited schedule.

**STANDARDS**

A temporary restraining order enjoins conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). When, as here, "notice of a motion for a temporary restraining order is given to the adverse party, the same legal standard as a motion for a preliminary injunction applies." *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-cv-06071-JD, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017) (citation omitted).

The Supreme Court has emphasized that injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 20).

Alternatively, a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," if the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. This reflects our circuit's "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131; *see also Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014). In all cases, at an "irreducible minimum," the party seeking an injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012) (internal quotation and citation omitted); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("The first factor under *Winter* is the most important -- likely success on the merits."). Because of this importance, when "a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]." *Id.* (internal quotations and citations omitted).

Maffick's TRO application also raises a concern about prior restraint. A court order that forbids speech activities, which is what Maffick seeks, is a "classic prior restraint of speech." *Garcia*, 786 F.3d at 747 (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)). "Prior restraints pose the 'most serious and the least tolerable infringement on First Amendment rights,'" and there is a "historical and heavy presumption against such restraints." *Id.* (citation omitted).

## DISCUSSION

Although Maffick asserted six causes of action against Facebook in its complaint, Dkt. No. 1, it seeks a TRO on just four of those claims: (1) libel under California Civil Code Section 45; (2) Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)); (3) the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200); and (4) interference with prospective economic advantage claim under California state law. Dkt. No. 3-1 at 11-18.

The merits inquiry is considerably streamlined by the fact that all four claims hinge on the proposition that the Russian media label is false. *See* Dkt. No. 3-1 at 11 (for libel claim, asserting that "Facebook's false designation of Maffick's Facebook pages as 'Russia state-controlled media'

2

clearly fits the definition" of libel in Cal. Civil Code § 45); *id*. at 14 (for Lanham Act § 43(a) claim, arguing "Facebook's conduct fits squarely within the statutory prohibition" because "Facebook made a false representation of fact."); *id*. at 17 (UCL claim "likely to succeed for the same reasons as its Lanham Act claims."); *id*. at 18 (for interference with prospective economic advantage claim, asserting that "[a]s a result of Facebook's false designation of Maffick's social media pages as 'Russia state-controlled media,' Maffick's viewer[s] have been misled, Maffick's monetization from its Facebook pages for the month of July 2020 dropped by 50% and its viewership and 'reach' have decreased dramatically.").

Consequently, to win a TRO, Maffick must demonstrate that it is likely to succeed in showing that the "Russia state-controlled media" label is false. It has not crossed that threshold.

Even assuming that the "Russia state-controlled media" label is a statement of fact -- and not merely an opinion, as Facebook contends -- the record before the Court establishes only that the question of falsity is disputed. Facebook, on its part, has tendered a substantial amount of evidence in support of its view that Maffick is linked to the Russian government. For example, Facebook has established, without dispute by Maffick, that a prior entity, Maffick Media GmbH ("Maffick Media"), openly acknowledged significant ties to the Russian government. *See, e.g.*, Dkt. No. 10-5. Maffick's Soapbox, Waste-Ed, and In the Now channels on Facebook are virtually identical to the same channels Maffick Media previously sponsored under the same names. *Id*.; Dkt. No. 10-1.[1] Maffick still uses Maffick Media email addresses for these channels -- "hello@maffick.media" for In the Now; "waste-ed@maffick.media" for Waste-Ed; and "soapbox@maffick.media" for Soapbox. Dkt. No. 10-10. Maffick's current CEO, Anissa Naouai, expressly stated in a declaration accompanying the TRO application that she "owned a 49% interest" in Maffick Media, and that another "part-owner" was an entity known as Ruptly GmbH. Dkt. No. 3-2 ¶ 15. Facebook submitted evidence that Ruptly is a subsidiary of RT (formerly Russia Today), which is "funded by the Russian government." Dkt. No. 10-1; Dkt. No. 10-6. A

---

[1] Maffick's hearsay objection to Facebook's evidence, Dkt. No. 17, is overruled. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) ("A district court may . . . consider hearsay in deciding whether to issue a preliminary injunction."). The page limit extension requests, Dkt. Nos. 8, 18, and unopposed request for judicial notice, Dkt. No. 3-4, are granted.

"2017 report from the U.S. Director of National Intelligence about Russia's meddling in the 2016 U.S. presidential election" stated that "RT is considered the 'Kremlin's principal international propaganda outlet.'" Dkt. No. 10-1. When Facebook temporarily suspended these pages in February 2019, "RT's editor-in-chief, Margarita Simonyan, tweeted . . . : 'Facebook has blocked our projects with billions of views!!!'" Dkt. No. 10-5. Naouai's reply declaration also states that while she is a United States citizen, she lived for years in Moscow, was employed by Russia Today, and hosted an opinion show for RT called "In the Now." Dkt. No. 17-1 ¶¶ 5-9.

This is a considerable amount of evidence in Facebook's favor, and Maffick does not meaningfully contest it. Rather than challenging this evidence directly, Maffick relies almost entirely on declarations by Naouai, its CEO. For the most part, the declarations offer purely conclusory statements to the effect that Maffick is free and clear of Maffick Media and Russia. For example, Naouai avers that she "promptly formed a Delaware limited liability company called Maffick LLC" after moving to Los Angeles in June 2019. Dkt. No. 17-1 ¶ 13. She states that while she "chose to continu[e] using the 'Maffick' name for the new LLC, Maffick LLC is not related to or associated with Maffick Media (or Ruptly)." Dkt. No. 3-2 ¶ 16; *see also id*. ¶ 15 (Maffick "is not owned or operated by Ruptly GmbH ('Ruptly') and is not a brand of Maffick Media GmbH ('Maffick Media')."). Naouai also declares that "Maffick is not controlled operationally or editorially by the Russian government or by Russian state entities or officials," Dkt. No. 3-2 ¶ 22, and further, "RT does not exercise control over me, nor does it exercise control over the content on Maffick's channels." Dkt. No. 17-1 ¶ 14.

This evidence is little more than ipse dixit from a party-affiliated declarant. In effect, Maffick contends that it is likely to succeed on the merits because its CEO says so. That is far from enough to establish a likelihood of success on the merits, particularly in light of the largely undisputed counter-evidence Facebook tendered. This is not to say that Facebook has proven truth as a defense, which it was not required to do in opposition to the TRO, or that Maffick has no hope of prevailing on any of its claims. It means only that Maffick has not carried its burden of demonstrating a probability of success on the merits that might justify the extraordinary relief of an injunction.

4

For the same reasons, the Court cannot say that Maffick has established a "serious question" for injunctive purposes. This is not a motion to dismiss proceeding, of course, and Maffick's case will go forward. But the mere continuation of litigation is not an indicator that Maffick's claims raise serious questions worthy of extraordinary, preliminary relief.

In light of this determination of the merits issue, the Court need not reach Facebook's argument that the Russian state media label is a non-actionable opinion. *See* Dkt. No. 9 at 14-17. The Court also declines to formally rule on Facebook's defensive argument that the proposed injunction would be an unconstitutional prior restraint. *See id*. at 6-10. The TRO application has been denied for more straightforward reasons, and so definitively deciding the constitutional question Facebook poses at this time is not absolutely necessary. *See Michigan v. DeVos*, --- F. Supp. 3d ---, No. 3:20-cv-04478-JD, 2020 WL 5074397, at *7 (N.D.Cal. Aug. 26, 2020) (citing *Jean v. Nelson*, 472 U.S. 846, 854 (1985); *United States v. Kaluna*, 192 F.3d 1188, 1197 (9th Cir. 1999)). The Court has taken the prior restraint issue into account as warranted here, and the bigger constitutional question is reserved for another day.

Because Maffick has failed to clear the merits threshold, consideration of the remaining *Winter* elements is not called for, strictly speaking. *See Garcia*, 786 F.3d at 740. Even so, for the sake of completeness, the Court outlines several concerns counting against a TRO under the remaining factors.

Maffick's effort to demonstrate irreparable harm is unpersuasive. Maffick leads with the argument that "[i]n just the first weeks since Facebook placed its false Notice on Maffick's social media pages, Maffick's monetization from those pages has already dropped by 50% from its monthly average for 2020." Dkt. No. 3-1 at 18. These losses do not constitute irreparable harm. "It is well established . . . that such monetary injury is not normally considered irreparable." *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Maffick also did not demonstrate that it is suffering an injury to its reputation because of the "Russia state-controlled media" label that would not be similarly compensable.

The balance of the equities tips in Facebook's favor, if anything. As the Ninth Circuit concluded in *Garcia*, the plaintiff's "thin copyright claim" did not outweigh the "historical and

5

heavy presumption against" prior restraints. *Garcia*, 786 F.3d at 747. So too here, where Maffick asks to restrain Facebook's speech on uncompelling evidence of falsity. The Court also notes the public interest served by Facebook's notices to "help its users better understand the sources of news content they see on Facebook" which can help them "make informed decisions about what they are reading." Dkt. No. 11 ¶ 3. The absence of proof that the balance of hardships tips sharply in Maffick's direction further underscores that an injunction is not warranted, particularly with respect to the "serious question" inquiry.

## CONCLUSION

Maffick's request for a TRO is denied. Maffick has requested in the alternative that discovery be opened immediately and that this matter be set for an early resolution on the merits. Dkt. No. 17. The Court has already directed the parties to begin discovery and trial preparation, and as discussed at the TRO hearing, a scheduling order setting trial to begin on December 14, 2020, will be filed.

**IT IS SO ORDERED.**

Dated: September 3, 2020

JAMES DONATO
United States District Judge