JONATHAN H. BLAVIN (California Bar No. 230269)
jonathan.blavin@mto.com
ROSEMARIE T. RING (California Bar No. 220769)
rose.ring@mto.com
MARIANNA MAO (California Bar No. 318070)
marianna.mao@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, CA  94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

DONALD B. VERRILLI, JR. (*pro hac vice* application pending)
donald.verrilli@mto.com
JONATHAN KRAVIS (*pro hac vice* application pending)
Jonathan.kravis@mto.com
ZOE BEDELL (*pro hac vice* application pending)
zoe.bedell@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, Seventh Floor
Washington, DC  20004-1361
Telephone:     (202) 220-1100
Facsimile:     (202) 220-2300

Attorneys for Defendant
FACEBOOK, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MAFFICK LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    vs.<br><br>FACEBOOK, INC., a Delaware corporation, and Does 1-10, inclusive,,<br><br>        Defendants. | Case No. 3:20-cv-05222-JD<br><br>**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS THE COMPLAINT**<br><br>Judge:           Hon. James Donato<br>Hearing Date:  October 1, 2020<br>Hearing Time:  10:00 AM |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................1

II.  BACKGROUND .................................................................................................................1

    A.   Facebook Labels State-Controlled Media To Promote Transparency .....................1

    B.   Facebook Labels Maffick Russia State-Controlled Media ......................................2

    C.   Maffick Contests The Label Yet Concedes That No Third-Party Assessment Has Found Maffick Editorially Independent ..............................................................3

III. ARGUMENT .......................................................................................................................4

    A.   The Label Is A Nonactionable Statement of Opinion ..............................................4

    B.   Maffick Has Not Pled Actual Malice ......................................................................8

    C.   The Lanham Act and UCL Claims Also Fail Because Maffick Does Not Plausibly Allege that the Label is Commercial Speech .........................................10

    D.   Maffick's Tortious Interference Claims Fail For Additional Reasons....................13

    E.   Maffick Fails to Allege Standing or Actionable Conduct Under the UCL .............15

IV.  CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
    790 F. Supp. 2d 1024 (N.D. Cal. 2011) ...................................................................13

*Aviation Charter, Inc. v. Aviation Research Group/US*,
    416 F.3d 864 (8th Cir. 2005)...........................................................................6, 7, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................4

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983) ........................................................................................11, 12

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005).................................................................................10

*Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*,
    467 F. App'x 738 (9th Cir. 2012).........................................................................14

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999).................................................................................5

*Compuware Corp. v. Moody's Investors Services, Inc.*,
    499 F.3d 520 (6th Cir. 2007) ...............................................................................7

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990)..................................................................................5

*Davis v. Avvo, Inc.*,
    345 F. Supp. 3d 534 (S.D.N.Y. 2018) ...................................................................7

*Dex Media W., Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012)................................................................................11

*Forsyth v. Motion Picture Ass'n of Am., Inc.*,
    2016 WL 6650059 (N.D. Cal. Nov. 10, 2016)........................................................7

*Franchise Realty Interstate Corp. v. S.F. Loc. Joint Exec. Bd. of Culinary Workers*,
    542 F.2d 1076 (9th Cir. 1976).................................................................................9

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009)..............................................................................5, 9

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ...........................................................................................8

1

## TABLE OF AUTHORITIES
### (Continued)

2

<u>Page</u>

3

*Greene v. Wells Fargo Bank, N.A.*,
  2019 WL 1331027 (N.D. Cal. Mar. 25, 2019) ........................................................................15

4

5

*Hall v. SeaWorld Ent.*,
  747 F. App'x 449 (9th Cir. 2018)...........................................................................................15

6

*Harris v. City of Seattle*,
  152 F. App'x 565 (9th Cir. 2005)...........................................................................................10

7

8

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ................................................................................................................8

9

10

*Hoffman v. Cap. Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 2001).............................................................................................9, 11

11

*Hustler Mag., Inc. v. Falwell*,
  485 U.S. 46 (1988) ..................................................................................................................9

12

13

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005)..................................................................................................5

14

15

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
  114 F. Supp. 3d 852 (N.D. Cal. 2015) ....................................................................................11

16

*Luxpro Corp. v. Apple, Inc.*,
  2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) ........................................................................14

17

18

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013)....................................................................................................8

19

20

*Mattel, Inc. v. MCA Recs.*,
  296 F.3d 894 (9th Cir. 2002)..................................................................................................11

21

*New York Times v. Sullivan*,
  376 U.S. 254 (1964) ................................................................................................................8

22

23

*New.Net, Inc. v. Lavasoft*,
  356 F. Supp. 2d 1090 (C.D. Cal. 2004)...................................................................................11

24

25

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) .....................................................................................9

26

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995)....................................................................................................5

27

28

*Rasmussen v. Apple Inc.*,
  27 F. Supp. 3d 1027 (N.D. Cal. 2014) ....................................................................................15

1

**<u>TABLE OF AUTHORITIES</u>**
(Continued)

2

<u>Page</u>

3

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ..................................................................4, 9

4

5

*Reudy v. Clear Channel Outdoors, Inc.*,
    693 F. Supp. 2d 1091 (N.D. Cal. 2010) ......................................................................14

6

*Song v. Drenberg*,
    2019 WL 1998944 (N.D. Cal. May 6, 2019) ...............................................................13

7

8

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .....................................................................................13

9

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990) .......................................................................................5

10

11

*Utah Lighthouse Ministry v. Found. for Apologetic Info. and Rsch.*,
    527 F.3d 1045 (10th Cir. 2008) ...................................................................................10

12

13

*Warren Technology, Inc. v. UL LLC*,
    962 F.3d 1324 (11th Cir. 2020) .....................................................................................7

14

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ..........................................................................9

15

16

*Xu v. Yamanaka*,
    2014 WL 342271 (N.D. Cal. Jan. 30, 2014) ...............................................................14

17

18

*ZL Techs., Inc. v. Gartner, Inc.*,
    709 F. Supp. 2d 789 (N.D. Cal. 2010), aff'd sub nom., 433 F. App'x 547 (9th
    Cir. 2011) ................................................................................................................5, 7, 8

19

20

**STATE CASES**

21

*Bernardo v. Planned Parenthood Fed'n of Am.*,
    115 Cal. App. 4th 322 (2004)........................................................................................5

22

23

*Botos v. Los Angeles County Bar Association*,
    151 Cal. App. 3d 1083 (1984).......................................................................................6

24

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017).........................................................................................11

25

26

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002)..................................................................................................12

27

*Quelime Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998)....................................................................................................12

28

**TABLE OF AUTHORITIES**
(Continued)

Page

*Rezec v. Sony Pictures Ent., Inc.*,
    116 Cal. App. 4th 135 (2004) ..................................................................................................11

**FEDERAL STATUTES**

28 U.S.C. § 1367(c)(3) .............................................................................................................1

Lanham Act, 15 U.S.C. § 1125 .......................................................................... 1, passim

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17204 .............................................................................................14

**CONSTITUTIONAL PROVISIONS**

U.S. Const., amend. I ......................................................................................... 1, passim

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on October 1, 2020 at 10:00 AM, or such other date and time as may be ordered, Defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss Plaintiff's complaint ("Compl."), ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.     INTRODUCTION**

This case is about Facebook's constitutionally-protected expression of opinion that Plaintiff Maffick, LLC ("Maffick") falls within Facebook's own definition of a "state-controlled media entity" (SCME).  Facebook made this assessment and labeled Maffick's Pages by weighing and applying multiple publicly-announced criteria to Maffick's particular circumstances.  Maffick disagrees with Facebook's assessment, but that disagreement does not render Facebook liable for defamation or any of the other claims in the complaint because the SCME label is a nonactionable statement of opinion under the First Amendment.  Moreover, Maffick is at least a limited purpose public figure for this lawsuit, yet its complaint does not plead facts sufficient to establish actual malice under the First Amendment, which is also fatal to all of its claims.  Finally, Maffick has failed to allege the elements of its tortious interference, UCL, and Lanham Act claims.

Notably, the Lanham Act is the only federal claim in the complaint, and it suffers from multiple pleading defects that cannot be fixed through amendment, including that the SCME label is not commercial speech subject to the Lanham Act under Maffick's own allegations.  At a minimum, the Court should dismiss the Lanham Act claim without leave to amend and decline to exercise supplemental jurisdiction over Maffick's remaining state law claims, which substantially predominate over its Lanham Act claim.  *See* 28 U.S.C. § 1367(c)(3).

**II.    BACKGROUND**

**A.     Facebook Labels State-Controlled Media To Promote Transparency**

Facebook announced on June 4, 2020 that it would begin to "label state-controlled media entities in order 'to provide an extra layer of protection against various types of foreign influence in the public debate ahead of the November 2020 election in the US.'"  Compl. ¶ 22; Declaration of Jonathan Blavin ("Blavin Decl.") Ex. A (June 4, 2020 Newsroom Post).  In consultation with more than 65 global experts in media, governance, and human rights and development, Facebook

developed its "own policy criteria to determine whether a publisher is wholly or partially under the editorial control of a government."  Blavin Decl. Ex. A at 2; *see* Compl. ¶ 22.[1]

As Maffick alleges, Facebook's definition of state-controlled media "extends beyond just assessing financial control or ownership and includes an assessment of editorial control exerted by a government," which considers multiple distinct criteria including and not limited to (a) mission statement, mandate, and/or public reporting; (b) ownership structures; (c) editorial guidelines (e.g., transparency around its sources of content); (d) information about newsroom leadership and staff; (e) sources of funding and revenue; (f) governance and accountability mechanisms; (g) country-specific factors, including press freedom; and (h) open source data, such as research conducted by academics and experts.  Compl. ¶¶ 23, 24; Blavin Decl. Ex. A at 2.  An organization that believes it has been labeled in error may submit an appeal providing additional documentation which Facebook reviews against its criteria.  Blavin Decl. Ex. A at 3.

### B.      Facebook Labels Maffick Russia State-Controlled Media

As alleged in the complaint, Maffick is a social media company that "focuses on social media optimization and brand development."  Compl. ¶ 10.  Maffick operates several Facebook Pages, including "In the Now," "Waste-Ed," and "Soapbox."  *Id.* ¶¶ 10-13.  Although Maffick was formed in July 2019, it inherited these pages from its corporate predecessor "Maffick Media," which was majority owned by Ruptly, a subsidiary of RT news, a Russian news channel funded by the Russian government.  *See id.* ¶ 15.  "Ruptly's stated goals include to build and extend the 'core strengths and values of [its] parent company RT,'" including "serving as an 'information weapon' against the Kremlin's adversaries."[2]  The complaint does not allege that Maffick Media was not a Russia-controlled media entity.  Maffick's Pages undisputedly predate Maffick's July 2019 formation and incorporation by several years.  "In the Now," for example, has posted content since at least 2016 and now has 4.9 million Facebook followers.[3]

---

[1] The exhibits attached to the Blavin Declaration may be considered under the incorporation by reference doctrine as explained in the Request for Judicial Notice, filed concurrently herewith.

[2] *See* Blavin Decl. iso Facebook's TRO Opposition, Exhibit D, ECF No. 10-4, available at https://securingdemocracy.gmfus.org/russias-network-of-millennial-media/.

[3] For example, this video captioned "Clinton, Google, Al Jazeera collaborated to sway regime…," is dated March 25, 2016, available at https://www.facebook.com/inthenow/videos/596617360488637.

Maffick acknowledges Ms. Anissa Naouai, its current owner, CEO, and the person with alleged final editorial control over Maffick's content, previously owned 49% of Maffick Media.  *Id.* ¶ 17.  Though Ms. Naouai is allegedly located in Los Angeles, Maffick's production team is partly based in Moscow.  *Id.* ¶ 34.  The Maffick Pages' email addresses use the domain "@maffick.media," which is registered to Plaintiff.  *See* ECF No. 10-10, 11.  Maffick continues to post the phrase "Affiliated with RT" in the "About" section of the Soapbox Page.  Compl. ¶ 21.

On June 5, Facebook applied an SCME label to the "Page Transparency" sections of three of Maffick's Facebook Pages stating that Facebook considers these Pages to be "Russia state-controlled media."  Compl. ¶ 25.[4]  On Maffick's Pages, Facebook explains that the label "is determined by a range of factors, including but not limited to funding, structure and journalistic standards."  Blavin Decl. ¶ 5, Ex. D.  A "See More" link, *id.* ¶ 6 & Ex. E, also directs readers to a Help Page explaining that the SCME label is applied if "*Facebook has determined*" a media outlet is "partially or wholly under the editorial control of their government," based on Facebook's "*own* definition and standards for state-controlled media organizations," *id.* ¶ 2, Ex. B (emphases added).  The SCME label also "now appears on every social media post by In the Now, Waste-Ed, and Soapbox."  Compl. ¶ 26. On Maffick's posts, the label provides users with a link to the same Help Page.  Blavin Decl. ¶¶ 7-8, Exs. F, G.   The Help Page makes clear that because "[g]overnments may exert editorial control over state-controlled media in a range of ways and to different degrees," an organization seeking to prove its independence should provide, *at minimum*, a statute protecting its editorial independence; established internal procedures which foster editorial independence; and a third-party assessment finding that the statute and established procedures are in fact followed.  *Id.* Ex. B.

**C.     Maffick Contests The Label Yet Concedes That No Third-Party Assessment Has Found Maffick Editorially Independent**

On June 30, Maffick wrote to Facebook contesting the application of the SCME label. Compl. ¶ 30.  In doing so, Maffick conceded that "there have not been external assessments of Maffick's editorial processes or accountability procedures."  *Id.* ¶ 37.   On July 20, Facebook

---

[4] Facebook has also applied the SCME label to pages operated by other media entities, including Press TV, Tasnim News Agency, Algerie Presse Service, Journal ech-chaab, and Russia Today.

replied that the documentation provided in Maffick's appeal "lack[ed] both the reliability and formality Facebook requires as part of the appeals process" because the documents made unsubstantiated assertions that Facebook had no means to verify.[5]  ECF No. 3-3.  Facebook "encourage[d] Maffick to submit additional materials that address these issues."  *Id.*  Maffick refused to do so, and instead filed this lawsuit on July 29 along with a motion for a temporary restraining order, ECF No. 3, which the Court has denied, ECF No. 29 ("TRO Order").

## III.    ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, Maffick must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

All of Maffick's claims suffer from two threshold constitutional deficiencies that warrant dismissal.  First, the SCME label is a nonactionable statement of opinion.  Second, even though it is at least a limited purpose public figure, Maffick does not allege facts establishing actual malice.  These deficiencies are fatal to all of Maffick's claims because the "gravamen" of those claims is "the alleged injurious falsehood of a statement" which is not commercial speech.  *E.g.*, *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1016 (N.D. Cal. 2017).  In addition, Maffick's Lanham Act and UCL claims should be dismissed because Maffick cannot establish that the SCME label is commercial speech.  Maffick's interference claims should be dismissed because Maffick does not adequately allege interference with specific relationships.  And Maffick's UCL claim separately should be dismissed for failure to allege unlawful, unfair, or fraudulent conduct.

### A.    The Label Is A Nonactionable Statement of Opinion

All of Maffick's claims fail at the outset because the SCME label is a nonactionable statement of opinion.  Because the legal protection for statements of opinion flows from the First Amendment, this defect is fatal to all of Maffick's claims.  *Coastal Abstract Serv., Inc. v. First Am.*

---

[5] Both Twitter and YouTube have applied similar labels to Maffick content.  Twitter has labeled Maffick "Russia state-affiliated media," and the label applies at the top of each of Maffick's tweets.  *See* https://twitter.com/inthenow.  Twitter defines the label as applying to "accounts that are controlled by certain official representatives of governments, state-affiliated media entities and individuals closely associated with those entities."  *See* https://help.twitter.com/en/rules-and-policies/state-affiliated.  Maffick's YouTube videos are accompanied by a statement by YouTube that "RT is funded in whole or in part by the Russian government."  *See, e.g.*, https://www.youtube.com/watch?v=04BZ7_eaDB0 (Soapbox YouTube channel video, Jan. 5, 2020).

*Title Ins. Co.*, 173 F.3d 725, 730–31 (9th Cir. 1999) (statements of opinion nonactionable under Lanham Act and California defamation law); *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (claims which are similar to defamation such as "tortious interference" are "subject to the same first amendment requirements that govern actions for defamation"); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (dismissing "tortious interference" claims for statements that "are nonactionable opinion protected by the First Amendment"); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 342–45 (2004) ("expressions of opinion" were "noncommercial speech fully protected under the First Amendment" and "not actionable under … the UCL").

On a motion to dismiss under Rule 12(b)(6), whether a statement is a constitutionally protected statement of opinion requires the court to "determine[] whether a statement can reasonably be interpreted as a factual assertion" by "examin[ing] the totality of the circumstances," including "[t]he context in which the statement appears."  *Knievel v. ESPN*, 393 F.3d 1068, 1074–75 (9th Cir. 2005).  This is a question of law that courts consistently resolve on the pleadings.[6]

Here, the context in which the label is applied makes clear that the SCME label cannot reasonably be interpreted as a factual assertion.  As part of Facebook's efforts to combat misinformation on the platform and "protect[] against various types of foreign influence in the public debate ahead of the November 2020 election in the US,"  Compl. ¶ 22, Facebook developed the label to provide its users with its own "*assessment of editorial control* exerted by a government" over media entities.  *Id.* ¶ 23 (emphasis added).  In other words, Facebook developed this label and the corresponding policy and definitions to allow it to communicate to its users and the general public its assessment of certain Pages sharing content on its platform.  As described above, *supra* at 3, Facebook makes available its definition of a SCME and the multiple criteria it considers in applying the label.  *Id.* ¶ 24; Blavin Decl. Ex. B.  Facebook, for example, informs users that "*Facebook defines* state-controlled media as media outlets that Facebook has determined are partially or wholly under the editorial control of their government" and that "Facebook identifies

---

[6] *See, e.g.*, *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (listing cases); *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 800-01 (N.D. Cal. 2010), *aff'd sub nom.*, 433 F. App'x 547 (9th Cir. 2011) (dismissing claims on pleading as challenged statements were nonactionable opinions).

these organizations by using *our definition and standards* to review their ownership, governance, sources of funding, and processes that ensure editorial independence."  *Id.* (emphasis added); Compl. ¶ 23.  Facebook explains that its definition accounts for the fact that "[g]overnments may exert editorial control over state-controlled media in a range of ways and to different degrees." Blavin Decl. Ex. B. Facebook informs viewers that its definition looks to multiple criteria including "how the organization defines and accomplishes its journalistic mission," "information on owners," "[e]ditorial guidelines [such as] transparency around its sources of content [and] independence and diversity of sources," "[i]nformation about newsroom leadership and staff," "[s]ources of funding and revenue," and "[g]overnance and accountability mechanisms."  Compl. ¶ 24.

These contextual statements explain in a straightforward way that the label reflects Facebook's own considered judgment based on multiple criteria, and how those criteria should be applied and weighed in a particular circumstance.  As courts consistently have recognized, a collective judgment rendered by a speaker based on multiple criteria like Facebook's SCME label constitutes a nonactionable statement of opinion.  And in doing so, the courts have looked beyond simply a label or rating itself and have considered the surrounding context that describes *how* the speech is defined and what it means.

In *Botos v. Los Angeles County Bar Association*, 151 Cal. App. 3d 1083, 1089-90 & n.3 (1984), the California Court of Appeal held on the pleadings that a bar association's rating of a judicial candidate as "not qualified"—as it appeared in legal newspapers—was not actionable as defamation because it reflected the association's "collective *opinion* of [the plaintiff]," taking into consideration multiple factors reflected in the association's public report including "professional ability, experience, competence, integrity and temperament."  *Id.*

Similarly, in *Aviation Charter, Inc. v. Aviation Research Grp.*, 416 F.3d 864, 870–71 (8th Cir. 2005), the plaintiff sued the defendant for statements made by its CEO about its "unfavorable safety record" rating in a newspaper article, and separately in a public report.  In evaluating the newspaper statements, the Eighth Circuit considered the overall report prepared by the defendant. *Id.*  The court held that the "unfavorable safety record" statements were nonactionable statements of opinion because the defendant had "defined 'safety' relative to its own methodology" and "chose

which underlying data to prioritize" and "performed a subjective review of those data." *Id.*

Likewise, in *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007), the Sixth Circuit considered the claim that Moody's "credit rating itself was defamatory." The court refused to examine the credit rating in isolation, noting that a Moody's rating was "dependent on a subjective and discretionary weighing of complex factors." *Id.* In light of that context, the court concluded that the rating was a nonactionable statement of opinion, explaining, "[e]ven if we could draw any fact-based inferences from this rating, such inferences could not be proven false because of the inherently subjective nature of Moody's ratings calculation." *Id.*

And in *Warren Tech., Inc. v. UL LLC,* 962 F.3d 1324, 1328 (11th Cir. 2020), the court affirmed the Rule 12(b)(6) dismissal of Lanham Act claims predicated on allegations that defendant UL, an OSHA-accredited testing laboratory, wrongly certified a competitor's products as compliant with safety standards. The Eleventh Circuit explained that "[d]etermining the conformance of a product with a UL standard obviously requires UL to interpret the standard, just as conformance with a statute requires a court to interpret the statute." *Id.* The court rejected the notion that that even a misinterpretation of the standard "is a falsity … rather than a matter of opinion…." *Id.* & n.3.

Several other cases similarly support the proposition that application of multiple criteria to determine whether a particular label applies is a matter of opinion that is not actionable. *See, e.g., ZL Techs.,* 709 F. Supp. 2d at 800–01 (granting Rule 12(b)(6) motion because company's rating of plaintiff as "Niche Player" takes into account numerous factors and reflects its "opinion" protected under the First Amendment)*; Forsyth v. Motion Picture Ass'n of Am., Inc.*, 2016 WL 6650059, at *3–4 (N.D. Cal. Nov. 10, 2016) (defendant "holds First Amendment rights to express its opinions that are reflected in the [parental caution] ratings system" which "precludes the basic relief [plaintiff] seeks in this action—forcing [defendant] to express different or additional opinions").

Likewise, here, the label reflects Facebook's interpretation of multiple distinct criteria and Facebook's own judgment about how much weight to give each criterion, which are not objectively verifiable facts. "What factors [Facebook] believes to be important in assessing [the state-controlled media label], and the result of the defendant's weighing of those factors, cannot be proven false." *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018). That the SCME label reflects an

assessment by Facebook based on underlying facts does not alter this analysis.  "Most opinions are

based at least in part on facts," and "[t]hat [the defendant] considered facts in forming its opinions

does not mean that the opinions are objectively verifiable."  *ZL Techs.*, 709 F. Supp. 2d at 798.

While the application of the SCME label may rest on a body of facts, the label itself "do[es] not

imply the assertion of specific *objective* facts" because the weight that Facebook applies to its own

criteria in a particular instance "is not verifiable" and reflects Facebook's "subjective assessment of

what is important."  *Id.* at 800*; see also Aviation Charter*, 416 F.3d at 870 (though statement airline

had "unfavorable safety record" "relie[d] in part on objectively verifiable data, the interpretation of

those data was ultimately a subjective assessment, not an objectively verifiable fact").

### B.    Maffick Has Not Pled Actual Malice

Maffick's claims fail for a second reason—the complaint does not allege sufficient facts to

establish actual malice.  Because the label is not commercial speech for the reasons discussed *infra*

at 10-12, the actual malice standard applies to all of Maffick's claims, not just its defamation claim.[7]

Under the First Amendment, a public figure cannot prevail in a defamation suit unless the

figure can show that the allegedly defamatory statements were made with actual malice, that is,

with knowledge of their falsity or with reckless disregard for the truth.  *New York Times v. Sullivan*,

376 U.S. 254 (1964).  Reckless disregard for the truth means that the defendant must have "actually

had a 'high degree of awareness of … probable falsity.'"  *Harte-Hanks Commc'ns, Inc. v.*

*Connaughton*, 491 U.S. 657, 688 (1989).  The category of public figures subject to the actual

malice standard includes limited purpose public figures, who achieve that status by "thrust[ing]

themselves to the forefront of particular public controversies in order to influence the resolution of

the issues involved."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).  To determine whether

an organization is a limited purpose public figure, courts consider "whether (i) a public controversy

---

[7] *E.g., Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1186 (9th Cir. 2001) (dismissing UCL and Lanham Act claims for failure to plead actual malice for noncommercial speech); *Gardner*, 563 F.3d at 992 ("when a claim of tortious interference with business relationships is brought as a result of constitutionally-protected speech, the claim is subject to the same First Amendment requirements that govern actions for defamation"); *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56–57 (1988) (applying actual malice standard to non-defamation claim because "such a standard is necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment").

existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013).  Because Maffick uses Facebook to increase its visibility and to participate in public discussion about current affairs, including foreign influence in United States politics, *see* Compl. ¶¶ 11-13, Maffick is at least a limited purpose public figure for purposes of this lawsuit.  Thus, Maffick must establish that Facebook applied the SCME label to its Pages knowing that the statement was false or acting with reckless disregard for its truth.

"[A]ctual malice must be pled with specificity." *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1108 (N.D. Cal. 1999).  "In any case … where a plaintiff seeks damages or injunctive relief … for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Franchise Realty Interstate Corp. v. S.F. Loc. Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976).  Under this heightened standard, "general allegations," *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014), or "conclusory statements that [the defendant] should have known the truth," *Nicosia*, 72 F. Supp. 2d at 1109, are insufficient to survive a motion to dismiss.  *See also Resolute Forest*, 302 F. Supp. 3d at 1018 ("the court must 'disregard the portions of the complaint where [Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements'").  Instead, the complaint must include "*specific allegations* that would support a finding that [the Defendants] harbored serious subjective doubts as to the validity of [their] assertions." *Id.* at 1019 (quoting *Wynn*, 75 F. Supp. 3d at 1239) (emphasis added).

Such allegations are wholly absent from the complaint.  Maffick simply alleges that "Facebook knows or should know that the Notice is false" because "Maffick has provided proof to Facebook that it is not owned or controlled by the Russian government, and that it is an independent, U.S.-based company, operated and controlled by U.S. citizens from Los Angeles." Compl. ¶¶ 44-45.  As Maffick acknowledges in its complaint, however, this "proof" consists entirely of Maffick's own self-serving denials about its editorial independence, which are insufficient as a matter of law to

establish actual malice.   A speaker "need not believe self-serving denials, 'as such denials are so commonplace in the world of polemical charge and countercharge.'"   *Harris v. City of Seattle*, 152 F. App'x 565, 569 (9th Cir. 2005).  As the Court noted in the TRO Order, Maffick's "evidence" that it is not a SCME under Facebook's definition consists largely of "purely conclusory statements to the effect that Maffick is free and clear of Maffick Media and Russia."  TRO Order at 4.

Far from pleading allegations that would establish a reckless disregard for the truth, the complaint itself, and admissions made by Maffick in declarations filed with the Court, show that Facebook had ample justification for applying the SCME label to Maffick's Pages based upon its own criteria.  Maffick acknowledges that its predecessor, Maffick Media, had long ties to and was majority owned by an RT subsidiary until July 2019; Maffick and Maffick Media share a name, the same media channels and content, and the same CEO and content producers; Maffick continues to describe itself as "Affiliated with RT;" and, Maffick's CEO "lived for years in Moscow, was employed by Russia Today, and hosted an opinion show for RT called 'In the Now.'"  TRO Order at 4; *see supra* at 3.   As the Court noted in its Order, Facebook had "a considerable amount of evidence" "in support of its view that Maffick is linked to the Russian government."  *Id.* at 4.

To be sure, Maffick disputes the weight that Facebook gave to these facts in deciding to apply the label, but that disagreement with Facebook's conclusion is legally insufficient to show that Facebook acted with actual malice, particularly where, as the Court has noted, Maffick has presented only "uncompelling evidence of falsity."  TRO Order at 6.  And as Maffick itself pleads, Facebook *twice* asked Maffick to submit additional materials documenting Maffick's editorial independence through Facebook's appeal process, which is available to all organizations who believe they have been mislabeled.  Compl. ¶¶ 41, 43; Blavin Decl. Ex. B at 1.

### C.   The Lanham Act and UCL Claims Also Fail Because Maffick Does Not Plausibly Allege that the Label is Commercial Speech

Maffick's Lanham Act and UCL claims also fail because Maffick does not plausibly allege that the label constitutes commercial speech.  The Lanham Act applies only to commercial speech, because, as "a matter of First Amendment law, commercial speech may be regulated in ways that would be impermissible if the same regulation were applied to noncommercial expressions."

1  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).[8]  Likewise, "California's

2  consumer protections laws, like the unfair competition law, govern only commercial speech."

3  *Rezec v. Sony Pictures Ent., Inc.*, 116 Cal. App. 4th 135, 140 (2004) (emphasis omitted).

4       "[T]he 'core notion of commercial speech' is that it 'does no more than propose a

5  commercial transaction.'"  *Hoffman*, 255 F.3d at 1184 (quoting *Bolger v. Youngs Drug Prods.*

6  *Corp.*, 463 U.S. 60, 66 (1983)).  "If speech is not 'purely commercial'—that is, if it does more than

7  propose a commercial transaction—then it is entitled to full First Amendment protection."  *Mattel,*

8  *Inc. v. MCA Recs.*, 296 F.3d 894, 906 (9th Cir. 2002).

9       Facebook's label is not commercial because it proposes no transaction, does not link to

10  advertisements, and does not offer to sell any goods or services.  Indeed, Facebook could not be

11  using the label as part of proposing a "commercial transaction," because Facebook "is available for

12  free to the general public" and there is thus "no 'purchase.'"  *New.Net, Inc. v. Lavasoft*, 356 F. Supp.

13  2d 1090, 1118 (C.D. Cal. 2004); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 203 (2017)

14  (concluding that, "while Facebook sells advertising, it is not 'primarily engaged in the business of

15  selling or leasing goods or services,'" and therefore the commercial speech exception of anti-

16  SLAPP statute does not apply to statements on Facebook pages).  Far from proposing a commercial

17  transaction, Facebook's label is an expression of Facebook's opinion on a topic of undisputedly

18  great public importance.  *See, e.g., L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852,

19  864 (N.D. Cal. 2015) ("Statements made to the media" and public "concerning a matter of public

20  importance are not commercial speech, and are protected under the First Amendment."); *see also*

21  TRO Order at 6 (noting "the public interest served by Facebook's notices").

22       Maffick does not allege that the purpose of the SCME label is to engage in a commercial

23  transaction or to advertise products or services.  Rather, Maffick alleges that the label is "part of an

24  effort" by Facebook to show "itself as a responsible social media company" that is taking

25

26  [8] The Lanham Act's requirement that the challenged conduct occur "in connection with any goods
   or services" has been understood to impose a "commercial use requirement."  15 U.S.C.

27  § 1125(a)(1); *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Rsch.*, 527 F.3d 1045,
   1051-52 (10th Cir. 2008).  Similarly, the false advertising prong requires that the challenged

28  statement be made "in commercial advertising or promotion."  15 U.S.C. § 1125(a)(1)(B).

1    "sufficient actions to preserve the integrity of U.S. elections from improper social media influence

2    by foreign governments" particularly when it is "under scrutiny by the press and the federal

3    government" to do so—undoubtedly issues of significant public importance.  Compl. ¶ 82.[9]

4          Even if Facebook had an "economic motivation" in applying the label (which Maffick does

5    not even allege), this "would clearly be insufficient by itself to turn [the label] into commercial

6    speech."  *Bolger*, 463 U.S. at 67.  Otherwise, any time a company spoke on an issue of public or

7    political importance—be it support for racial justice or LGBT rights—and there was some indirect

8    financial benefit to the company as a result of the speech, this would deprive the speech of full First

9    Amendment protection.  That is obviously not the case.  Rather, as the Ninth Circuit has made

10   clear, a "profit motive" and the desire "to reach a broader audience and attract more advertising"

11   through speech is insufficient to render that speech commercial.  *Dex Media*, 696 F.3d at 965.

12         *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002), the primary case which Maffick relied on in its

13   TRO reply, ECF No. 17 at 11-12, is not to the contrary.  In *Kasky*, the California Supreme Court

14   held that the First Amendment did not prohibit a suit under California law alleging that Nike had

15   made false statements under the UCL about its labor practices for the purpose of inducing

16   consumers to buy its products.  In reaching this conclusion, the court emphasized that Nike's

17   statements were "factual representations about its own business operations" that "were addressed

18   *directly to actual and potential purchasers* of Nike's products."  *Id.* at 963 (emphasis added).  The

19   court further noted that the complaint alleged that "Nike's *purpose* in making these statements" was

20   "to maintain its sales and profits."  *Id.*  (emphasis added).  Finally, the court recognized that

21   "government regulation of Nike's speech" was consistent with trade regulation laws that prohibit

22   "false and misleading commercial practices."  *Id.* at 964.

23         Here, by contrast, the SCME label is not directed to actual or potential purchasers of

24   Facebook's products.  Rather, the label is directed to Facebook users, who can access the social

25   media platform for free.  The purchasers of Facebook's products are advertisers, and the SCME

26

27   _____

28   [9] Assuming Maffick could identify *any* commercial aspects of the label, those aspects would need to
     be "inextricably intertwined" with Facebook's assessment that Maffick is an SCME.  *Dex Media W.,*
     *Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012).  Maffick has not alleged that, nor can it.

label is not directed at them.  Nor is the SCME label a statement about Facebook's own business operations.  Instead, it is a judgment made by Facebook about Maffick's operations.  In addition, unlike Nike, Facebook is not engaging in the speech at issue to promote its own sales and profits.  And Facebook's SCME label, unlike Nike's statements about its labor practices, is not a subject of traditional government regulation.  While trade laws have traditionally regulated statements about the location and conditions under which commercial products are made, there are no comparable laws that regulate statements about foreign government influence over social media.

### D.   Maffick's Tortious Interference Claims Fail For Additional Reasons

Maffick also has not alleged sufficient facts to support its tortious interference claims.  All three of Maffick's interference torts require Maffick to establish both the existence of the requisite business relationship and the defendant's knowledge of the relationship.  *See Quelime Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).  Maffick fails to do so.

First, Maffick fails to allege particular business relationships that meet these elements.  The complaint does not identify either a specific valid contract or a specific prospective business relationship that Facebook is purported to have interfered.  Instead, the complaint generally alleges that Maffick "has existing contracts with various brands and organizations," Compl. ¶ 60, and that Maffick "has been actively expanding its paid partnerships," *id.* ¶ 67, none of which is identified.  Such generalities are insufficient to plead a claim of tortious interference.  In *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008), the Ninth Circuit affirmed dismissal of a tortious interference claim for failure "to plead facts either showing or allowing the inference of actual disruption to its relationship with" customers.  The court noted that the complaint "merely state[d]" harm to business relationships "in a conclusory manner" and did not allege, "for example, that it lost a contract nor that a negotiation with a Customer failed."  *Id.*  Following *Sybersound Records*, courts in this District have dismissed tortious interference claims that "do not allege any particular lost contracts or failed negotiations."  *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1032 (N.D. Cal. 2011); *Song v. Drenberg*, 2019 WL 1998944, at *7-8 (N.D. Cal. May 6, 2019) (dismissing tortious interference claim for "fail[ing] to name a single entity or person with whom Plaintiffs might have had a prospective business relationship with which [the

1   defendant] tort[i]ously interfered").  This Court should do the same.[10]

2        Second, Maffick also has not alleged facts sufficient to establish that Facebook knew about

3   these relationships.  Here again, the complaint contains nothing more than conclusory assertions

4   about Facebook's knowledge of the (unspecified) existing or prospective relationships with which it

5   is alleged to have interfered.  Compl. ¶ 61 ("Facebook knows about the existence of Maffick's

6   contractual relationships."); *id.* ¶ 68 ("Facebook knows about Maffick's prospective economic

7   relations…."); *id.* ¶ 74 (similar).  Such conclusory allegations "are insufficient to plead" a

8   defendant's "knowledge of an economic relationship" for a tortious interference claim.  *Capitol W.*

9   *Appraisals LLC v. Countrywide Fin. Corp.*, 467 F. App'x 738, 740 (9th Cir. 2012).

10        Finally, Maffick does not adequately allege that Facebook caused the disruption of any

11   particular current or prospective business relationship, which is also an element of all three

12   interference torts.  The complaint generally alleges that publication of the SCME label has harmed

13   Maffick's "ongoing business relationships, and the viability of several current business

14   development opportunities."  Compl. ¶ 47.  But Maffick does not allege that any specific current or

15   prospective business relationship "terminated as a result of" Facebook's conduct, and that failure is

16   fatal to its tortious interference claims.  *Luxpro Corp. v. Apple, Inc.*, 2011 WL 1086027, at *9 (N.D.

17   Cal. Mar. 24, 2011); *see Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1124 (N.D.

18   Cal. 2010) (dismissing interference claim where plaintiffs failed to plausibly "allege any link

19   between [Defendants'] alleged acts and any design or disruption" of a business relationship).

20        At most, the complaint alleges that Maffick's traffic and monetization of its Pages have

21   dropped since Facebook published the SCME label.  Compl. ¶ 48.  That allegation is insufficient to

22   plead facts that would establish a causal connection between the SCME label and the purported

23   drop in visits to Maffick's Pages, and in any event such a drop in viewership does not sufficiently

24   allege interference with Maffick's relationships with (unspecified) business partners, who are

25

26   [10] The Second Declaration of Maffick CEO Anissa Naouai, which was filed with its reply in support
    of its application for a TRO, is outside the allegations of the complaint and cannot be considered
27   under the 12(b)(6) standard.  At any rate, even if considered, it does not remedy these fundamental
    defects in the complaint.  The declaration does not allege that Maffick has lost contracts or failed in
28   negotiations with any of these companies *as a result of* Facebook's label.  Instead, it merely offers
    conclusory and general assertions about the label's effect on Maffick's business relationships.

1   (according to Maffick) advertisers and not the viewers of its Pages.

2           **E.      Maffick Fails to Allege Standing or Actionable Conduct Under the UCL**

3           Maffick's UCL claims fail for multiple additional reasons.  First, Maffick fails to allege

4   statutory standing for its UCL claim, which requires it to "(1) establish a loss or deprivation of

5   money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that

6   economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v.*

7   *Superior Court*, 51 Cal. 4th 310, 321–22 (2011) (citing Cal. Bus. Prof. Code § 17204). Maffick

8   does not allege that it lost any money or property "as a result of" the SCME label.  At most, the

9   complaint contains conclusory allegations that Facebook's application of the SCME label to its

10  Pages "has negatively affected [its] monetization of its social media pages and their reach."  Compl.

11  ¶ 90.  But such speculative allegations do not suffice to allege any *causal* relationship between the

12  label and the decrease in monetization and reach.  *See, e.g., Greene v. Wells Fargo Bank, N.A.*,

13  2019 WL 1331027, at *10 (N.D. Cal. Mar. 25, 2019) (dismissing for failure "to plausibly allege a

14  causal link between Defendants' conduct" and purported injury).

15          Second, Maffick fails to allege unlawful, unfair, or fraudulent conduct.  Maffick fails to

16  state a claim under the "unlawful" prong because Maffick fails to show that Facebook violated any

17  other law.  Maffick's complaint is also insufficient to plead unfair or fraudulent conduct.  To be

18  actionable as unfair or fraudulent, a statement must be a "specific and measurable claim, capable of

19  being proved false or of being reasonably interpreted as a statement of objective fact."  *Rasmussen*

20  *v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039-40 (N.D. Cal. 2014).  For the reasons set forth above, the

21  SCME label is neither a statement of objective fact nor a statement that is capable of being proved

22  false.  Rather, the SCME label reflects Facebook's subjective judgment regarding the application of

23  multiple criteria to the particular context of Maffick's Pages.  Maffick may disagree with

24  Facebook's judgment that the circumstances warrant applying this label, but that does not make the

25  label a statement of objective fact that can be proved false for purposes of the UCL.

26  **IV.    CONCLUSION**

27          The Court should dismiss the complaint in its entirety, or at a minimum, dismiss Maffick's

28  Lanham Act claim and decline to exercise supplemental jurisdiction over the state-law claims.

1   DATED:  September 4, 2020                    MUNGER, TOLLES & OLSON LLP

2

3
                                                By:  /s/ Jonathan H. Blavin
4                                                    JONATHAN H. BLAVIN
                                                Attorneys for Defendant Facebook, Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28