JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
MARIANNA MAO (State Bar No. 318070)
marianna.mao@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:      (415) 512-4000
Facsimile:      (415) 512-4077

DONALD B. VERRILLI, JR. (*pro hac vice* application pending)
donald.verrilli@mto.com
JONATHAN KRAVIS (*pro hac vice* application pending)
Jonathan.kravis@mto.com
ZOE BEDELL (*pro hac vice* application pending)
zoe.bedell@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, DC  20004-1361
Telephone:      (202) 220-1100
Facsimile:      (202) 220-2300

Attorneys for Defendant
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAFFICK LLC, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>          vs.<br><br>FACEBOOK, INC., a Delaware corporation, and Does 1-10, inclusive.<br><br>                    Defendants. | Case No. 3:20-cv-05222-JD<br><br>**DEFENDANT FACEBOOK, INC.'S NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE COUNTS ONE THROUGH FOUR AND SIX OF PLAINTIFF'S COMPLAINT (PURSUANT TO CAL. CODE CIV. PROC. § 425.16)**<br><br>Judge:          Hon. James Donato<br>Hearing Date:   October 1, 2020<br>Hearing Time:   10:00 AM |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND ...........................................................................1

        A.      Facebook Labels State-Controlled Media To Provide Viewers With Greater
                Transparency About News Content ...........................................................1

        B.      Facebook Labels Maffick Russia State-Controlled Media .........................2

        C.      Maffick Contests The Label Yet Concedes That No Third-Party Assessment
                Has Found Maffick Editorially Independent..............................................3

III.    LEGAL STANDARD ........................................................................................4

IV.     ARGUMENT .....................................................................................................5

        A.      Maffick's Claims Arise from an Act in Furtherance of the Right of Free
                Speech .......................................................................................................5

        B.      The Statutory Commercial Speech Exemption Does Not Apply ...............7

        C.      Maffick Cannot Demonstrate a Probability of Success on its State Law
                Claims........................................................................................................8

                1.      The SCME Label Is a Nonactionable Statement of Opinion ........9

                2.      Maffick Does Not Sufficiently Allege Actual Malice ...............12

                3.      Maffick's Tortious Interference Claims Fail..............................13

                4.      Maffick Fails to Allege Standing or Actionable Conduct Under the
                        UCL...........................................................................................14

V.      CONCLUSION ................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page**

**FEDERAL CASES**

*Aviation Charter, Inc. v. Aviation Rsch. Grp.*,
   416 F.3d 864 (8th Cir. 2005)............................................................................................11

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003).........................................................................................1, 4

*Bosley Med. Inst., Inc. v. Kreimer*,
   403 F.3d 672 (9th Cir. 2005)............................................................................................14

*Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*,
   467 F. App'x 738 (9th Cir. 2012)......................................................................................14

*Choyce v. SF Bay Area Indep. Media Ctr.*,
   2013 WL 6234628 (N.D. Cal. Dec. 2, 2013) .....................................................................4

*Clark v. Hidden Valley Lake Ass'n*,
   2017 WL 4922375 (N.D. Cal. Oct. 31, 2017) ....................................................................5

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
   499 F.3d 520 (6th Cir. 2007)............................................................................................11

*Davis v. Avvo, Inc.*,
   345 F. Supp. 3d 534 (S.D.N.Y. 2018)...............................................................................11

*E.D.C. Technologies, Inc. v. Seidel*,
   225 F. Supp. 3d 1058 (N.D. Cal. 2016) ..............................................................................8

*Forsyth v. Motion Picture Ass'n of Am., Inc.*,
   2016 WL 6650059 (N.D. Cal. Nov. 10, 2016)..................................................................11

*Franchise Realty Interstate Corp. v. S.F. Loc. Joint Exec. Bd. of Culinary Workers*,
   542 F.2d 1076 (9th Cir. 1976)..........................................................................................12

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009)...............................................................................................9

*Greene v. Wells Fargo Bank, N.A.*,
   2019 WL 1331027 (N.D. Cal. Mar. 25, 2019) ..................................................................15

*Harris v. City of Seattle*,
   152 F. App'x 565 (9th Cir. 2005)......................................................................................13

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ..........................................................................................................12

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2

<u>Page</u>

3

*Henley v. Jacobs*,
   2019 WL 8333524 (N.D. Cal. Aug. 2, 2019) ...............................................................................6

4

5

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010)..............................................................................................5, 6

6

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)...................................................................................................9

7

8

*Luxpro Corp. v. Apple, Inc.*,
   2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) ........................................................................14

9

10

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013)......................................................................................................7

11

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008)....................................................................................................9

12

13

*New York Times v. Sullivan*,
   376 U.S. 254 (1964) ..................................................................................................................12

14

*New.Net, Inc. v. Lavasoft*,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004)...............................................................................7, 15

15

16

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999) ...........................................................................12

17

18

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995)......................................................................................................9

19

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828, amended by 897 F.3d 1224 (9th Cir. 2018) ........................................................9

20

21

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027, 1039-40 (N.D. Cal. 2014) .....................................................................15

22

23

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) ...................................................................................12

24

*Song v. Drenberg*,
   2019 WL 1998944 (N.D. Cal. May 6, 2019) ...........................................................................13

25

26

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008)...................................................................................................13

27

28

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Todd v. Lovecruft,*
  2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ...................................................................................5

*Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.,*
  682 F. Supp. 2d 1003 (N.D. Cal. 2010) ...................................................................................8

*Unelko Corp. v. Rooney,*
  912 F.2d 1049 (9th Cir. 1990)...................................................................................................9

*United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,*
  190 F.3d 963 (9th Cir. 1999)......................................................................................................4

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003)..............................................................................................4, 5

*Wynn v. Chanos,*
  75 F. Supp. 3d 1228 (N.D. Cal. 2014) ..................................................................................12

*Xu v. Yamanaka,*
  2014 WL 342271 (N.D. Cal. Jan. 30, 2014) .........................................................................15

*ZL Techs., Inc. v. Gartner, Inc.,*
  709 F. Supp. 2d 789 (N.D. Cal. 2010), aff'd sub nom., 433 F. App'x 547 (9th
  Cir. 2011) ...........................................................................................................................9, 11

**STATE CASES**

*Bernardo v. Planned Parenthood Fed'n of Am.,*
  115 Cal. App. 4th 322 (2004)...............................................................................................9, 14

*Botos v. L.A. Cnty. Bar Ass'n,*
  151 Cal. App. 3d 1083 (1984).................................................................................................10

*Chaker v. Mateo,*
  209 Cal. App. 4th 1138 (2012)..................................................................................................7

*Cross v. Facebook,*
  14 Cal. App. 5th 190, 199 (2017).........................................................................................5, 8

*Daniel v. Wayans,*
  8 Cal. App. 5th 367, 387 (2017)................................................................................................5

*Gilbert v. Sykes,*
  147 Cal. App. 4th 13 (2007)......................................................................................................6

DEFENDANT'S SPECIAL MOTION TO STRIKE

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
   203 Cal. App. 4th 450 (2012)..................................................................................6

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005)..............................................................................15

*Kasky v. Nike*,
   27 Cal. 4th 939 (2002)............................................................................................15

*Quelime Co. v. Stewart Title Guar. Co.*,
   19 Cal. 4th 26 (1998)..............................................................................................13

*Rezec v. Sony Pictures Ent., Inc.*,
   116 Cal. App. 4th 135 (2004)................................................................................14

*Simpson Strong-Tie Co. v. Gore*,
   49 Cal. 4th 12 (2010)................................................................................................8

*Taheri Law Group v. Evans*,
   160 Cal. App. 4th 482 (2008)..................................................................................8

*Wilbanks v. Wolk*,
   121 Cal. App. 4th 883 (2004)..................................................................................7

STATE STATUTES

California Anti-SLAPP Law, Cal. Code Civ. Proc. § 426.16 et seq.........................4, 5, 7

Unfair Competition Law, Cal. Bus. & Prof. Code §17200 ...................................9, 14, 15

CONSTITUTIONAL PROVISIONS

First Amendment.........................................................................................................12

U.S. Const., amend. I ...................................................................................1, 9, 11, 12

<u>**NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE**</u>

PLEASE TAKE NOTICE that on October 1, 2020 at 10:00 AM or such other date and time as may be ordered, Defendant Facebook, Inc. ("Facebook") will and hereby does move to strike the causes of action arising from California law (Counts One, Two, Three, Four, and Six) in the complaint of Maffick LLC ("Maffick") pursuant to California Code of Civil Procedure § 425.16.

## I. INTRODUCTION

This lawsuit impermissibly seeks to chill the protected speech of Facebook in violation of the California anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute. The conduct challenged in Maffick's complaint—Facebook's application of its state-controlled media entity ("SCME") label to Maffick's Facebook Pages—constitutes speech by Facebook on a public forum concerning a matter of pressing public interest. By its plain terms, the anti-SLAPP statute forbids Maffick's effort to interfere with Facebook's First Amendment rights through litigation. Indeed, Facebook's "rights under the anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability," and thus constitute a "*substantive immunity from suit*." *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) (emphasis added). Maffick's state law claims directly infringe on that immunity and should be dismissed under the anti-SLAPP statute.[1]

## II. FACTUAL BACKGROUND

### A. Facebook Labels State-Controlled Media To Provide Viewers With Greater Transparency About News Content

Facebook announced on June 4, 2020, that it would begin to "label state-controlled media entities in order 'to provide an extra layer of protection against various types of foreign influence in the public debate ahead of the November 2020 election in the US.'" Compl. ¶ 22; Declaration of Jonathan Blavin ("Blavin Decl.") Ex. A (June 4, 2020 Newsroom Post).[2] In consultation with more than 65 global experts in media, governance, and human rights and development, Facebook

---

[1] Facebook has concurrently filed a motion pursuant to Rule 12(b)(6) to dismiss all of Maffick's claims, including its federal Lanham Act claim, which it references throughout this motion.

[2] The exhibits attached to the Blavin Declaration may be considered under the incorporation by reference doctrine as explained in the Request for Judicial Notice, filed concurrently herewith.

developed its "own policy criteria to determine whether a publisher is wholly or partially under the editorial control of a government."  Blavin Decl. Ex. A at 2; *see* Compl. ¶ 25.

As Maffick alleges, Facebook's definition of state-controlled media "extends beyond just assessing financial control or ownership and includes an assessment of editorial control exerted by a government," which considers multiple distinct criteria including and not limited to (a) mission statement, mandate, and/or public reporting on how the organization defines and accomplishes its mission; (b) ownership structures; (c) editorial guidelines (e.g., transparency around its sources of content); (d) information about newsroom leadership and staff; (e) sources of funding and revenue; and (f) governance and accountability mechanisms; (g) country-specific factors, including press freedom; and (h) open source data, such as research conducted by academics and experts.  *Id.* ¶¶ 23, 24; Blavin Decl. Ex. A at 2.  An organization that believes it has been labeled in error may submit an appeal providing additional documentation which Facebook reviews against its criteria.  *Id.* at 3.

### B.   Facebook Labels Maffick Russia State-Controlled Media

As alleged, Maffick is a social media company that "focuses on social media optimization and brand development."  Compl. ¶ 10.  Maffick operates several Facebook Pages, including:  "In the Now," "Waste-Ed," and "Soapbox."  *Id.* ¶¶ 10-13.  Although Maffick was formed in July 2019, it inherited these pages from its corporate predecessor "Maffick Media," which was majority owned by Ruptly, a subsidiary of RT news, a Russian news channel funded by the Russian government. *See id.* ¶ 15.  "Ruptly's stated goals include to build and extend the 'core strengths and values of [its] parent company RT,'" including "serving as an 'information weapon' against the Kremlin's adversaries."[3]  The complaint does not allege that Maffick Media was not a Russia-controlled media entity.  Maffick's Pages also undisputedly contain Maffick Media content that predate Maffick's July 2019 formation and incorporation by several years.  "In the Now," for example, has posted content since at least 2016 and now has 4.9 million Facebook followers.[4]

---

[3] *See* TRO Opp., Blavin Decl. Ex. D, ECF No. 10-4, available at https://securingdemocracy.gmfus.org/russias-network-of-millennial-media/.

[4] For example, this video captioned "Clinton, Google, Al Jazeera collaborated to sway regime…," is dated March 25, 2016, available at https://www.facebook.com/inthenow/videos/596617360488637.

DEFENDANT'S SPECIAL MOTION TO STRIKE

Maffick acknowledges Ms. Anissa Naouai, its current owner, CEO, and the person with alleged final editorial control over Maffick's content, previously owned 49% of Maffick Media. Compl. ¶ 17.  Though Ms. Naouai is allegedly located in Los Angeles, Maffick's production team is partly based in Moscow.  *Id.* ¶ 34.  The Maffick Pages' email addresses use the domain "@maffick.media," which is registered to Plaintiff.  *See* ECF No. 10-10, 11.  Maffick continues to post the phrase "Affiliated with RT" in the "About" section of the Soapbox Page.  Compl. ¶ 21.

On June 5, Facebook applied an SCME label to the "Page Transparency" sections of three of Maffick's Facebook Pages stating that Facebook considers these Pages to be "Russia state-controlled media."  Compl. ¶ 25.[5]  On Maffick's Pages, Facebook explains that the label "is determined by a range of factors, including but not limited to funding, structure and journalistic standards." Blavin Decl. ¶ 5, Ex. D.  A "See More" link, *id.* ¶ 6 & Ex. E, also directs readers to a Help Page explaining that the SCME label is applied if "*Facebook has determined*" a media outlet is "partially or wholly under the editorial control of their government," based on Facebook's "*own* definition and standards for state-controlled media organizations," *id.* ¶ 2, Ex. B (emphases added).  The SCME label also "now appears on every social media post by In the Now, Waste-Ed, and Soapbox."  Compl. ¶ 26. On Maffick's posts, the label provides users with a link to the same Help Page.  Blavin Decl. ¶¶ 7-8, Exs. F, G.   The Help Page makes clear that because "[g]overnments may exert editorial control over state-controlled media in a range of ways and to different degrees," an organization seeking to prove its independence should provide, *at minimum*, a statute protecting its editorial independence; established internal procedures which foster editorial independence; and a third-party assessment finding that the statute and established procedures are in fact followed.  *Id.* Ex. B.

**C.**     **Maffick Contests The Label Yet Concedes That No Third-Party Assessment Has Found Maffick Editorially Independent**

On June 30, Maffick wrote to Facebook contesting the application of the SCME label. Compl. ¶ 30.  In doing so, Maffick conceded that "there have not been external assessments of

---

[5] Facebook has also applied the SCME label to pages operated by other media entities, including Press TV, Tasnim News Agency, Algerie Presse Service, Journal ech-chaab, and Russia Today.

Maffick's editorial processes or accountability procedures."[6]  *Id.* ¶ 37.   On July 20, Facebook

replied that the documentation provided in Maffick's appeal "lack[ed] both the reliability and

formality Facebook requires as part of the appeals process" because the documents made

unsubstantiated assertions that Facebook had no means to verify.  Decl. of John Ulin Ex. 3, ECF No.

3-3.  Facebook "encourage[d] Maffick to submit additional materials that address these issues."  *Id.*

Maffick refused to, and instead filed this lawsuit on July 29, along with a motion for a temporary

restraining order, ECF No. 3, which this Court has denied, ECF No. 29 ("TRO Order").

## III.     LEGAL STANDARD

The California anti-SLAPP statute was enacted "in response to the legislature's concern

about civil actions aimed at private citizens to deter or punish them for exercising their political or

legal rights."  *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963,

970 (9th Cir. 1999).  This statute "permits defendants to gain early dismissal of claims through a

special motion to strike civil actions 'brought primarily to chill the valid exercise of the

constitutional rights of freedom of speech.'"  *Choyce v. SF Bay Area Indep. Media Ctr.*, 2013 WL

6234628, at *4 (N.D. Cal. Dec. 2, 2013) (quoting Cal. Code Civ. Proc. § 425.16(a)).  The motion to

strike authorized under the statute is available to a party challenging state law claims in federal

court.  *Newsham*, 190 F.3d at 973.  The statute protects a "defendant from the burdens of trial, not

merely from ultimate judgments of liability," and constitutes a *"substantive immunity from*

*suit."*  *Batzel*, 333 F.3d at 1025 (emphasis added).  A defendant who prevails on an anti-SLAPP

motion is entitled to attorney's fees and costs.  Cal. Code Civ. Proc. § 425.16(c)(1).

Anti-SLAPP motions are evaluated under a two-part burden-shifting inquiry.  First, the

defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in

furtherance of the defendant's rights of petition or free speech."  *Vess v. Ciba-Geigy Corp. USA*,

---

[6] Both Twitter and YouTube have applied similar labels to Maffick content.  Twitter has labeled Maffick "Russia state-affiliated media," and the label applies at the top of each of Maffick's tweets. *See* https://twitter.com/inthenow.  Twitter defines the label as applying to "accounts that are controlled by certain official representatives of governments, state-affiliated media entities and individuals closely associated with those entities."  https://help.twitter.com/en/rules-and-policies/state-affiliated.  Maffick's YouTube videos are accompanied by a statement by YouTube that "RT is funded in whole or in part by the Russian government."  *See, e.g.*, https://www.youtube.com/watch?v=04BZ7_eaDB0 (Soapbox YouTube channel video, Jan. 5, 2020).

317 F.3d 1097, 1110 (9th Cir. 2003).  Once the defendant makes this showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims."  *Id.*  Because "it is in the public interest to encourage continued participation in matters of public significance," and to ensure that this participation "'not be chilled through abuse of the judicial process,' the anti-SLAPP statute is to be construed broadly."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010) (quoting Cal. Code Civ. Proc. § 425.16(a)).

## IV.    ARGUMENT

Maffick's state-law claims should be dismissed under the anti-SLAPP Act.  Maffick's claims arise from Facebook's speech on its own platform about an issue of public interest.  Further, Maffick cannot demonstrate a probability of prevailing on its claims because the SCME label is a nonactionable opinion as a matter of law, Maffick has failed to plead facts that would establish actual malice, and it has otherwise failed to allege facts to establish the elements of its claims.

### A.    Maffick's Claims Arise from an Act in Furtherance of the Right of Free Speech

The anti-SLAPP statute defines an act "in furtherance of" the right to free speech to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."  Cal. Code Civ. Proc. § 425.16(e)(3).  In light of the breadth of this definition, "[t]he defendant's burden on this step 'is not a particularly demanding one.'"  *Todd v. Lovecruft*, 2020 WL 60199, at *11 (N.D. Cal. Jan. 6, 2020) (quoting *Daniel v. Wayans*, 8 Cal. App. 5th 367, 387 (2017)).  Facebook's application of the SCME label to Maffick's Pages meets this definition.

First, the SCME label appeared in "a place open to the public or a public forum," namely Maffick's Facebook Pages, which are accessible to the general public.  *See Cross v. Facebook*, 14 Cal. App. 5th 190, 199 (2017) ("It cannot be disputed that Facebook's website and the Facebook pages at issue are 'public forums,' as they are accessible to anyone who consents to Facebook's Terms."); *Clark v. Hidden Valley Lake Ass'n*, 2017 WL 4922375, at *4 (N.D. Cal. Oct. 31, 2017) (concluding Facebook page is a public forum for purposes of anti-SLAPP statute).

Second, the SCME label concerns "an issue of public interest."  An "issue of public interest" is "*any issue in which the public is interested.*"  *Cross*, 14 Cal. App. 5th at 199 (internal

quotes and citations omitted).  "[W]hether something is an issue of public interest must be 'construed broadly.'"  *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 464 (2012) (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007)).  While "California courts have not definitively adopted any particular test to determine whether a statement qualifies as a matter of public interest for purposes of Section 425.16," one "commonly cited test" from the California Court of Appeal "identifie[s] three categories of public issues:  '(1) statements "concern[ing] a person or entity in the public eye"; (2) "conduct that could directly affect a large number of people beyond the direct participants"; (3) "or a topic of widespread, public interest."'"  *Henley v. Jacobs*, 2019 WL 8333524, at *9 (N.D. Cal. Aug. 2, 2019) (quoting *Hilton*, 599 F.3d at 906).

Application of the SCME label to Maffick's Facebook Pages falls into all three of these categories.  As a company that seeks public attention ("social media optimization" to use Maffick's term) through its Facebook Pages, Maffick is unquestionably an entity in the public eye.  *See* Compl. ¶ 3 ("Maffick is a social media and e-commerce company that focuses on social media optimization and brand development.").  The SCME label directly affects a large number of people beyond the direct participants because it provides Facebook users with information about Maffick to allow those users to evaluate the materials posted on the Pages.  *Id.* ¶ 5 (alleging that Facebook operates social media platforms "on which millions of users publish content").  And the SCME label concerns a topic of widespread, public interest, namely transparency around foreign election influence.  As Maffick itself alleges, Facebook publicly announced that it applies the SCME label to pages like Maffick's "in order 'to provide an extra layer of protection against various types of foreign influence in the public debate ahead of the November 2020 election in the US.'"  *Id.* ¶ 22.

Indeed, Maffick's own allegations confirm that the SCME label constitutes speech on a matter of public interest.  Maffick attached as an exhibit to one of its declarations excerpts of comments from Maffick's Facebook Pages showing that several Facebook users took an interest in Facebook's decision to apply the SCME label to those pages.  And major news outlets have published articles about Facebook's use of the SCME label.[7]  Those comments and articles show

---

[7] *E.g.,* https://www.npr.org/2020/06/04/870105673/facebook-begins-labeling-state-controlled-media; https://www.cnn.com/2020/06/04/media/facebook-state-media-label/index.html.

that the label concerned a matter of public interest.  *See also* TRO Order at 6 (noting "the public interest served by Facebook's notices"); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1106 (C.D. Cal. 2004) (website posts concerned issue of "public importance" as there was "a community concerned with" the topic, and "the subject is a matter of public discussion").

Consistent with this analysis, courts consistently have held that statements like the SCME label providing information about an organization that interacts with the public constitute statements on an issue of public interest.  *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013) ("Under California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers."); *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1146 (2012) ("statements posted to" a website about the plaintiff's "character and business practices plainly fall within in [the] rubric of consumer information about [plaintiff's] business and were intended to serve as a warning to consumers about his trustworthiness"); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 900 (2004) (statements "provided to aid consumers choosing among brokers" were "directly connected to an issue of public concern").  Here too, the label publicizes Facebook's assessment of Maffick's editorial independence under its own criteria so that the public can better evaluate the content that Maffick creates and publishes on Facebook's platform.  Accordingly, Facebook's communication with its users concerning the application of its SCME label on Maffick's Pages is entitled to anti-SLAPP protection as speech on a matter of public interest.

## B.   The Statutory Commercial Speech Exemption Does Not Apply

The anti-SLAPP statute contains several exceptions, including a "commercial speech exemption," Cal. Code Civ. Proc. § 425.17(c), but that exception does not apply here.  Under the commercial speech exemption, causes of action arising from commercial speech are exempt when:

> (1)  the cause of action is against a person *primarily engaged* in the business of selling or leasing goods or services;
> (2)  the cause of action arises from a statement or conduct by that person consisting of *representations of fact* about that person's or a business competitor's business operations, goods, or services;
> (3)  the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing…*commercial transactions* in, the person's goods or services…; and

DEFENDANT'S SPECIAL MOTION TO STRIKE

(4) the intended audience is an *actual or potential buyer or customer*, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

*Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 29-30 (2010) (emphasis added).  The exemption was intended "to except from anti-SLAPP coverage disputes that are purely commercial," *Taheri Law Group v. Evans*, 160 Cal. App. 4th 482, 491 (2008), such as litigation concerning "comparative advertising," *E.D.C. Technologies, Inc. v. Seidel*, 225 F. Supp. 3d 1058, 1064 (N.D. Cal. 2016).  This exception is "narrowly construed."  *Simpson Strong-Tie*, 49 Cal. 4th at 22.

The SCME label does not meet any element of the *Simpson* test.  First, "while Facebook sells advertising, it is not 'primarily engaged in the business of selling or leasing goods or services.'"  *Cross,* 14 Cal. App. 5th at 203.  "Nor could [Maffick], as Facebook offers a free service to its users." *Id*.  As to the second element, the SCME label is not a representation of fact at all.  Rather, it reflects Facebook's subjective judgment about the application of several criteria to the circumstances surrounding Maffick's Pages.  *See supra* at 1-4.  In addition, the SCME label concerns the operations of Maffick, and Maffick is not a competitor of Facebook.  On the contrary, Maffick makes money in various ways from its Facebook Pages.  Compl. ¶ 10 (alleging that Maffick's "revenue is derived from monetization of media content, advertising for branded content that is promoted on its social media channels, and the re-sale of original content that is created for its channels"); *see Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*, 682 F. Supp. 2d 1003, 1011-12 (N.D. Cal. 2010) (commercial speech exemption did not apply where defendant was former distributor of plaintiff's goods and not a competitor).

With respect to the third factor, the SCME label does not propose a commercial transaction.  The label itself does not offer to sell a good or a service and it is not comparative advertising.  And as to the fourth factor, the "intended audience" of the label is not a "potential buyer or customer," but rather the general public, who can use Facebook for free.  *See Cross*, 14 Cal. App. 5th at 203.

### C.      Maffick Cannot Demonstrate a Probability of Success on its State Law Claims

Because Facebook has made a showing that Maffick's suit arises from Facebook's exercise of its right to free speech, the burden shifts to Maffick to show that it is likely to prevail on the merits of its claims.  Where, as here, the anti-SLAPP motion challenges the legal sufficiency of the

plaintiff's claims, the plaintiff's probability of success is evaluated pursuant to the Rule 12(b)(6) standard.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833, *amended by* 897 F.3d 1224 (9th Cir. 2018).  Accordingly, dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008).

All five of Maffick's state law claims suffer from two common deficiencies that warrant dismissal.  First, the SCME label is a nonactionable statement of opinion under the First Amendment.  Second, Maffick's complaint does not allege facts that would establish actual malice as also required by the First Amendment.  All of Maffick's claims, including for tortious interference and unfair competition, should be dismissed on this basis.  *See, e.g., Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (claims that are similar to defamation, such as "tortious interference" are "subject to the same first amendment requirements that govern actions for defamation"); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (dismissing "tortious interference" claims for statements that "are nonactionable opinion protected by the First Amendment"); *Bernardo v. Planned Parenthood Fed'n of Am.,* 115 Cal. App. 4th 322, 342-43 (2004) ("expressions of opinion" were "noncommercial speech fully protected under the First Amendment to the United States Constitution and not actionable under … the UCL"). In addition, Maffick has not alleged facts that would support a legally-cognizable claim for tortious interference or under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

### 1.    The SCME Label Is a Nonactionable Statement of Opinion

On a motion to dismiss under Rule 12(b)(6), whether a statement is a constitutionally protected statement of opinion requires the court to "determine[] whether a statement can reasonably be interpreted as a factual assertion" by "examin[ing] the totality of the circumstances," including "[t]he context in which the statement appears."  *Knievel v. ESPN*, 393 F.3d 1068, 1074–75 (9th Cir. 2005) (internal quotation marks omitted).  This is a question of law that courts consistently resolve on the pleadings.  *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995); *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 800-01 (N.D. Cal. 2010), *aff'd sub nom.*, 433 F. App'x 547 (9th Cir. 2011) (dismissing claims on pleading as challenged statements were nonactionable opinions).

1    Here, the context in which the label is applied makes clear that the SCME label cannot

2    reasonably be interpreted as a factual assertion.  As part of Facebook's efforts to combat

3    misinformation on the platform and "protect[] against various types of foreign influence in the public

4    debate ahead of the November 2020 election in the US,"  Compl. ¶ 22, Facebook developed the label

5    to provide its users with its own "*assessment of editorial control* exerted by a government" over

6    media entities.  *Id*. ¶ 23 (emphasis added).  In other words, Facebook developed this label and the

7    corresponding policy and definitions to allow it to communicate to its users and the general public its

8    assessment of certain Pages sharing content on its platform.  As described above, *supra* at 1-3,

9    Facebook makes publicly available its definition of a SCME and the criteria it considers in applying

10   the label.  Compl. ¶ 24; Blavin Decl. Ex. B.  Facebook, for example, informs users that "*Facebook*

11   *defines* state-controlled media as media outlets that Facebook has determined are partially or wholly

12   under the editorial control of their government" and that "Facebook identifies these organizations by

13   using *our definition and standards* to review their ownership, governance, sources of funding, and

14   processes that ensure editorial independence."  Blavin Decl. Ex. B (emphasis added); Compl. ¶ 23.

15   Facebook's definition accounts for the fact that "[g]overnments may exert editorial control over

16   state-controlled media in a range of ways and to different degrees."  Blavin Decl. Ex. B.  Facebook

17   informs viewers that its definition looks to multiple criteria including "how the organization defines

18   and accomplishes its journalistic mission," "information on owners," "[e]ditorial guidelines [such as]

19   transparency around its sources of content [and] independence and diversity of sources,"

20   "[i]nformation about newsroom leadership and staff," "[s]ources of funding and revenue," and

21   "[g]overnance and accountability mechanisms."  Compl. ¶ 24.

22   These contextual statements explain in a straightforward way that the label reflects

23   Facebook's own considered judgment based on multiple criteria, and its view of how those criteria

24   should be applied and weighed in a particular circumstance.

25   Courts consistently have recognized that a collective judgment rendered by a speaker based

26   on multiple criteria like Facebook's SCME label constitutes an opinion that cannot be the basis for a

27   defamation claim.  *See, e.g.*, *Botos v. L.A. Cnty. Bar Ass'n*, 151 Cal. App. 3d 1083, 1090 & n.3

28

DEFENDANT'S SPECIAL MOTION TO STRIKE

(1984) (holding that the rating of a judicial candidate as "not qualified," where the "evaluation meant the candidate lacked 'some or all of the qualities of professional ability, experience, competence, integrity and temperament,' was a nonactionable "opinion"); *Aviation Charter, Inc. v. Aviation Rsch. Grp.*, 416 F.3d 864, 870–71 (8th Cir. 2005) (defendant's statement that airline had "unfavorable safety record" was a nonactionable statement of opinion where it "defined 'safety' relative to its own methodology" and "chose which underlying data to prioritize" and "performed a subjective review of those data"); *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (Moody's credit rating nonactionable statement of opinion where it was "dependent on a subjective and discretionary weighing of complex factors"); *ZL Techs., Inc. v. Gartner, Inc.,* 709 F. Supp. 2d 789, 800–01 (N.D. Cal. 2010), *aff'd sub nom.,* 433 F. App'x 547 (9th Cir. 2011) (company's rating of plaintiff as "Niche Player" reflects numerous factors and is "opinion"); *Forsyth v. Motion Picture Ass'n of Am., Inc.*, 2016 WL 6650059, at *3–4 (N.D. Cal. Nov. 10, 2016) (defendant "holds First Amendment rights to express its opinions that are reflected in the [parental caution] ratings system").

Here, Facebook's interpretation of how its stated criteria apply in a particular circumstance, and how much weight to give each criterion in deciding whether to apply the SCME label, are not objectively verifiable facts.  "What factors [Facebook] believes to be important in assessing [the label], and the result of [its] weighing of those factors, cannot be proven false."  *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018) (dismissing challenge to website attorney-rating system).

That the SCME label reflects an assessment by Facebook based on underlying facts does not alter this analysis.  That is because "[m]ost opinions are based at least in part on facts," and therefore "[t]hat [the defendant] considered facts in forming its opinions does not mean that the opinions are objectively verifiable."  *ZL,* 709 F. Supp. 2d at 798 (N.D. Cal. 2010).  On the contrary, the "weight" that Facebook "applies" to the various criteria associated with the SCME label in a particular instance "is not verifiable," as it is reflective of Facebook's "subjective assessment of what is important" in deciding whether to apply the label to a given Page.  *Id.* at 800.  For this reason, while the application of the SCME label may rest on a body of facts, the label itself "do[es] not imply the assertion of specific *objective* facts."  *Id.* at 800.  *See also* Mot. Dismiss at 4-8.

**2.      Maffick Does Not Sufficiently Allege Actual Malice**

Under the First Amendment, a public figure (including a limited purpose public figure) cannot prevail in a defamation suit unless the figure can show that the allegedly defamatory statements were made with actual malice, that is, with knowledge of their falsity or with reckless disregard for the truth. *New York Times v. Sullivan*, 376 U.S. 254 (1964).  Reckless disregard for the truth means that the defendant must have "actually had a 'high degree of awareness of … probable falsity.'"  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). Because Maffick uses Facebook to increase its visibility and to participate in public discussion about current affairs, including foreign influence in United States politics, Compl. ¶¶ 11-13, Maffick is at least a limited purpose public figure for purposes of this case.  Mot. Dismiss at 8-9.

As the "gravamen" of all of Maffick's claims is "the alleged injurious falsehood of a state-ment" which is not commercial speech, Maffick must plead actual malice with "specificity." *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (dismissing injunctive and damages claims for inadequate allegations of actual malice).  "In any case … seek[ing] damages or injunctive relief … for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required."  *Franchise Realty Interstate Corp. v. S.F. Loc. Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976).  Under this heightened standard, "general allegations," *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014), or "conclusory statements that [the defendant] should have known the truth," *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999), are legally insufficient.

Maffick does not come close to meeting this heightened standard.  The *only* support in the complaint for Maffick's allegation of actual malice consists of Maffick's own self-serving denials to Facebook.  Compl. ¶¶ 44-45.  As the TRO Order notes, Maffick's "evidence" that it is not a SCME under Facebook's definition consists largely of "purely conclusory statements to the effect that Maffick is free and clear of Maffick Media and Russia."  TRO Order at 4.  The complaint itself, and admissions made by Maffick in declarations filed with the Court, acknowledge that Facebook had ample bases to apply the label under Facebook's own criteria.  *Id.* ¶¶ 16-18, 37; *supra* at 2-3.

And a speaker "need not believe self-serving denials, 'as such denials are so commonplace in the world of polemical charge and countercharge.'" *Harris v. City of Seattle*, 152 F. App'x 565, 569 (9th Cir. 2005).  Thus, Maffick's statements of denial to Facebook are legally insufficient to support an inference of actual malice, particularly because, as the Court has noted, Facebook presented "a considerable amount of evidence in [its] favor" whereas Maffick presented only "uncompelling evidence of falsity."  TRO Order at 6; *see also* Mot. Dismiss at 9-10.  And as Maffick itself pleads, Facebook *twice* asked Maffick to submit additional materials documenting Maffick's editorial independence through Facebook's appeal process.  Compl. ¶¶ 41, 43; Blavin Decl. Ex. B at 1.

### 3. Maffick's Tortious Interference Claims Fail

Maffick has not alleged sufficient facts to support its tortious interference claims.  All three of the interference torts alleged in the complaint require Maffick to establish the existence of the requisite business relationship and the defendant's knowledge of the relationship and intent to disrupt that relationship.  *See Quelime Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).

Maffick's complaint fails to allege particular business relationships that meet these elements. It does not identify either a specific valid contract or a specific prospective business relationship with which Facebook is purported to have interfered.  Instead, the complaint merely generally alleges that Maffick "has existing contracts with various brands and organizations," Compl. ¶ 60, and that Maffick "has been actively expanding its paid partnerships," *id.* ¶ 67, none of which is identified.  The Ninth Circuit has held that such generalities are insufficient to plead a claim of tortious interference.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (dismissing claim for failure "to plead facts either showing or allowing the inference of actual disruption" to relationship); *Song v. Drenberg*, 2019 WL 1998944, at *7-8 (N.D. Cal. May 6, 2019) (dismissing claim that "fails to name a single entity or person" with whom relationship interfered). Without that particularity, Maffick's interference claims do not support a legally cognizable theory.[8]

---

[8] The Second Declaration of Maffick CEO Anissa Naouai, which was filed with its reply in support of its application for a TRO, is outside the allegations of the complaint and cannot be considered under the 12(b)(6) standard.  At any rate, even if considered, it does not remedy these fundamental defects in the complaint.  The declaration does not allege that Maffick has lost contracts or failed in negotiations with any of these companies *as a result of* Facebook's label.  Instead, it merely offers conclusory and general assertions about the label's effect on Maffick's business relationships.

Maffick also has not alleged facts sufficient to establish that Facebook knew about these relationships.  Here again, the complaint contains nothing more than conclusory assertions about Facebook's knowledge of the (unspecified) existing or prospective relationships with which it is alleged to have interfered.  Compl. ¶ 61 ("Facebook knows about the existence of Maffick's contractual relationships."); *id.* ¶ 68 ("Facebook knows about Maffick's prospective economic relations…."); *id.* ¶ 74 (similar).  Such conclusory allegations "are insufficient to plead" a defendant's "knowledge of an economic relationship" for a tortious interference claim.  *Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*, 467 F. App'x 738, 740 (9th Cir. 2012).

Finally, Maffick does not adequately allege that Facebook caused the disruption of any particular current or prospective business relationship, which is also an element of its pled interference torts.  The complaint generally alleges that publication of the SCME label "has caused and will continue to cause immediate and irreparable harm" to Maffick.  Compl. ¶ 47.  But Maffick does not allege that any specific business relationship "terminated as a result of" Facebook's conduct, and that failure is fatal to its tortious interference claims.  *Luxpro Corp. v. Apple, Inc.*, 2011 WL 1086027, at *9 (N.D. Cal. Mar. 24, 2011).  *See also* Mot. Dismiss at 12-14.

### 4. Maffick Fails to Allege Standing or Actionable Conduct Under the UCL

Maffick's UCL claim fails on multiple independent grounds.  First, "California's consumer protections laws, like the unfair competition law, govern only commercial speech."  *Rezec v. Sony Pictures Ent., Inc*., 116 Cal. App. 4th 135, 140 (2004) (emphasis omitted).   Commercial speech is generally "speech that does no more than propose a commercial transaction."  *Id.* at 141 (internal quotation marks omitted); *Bernardo*, 115 Cal. App. 4th at 343.  For the reasons discussed above that the anti-SLAPP statute's commercial speech exemption does not apply, the UCL is inapplicable here as well.  The label advertises nothing, proposes no transaction, does not and is not intended to sell any goods or services, and does not earn or generate any revenue.  Instead, the label is "communicating ideas" and "expressing points of view."  *Bosley Med. Inst., Inc. v. Kreimer*, 403 F.3d 672, 677 (9th Cir. 2005).  Maffick's own allegations demonstrate this is non-commercial speech.  According to Maffick, Facebook uses the label to show Facebook as "a responsible social media company" that is "tak[ing] sufficient actions to preserve the integrity of U.S. elections from

improper social media influence by foreign governments"—not to sell anything.  Compl. ¶ 82.

Facebook's label communicates ideas "on an issue of public importance," and is not commercial

speech.  *New.Net*, 356 F. Supp. 2d at 1117.  *See also* Mot. Dismiss at 10-12.  Finally, the principal

case relied on by Maffick to support the proposition that the SCME label is commercial speech,

*Kasky v. Nike*, 27 Cal. 4th 939 (2002), is inapplicable here for the reasons set forth in Facebook's

concurrently-filed motion to dismiss.  *See* Mot. Dismiss at 12.

Second, under the UCL, "plaintiffs only have standing to bring an action if they have

'suffered injury in fact and ha[ve] lost money or property *as a result* of the unfair competition." *Xu*

*v. Yamanaka*, 2014 WL 342271, at *4 (N.D. Cal. Jan. 30, 2014) (alteration in original) (emphasis

added).  Maffick fails to establish standing under the UCL because Maffick does not allege that it

lost any money or property "as a result of" the SCME label.  At most, the complaint contains

conclusory allegations that Facebook's application of the SCME label to Maffick's Pages "has

negatively affected Maffick's monetization of its social media pages and their reach."  Compl. ¶ 90.

But such speculative allegations do not suffice to allege any *causal* relationship between the label

and the decrease in monetization and reach.  *See, e.g., Greene v. Wells Fargo Bank, N.A.*, 2019 WL

1331027, at *10 (N.D. Cal. Mar. 25, 2019) (dismissing UCL claim on ground that "conclusory"

statements in complaint failed "to plausibly allege a causal link between Defendants' conduct" and

plaintiff's purported injury).  *See also* Mot. Dismiss at 14-15.

Third, Maffick fails to allege unlawful, unfair, or fraudulent conduct under the UCL.

Maffick fails to allege "unlawful" conduct because, for the reasons set forth above, Maffick fails to

plead that Facebook violated any other law.  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal.

App. 4th 1050, 1060 (2005).  Maffick also fails to plead unfair or fraudulent conduct.  To be

actionable as unfair or fraudulent, a statement must be a "specific and measurable claim, capable of

being proved false or of being reasonably interpreted as a statement of objective fact."  *Rasmussen v.*

*Apple Inc.*, 27 F. Supp. 3d 1027, 1039-40 (N.D. Cal. 2014).  For the reasons set forth above, the

SCME label is neither a statement of objective fact nor a statement capable of being proved false.

## V.    CONCLUSION

For these reasons, Facebook's anti-SLAPP motion to strike should be granted.

1   DATED:  September 4, 2020                  MUNGER, TOLLES & OLSON LLP

2

3

4                                             By:   */s/ Jonathan H. Blavin*
                                                    JONATHAN H. BLAVIN
5                                             Attorneys for Facebook, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28