JOHN C. ULIN (SBN 165524)
Email: julin@troygould.com
AMY NASHON STALLING (SBN 316353)
Email: anashon@troygould.com
TROYGOULD PC
1801 Century Park East, 16th Floor
Los Angeles, CA 90067-2367
Telephone:    (310) 553-4441
Facsimile:    (310) 201-4746

Attorneys for Plaintiff
MAFFICK LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAFFICK LLC, a Delaware limited liability company, | Case No. 3:20-cv-05222 |
| Plaintiff, | **PLAINTIFF MAFFICK, LLC'S COMBINED OPPOSITION TO FACEBOOK, INC.'S MOTION TO DISMISS [DKT.NO. 34] AND SPECIAL MOTION TO STRIKE [DKT. NO. 35]** |
| v. | |
| FACEBOOK, INC., a Delaware corporation, and DOES 1-10, inclusive, | Assigned for All Purposes To: Hon. James Donato |
| Defendants. | Date:    October 1, 2020 Time:    10:00 a.m. |
| | Trial Date:    December 14, 2020 |

**TroyGould PC**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 2

III. STANDARD GOVERNING FACEBOOK'S MOTIONS UNDER RULE 12(B)(6) .......................................................................................................... 6

IV. ADDITIONAL CONSIDERATIONS GOVERNING FACEBOOK'S SPECIAL MOTION TO STRIKE ...................................................................... 8

    A. California's Anti-SLAPP Statute Does Not Apply to Maffick's Claims .......................................................................................................... 8

    B. Facebook Previously Argued Its Social Network Is Not a Public Forum ............................................................................................................ 8

    C. Maffick's Claims Are Subject to the Commercial Speech Exception of Cal. Code Civ. P. § 426.17 ................................................... 9

V. LEGAL ARGUMENT ...................................................................................... 10

    A. Facebook's Labeling Maffick As "Russia State-Controlled Media" Is Not A Statement Of Opinion ................................................................. 10

    B. Facebook's Notice Is Actionable Commercial Speech .......................... 14

    C. The Actual Malice Standard Poses No Barrier To Maffick's Claims ................... 18

        1. Actual Malice Is Not Required Because The Notice is Commercial Speech ................................................................... 18

        2. Maffick Is Not a Public Figure and Is Not Required to Plead Actual Malice ...................................................................... 19

        3. Even If Maffick Must Plead Actual Malice, It Has Done So ................... 21

        4. In Any Event, The Actual Malice Standard Is a Damages Rule Inapplicable to Maffick's Request for Injunctive Relief ................... 23

    D. Maffick Sufficiently Pled Intentional Interference ............................... 24

VI. CONCLUSION .................................................................................................. 26

**TroyGould PC**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Achal v. Gate Gourmet, Inc.*,
    114 F.Supp.3d 781 (N.D.Cal. 2015) ..........................................................................24

*Alabama State Conference of NAACP v. Alabama*,
    No. 2:16-CV-731-WKW, 2020 WL 583803 (M.D. Ala. Feb. 5, 2020) ................................11

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ...................................................................................11

*Argabright v. United States*,
    35 F.3d 472 (9th Cir. 1994) ......................................................................................7

*Aviation Charter, Inc. v. Avaition Research Grp.*,
    416 F.3d 864 (8th Cir. 2005) ...................................................................................13

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ...................................................................................8

*Biro v. Conde Nast*,
    963 F.Supp.2d 255 (S.D.N.Y. 2013) ...........................................................................23

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983).................................................................................................15

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
    447 U.S. 557 (1980)...............................................................................................14

*Church of Scientology Int'l. v. Behar*,
    238 F.3d 168 (2d Cir. 2001) .....................................................................................23

*Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993)...............................................................................................14

*Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ...................................................................................13

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
    499 F.3d 520 (6th Cir. 2007) ...................................................................................13

*Curtis Publishing Co. v. Butts*,
    388 U.S. 130 (1967)...............................................................................................22

*Davis v. Avvo, Inc.*,
    345 F. Supp. 3d 534 (S.D.N.Y. 2018) ........................................................................13

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*Eastwood v. National Enquirer*,
   123 F.3d 1249 (9th Cir. 1997) ............................................................... 21

*Federal Agency of News LLC v. Facebook, Inc.*,
   395 F. Supp. 3d 1295 (N.D. Cal. 2019) ................................................ 8, 9

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ......................................................... 22, 23

*Forsyth v. MPAA*,
   2016 WL 6650059 (N.D. Cal. Nov. 10, 2016) ...................................... 13

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) .................................................................. 12

*Gen. Conf. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*,
   887 F.2d 228 (9th Cir. 1989) .................................................................. 11

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ................................................................................ 23

*Golden Bear Distributing System of Texas, Inc. v. Chase Revel, Inc.*,
   708 F.2d 944 (5th Cir. 1983) .................................................................. 22

*Hoffman v. Capital Cities/ABC, Inc.*,
   255 F.3d 1180 (9th Cir. 2001) ......................................................... 14, 18

*Ibanez v. Fla. Dept. of Bus. & Prof. Reg.*,
   512 U.S. 136 (1994) ................................................................................ 14

*Isuzu Motors Ltd. v. Consumer Union of U.S., Inc.*,
   66 F.Supp.2d 1117 (C.D. Cal. 1999) ..................................................... 19

*Kaelin v. Globe Communications Corp.*,
   162 F.3d 1036 (9th Cir. 1998) ................................................................ 21

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ................................................................ 12

*Lauter v. Anoufrieva*,
   642 F.Supp.2d 1060 (C.D. Cal. 2009) .................................................. 6, 7

*Lexmark Int'l., Inc. v. Static Control Components, Inc.*
   572 U.S. 118 (2014) ................................................................................ 18

## <u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

*Makaeff v. Trump University, LLC,*
   715 F.3d 254 (9th Cir. 2013) ........................................................................................19, 20

*Manufactured Home Communities, Inc. v. County of San Diego,*
   544 F.3d 959 (9th Cir. 2008) ..............................................................................................10

*Masson v. New Yorker Magazine, Inc.,*
   501 U.S. 496 (1991)...........................................................................................................21

*Milkovich v. Lorain Journal Co.,*
   497 U.S. 1 (1990).................................................................................................10, 11, 13

*New York Times v. Sullivan,*
   376 U.S. 254 (1964)...........................................................................................................23

*New.Net, Inc. v. Lavasoft,*
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) .............................................................................17

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC,*
   355 F.Supp.2d 1061 (N.D.Cal. 2005)................................................................................24

*One Indus. LLC v. Jim O'Neal Distrib., Inc.,*
   578 F.3d 1154 (9th Cir. 2009) ...........................................................................................11

*Pareto v. F.D.I.C.,*
   139 F.3d 696 (9th Cir. 1998) ...............................................................................................6

*PKG Group, LLC v. Gamma Croma, S.p.A.,*
   466 F.Supp.2d 249 (S.D.N.Y. 2006) .................................................................................24

*Planned Parenthood v. Center for Medical Progress,*
   890 F.3d 828 (9th Cir. 2018) .............................................................................................12

*Proctor & Gamble Co. v. Amway Corp.,*
   242 F.3d 539 (5th Cir. 2001) ........................................................................................17, 18

*Rasmussen v. Apple Inc.,*
   27 F. Supp. 3d 1027 (N.D. Cal. 2014)...............................................................................17

*Risetto v. Plumbers & Steamfitters Local 343,*
   94 F.3d 597 (9th Cir. 1996) .................................................................................................9

*Rubin v. Coors Brewing Co.,*
   514 U.S. 476 (1995)...........................................................................................................14

*Southern Christian Leadership Conf. v. Sessions,*
   56 F.3d 1281 (11th Cir. 1995) ...........................................................................................11

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Swierkiewixz v. Sorema N.A.*,
   534 US 506 (2002)............................................................................................24

*The Bradbury Co., Inc. v Teissier-duCrocs*,
   387 F.Supp.2d 1167 (D.Kan.2005)................................................................24, 25

*Thornburg v. Gingles*,
   478 U.S. 30 (1986)..........................................................................................11

*Time, Inc. v. Firestone*,
   424 U.S. 448 (1976)....................................................................................19, 20

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*,
   898 F.2d 914 (3d Cir. 1990) ............................................................................18

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) ............................................................................13

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*,
   429 U.S. 252 (1977)........................................................................................11

*Virginia. State Bd. of Pharm. v. Va. Consumer Council*,
   425 U.S. 748 (1976)........................................................................................15

*Warren Tech, Inc. v. UL LLC*,
   962 F.3d 1324 (11th Cir. 2020) ......................................................................13

*Zerangue v. TSP Newspapers, Inc.*,
   814 F.2d 1066 (5th Cir. 1987) ........................................................................22

*ZL Techs., Inc. v. Gartner, Inc.*,
   709 F. .Supp. 2d 789 (N.D. Cal. 2010)..............................................................13

**California Cases**

*Baker v. Los Angeles Herald Examiner*,
   42 Cal.3d 254 (1986) .....................................................................................11

*Balboa Island Vill. Inn, Inc. v. Lemen*,
   40 Cal. 4th 1141 (2007)..................................................................................24

*Bernardo v. Planned Parenthood*,
   115 Cal. App. 4th 322 (2004) .........................................................................18

*Bostos v. Los Angeles County Bar Ass'n*,
   151 Cal. App. 3d (1984) .................................................................................13

PLAINTIFF MAFFICK, LLC'S OPPOSITION TO FACEBOOK, INC.'S MOTION TO DISMISS AND MOTION
TO STRIKE

04260-0002  341039.1

1

## <u>TABLE OF AUTHORITIES (cont.)</u>

2

<u>Page(s)</u>

3

*Cross v. Facebook,*

4
   14 Cal. App. 4th 190 (2017) .................................................................................17

5

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
   11 Cal.4th 376 (1995) .........................................................................................25

6

7

*Demetriades v. Yelp, Inc.,*
   228 Cal. App. 4th 294 (2014) ..................................................................10, 16, 17

8

*Issa v. Applegate,*

9
   31 Cal. App. 5th 689 (2019) ...............................................................................10

10

*Kasky v. Nike, Inc.,*
   27 Cal. 4th 939 (2002) .............................................................14, 15, 16, 17, 18

11

*Okun v. Super. Ct.,*

12
   29 Cal.3d 442 (1981) ..........................................................................................10

13

*Reader's Digest Ass'n v. Superior Court,*
   37 Cal.3d 244 (Cal. 1984)....................................................................................19

14

15

*Simpson Strong Tie Co. v. Gore,*
   49 Cal.4th 12 (2010) ............................................................................................9

16

*Vegod Corp. v. ABC, Inc.,*

17
   25 Cal.3d 763 (1979) ..........................................................................................21

18

*Wilcox v. Superior Court,*
   27 Cal. App. 4th 809 (1994) ................................................................................8

19

**Federal Statutes**

20

Federal Rule of Civil Procedure § 8 ................................................................... 6-7, 24

21

22
Federal Rule of Civil Procedure § 12 ................................................................. 6-7, 24

23
Federal Rule of Civil Procedure § 15 ........................................................................7

24
Federal Rule of Civil Procedure § 56 ........................................................................7

25
Lanham Act ...............................................................................1, 14, 16, 17, 18, 25

26
Voting Rights Act of 1965§ 2...................................................................................11

27

28

v

04260-0002  341039.1

1

## TABLE OF AUTHORITIES (cont.)

2
**Page(s)**

3
**California Statutes**

4
Cal. Code Civ. P.

5
§ 426.15 ...............................................................................................................8
§ 426.17 ........................................................................................................... 9-10

6
Cal. Business and Professions Code

7
§ 17200 ...................................................................................... 1- 2, 14, 16-18, 25

8
Cal. Civil Code

9
§ 425.16 .......................................................................................................... 8-10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TroyGould**
**PC**

PLAINTIFF MAFFICK, LLC'S OPPOSITION TO FACEBOOK, INC.'S MOTION TO DISMISS AND MOTION TO STRIKE
04260-0002  341039.1

# I. **INTRODUCTION**

As the Court has recognized, this case hinges on the proposition that Facebook's public assertion that Maffick and its social media pages are "Russia State Controlled Media" – by which it means that Maffick is editorially controlled by the Russian government – is false.  The Court set a December 14 trial date and directed the parties to commence discovery and trial preparation so that dispositive issue could be resolved promptly.  Maffick and Facebook have taken very different approaches to the core dispute.  Maffick wants the full story to be told based on evidence about how its editorial process operates today.  It has opened its doors to Facebook, offering complete access to its editorial process, financial records and other materials that Facebook considers important.  Maffick is willing to provide an independent expert assessment of its editorial independence and is even willing to consider using an expert of Facebook's choosing.

Facebook, by contrast, wants to stop this inquiry in its tracks and continue falsely asserting that Maffick is "Russia State-Controlled Media," based on obsolete information about the corporate structure of a defunct German company that has no connection to Maffick today and hearsay articles that are as much as three years old and do not assess Maffick's current editorial process or ownership.   In its place, Facebook proposes forcing Maffick into a "black-box" internal appeal process, in which Facebook will judge its own actions by its own rules, and never identify a decision-maker, inform Maffick what additional information it needs, or even provide a timetable for decision.

Facebook's Motion to Dismiss and Special Motion to Strike seek dismissal of this case on four grounds.  None has merit.  First, Facebook's labeling Maffick as "Russia State Controlled Media" is a verifiable factual statement – indeed, this case is about proving it false – and not an unverifiable opinion.  Second, Facebook's statements are part of a campaign to promote its social network, to both users and advertisers, as reliable and responsible so they continue to use it and to advertise, thereby generating massive revenues.  Its statements are therefore commercial speech that is subject to the Lanham Act and California's Unfair Competition Law ("UCL") and not entitled to heightened protection under the First Amendment or California's anti-SLAPP statute.  Third, Facebook cannot rely on the actual malice rule because this case arises from commercial

speech and does not involve a public figure plaintiff.  Maffick also is not required to prove actual malice to obtain injunctive relief against injurious falsehood.  Regardless, Maffick has adequately pled actual malice and the elements of its claims.  Finally, Maffick's tortious interference and UCL causes of action were sufficiently pled.

Maffick is confident that, if its story is told based on a full evidentiary record, the trier of fact will find that it is completely independent and not editorially controlled by the Russian government.  For the reasons discussed below, the Court should deny Facebook's motions and allow discovery to proceed so that the core dispute in this case may be fully and fairly presented to a jury for decision.

## II.  FACTUAL BACKGROUND

According to the allegations of the Complaint, which must be accepted as true for purposes of Facebook's motions, Maffick is a Delaware limited liability company, owned and operated by its CEO and sole shareholder, U.S. born and raised Anissa Naouai ("Naouai"), from its headquarters in Los Angeles, California.  Dkt. 1 at ¶¶ 1-2.  Maffick operates three social media channels on Facebook and Instagram – "In the Now," "Waste-Ed," and "Soapbox," which it inherited from a now-defunct German entity that Naouai previously formed.  It also promotes eco-friendly merchandise and offers it for sale through Waste-Ed's e-commerce site.  Its revenue is derived from monetization of media content, advertising for branded content that is promoted on its social media channels, and the re-sale of original content that is created for its channels.  *Id* .at ¶¶ 10-13. Maffick's channels are intentionally non-partisan and Maffick does not seek to represent any one point of view, although many of its posts are decidedly contrary to well-recognized Russian policy positions.  Maffick determines what content to post based on analytical data concerning audience preferences and its own internal editorial decisions.  *Id.* at ¶ 14.

In May 2020, Facebook contacted Maffick and threatened to shut down its social media pages within four days, unless Maffick posted a disclosure stating that it was "a brand of Maffick Media, which is owned and operated by Ruptly GmbH, a subsidiary of RT news."  *Id.* at ¶ 15. Maffick is not owned or operated by Ruptly GmbH ("Ruptly") and is not a brand of Maffick Media GmbH ("Maffick Media").  Ruptly is a part-owner of Maffick Media, a defunct German entity in

MAFFICK, LLC'S COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

which Naouai owned a 49% interest.  Maffick Media no longer does business of any kind and has no connection with Maffick LLC or its social media pages.  *Id.* at ¶¶ 16-18.  In July 2019, Naouai formed an entirely new entity known as Maffick, LLC, in which neither Maffick Media nor Ruptly has any involvement.  Naouai exercises full editorial control over Maffick's social media pages. *Id.* at ¶ 19.

On May 19, 2020, Maffick responded to Facebook, indicating that its pages were actually owned by an independent company owned and operated by a United States citizen, and that complying with Facebook's demand that it disclose publicly that it was "owned and operated by Ruptly GmbH, a subsidiary of RT news" would require Maffick to post inaccurate information.  *Id.* at ¶ 19.  Despite repeated outreach by Maffick, Facebook never responded.  *Id.*  at ¶¶ 19-21. Finally, out of concern that Facebook would follow through on its threat to shut down Maffick's pages completely, and as a temporary, stop-gap measure, Maffick posted the phrase "Affiliated with RT" in the "About" section of Soapbox's Facebook and Instagram accounts.  *Id.* at ¶ 21.

On June 4, 2020, Facebook publicly announced its plan "to label media outlets that are wholly or partially under the editorial control of their government," and indicated that, "today we're starting to apply labels to those state-controlled media outlets."  *Id.* at ¶ 22.  According to Facebook, its "definition of state-controlled media extends beyond just assessing financial control or ownership and includes an assessment of editorial control exerted by a government."  *Id.* at ¶ 23. Facebook identified six criteria, developed in consultation with international media experts, that it uses in determining that a social media page is "state-controlled media."  *Id.* at ¶ 24.

On June 5, 2020, Facebook published a notice on the "Page Transparency" section of In the Now, Waste-Ed, and Soapbox, indicating that each page is "Russia state-controlled media" ("the Notice").  *Id.* at ¶ 25.  The Notice appears on every social media post by In the Now, Waste-Ed, and Soapbox.  *Id.* at ¶ 26.  It also appears on sponsored and e-commerce posts concerning the sale of merchandise over Maffick's social media pages, giving the impression that the products are connected or associated with, or originate from, the Russian government.  *Id.* at ¶ 26.

The Notice is false.  Maffick is not controlled legally, operationally or editorially by the Russian government or by Russian state entities or officials.  *Id.* at ¶ 27.  Maffick wrote to

Facebook on June 30, 2020, informing them that it was owned and operated by Maffick LLC and Naouai and not by any Russian governmental entity or official. *Id.* at ¶ 30.  It further provided a detailed analysis of each and every one of Facebook's criteria and explained why none of them support the conclusion that Maffick is "Russia state-controlled media." *Id.*  Maffick asked Facebook to remove the SCME Notice from its pages immediately.  Facebook did not respond to the letter for three weeks before its outside counsel wrote to indicate that Facebook was not willing to take down the Notice, but instead proposed that Maffick resolve its dispute through Facebook's internal appeal process. *Id.* at ¶ 40.

Maffick indicated its willingness to utilize the Facebook appeal process, which it had actually initiated on June 30, if Facebook would agree to remove the Notice from Maffick's pages during the pendency of the appeal, provide Maffick with a point person with whom to communicate, and agree to a time period for deciding the appeal. *Id.* at ¶ 42.  Facebook rejected each of Maffick's proposals, insisting instead that Maffick participate in a "black box" appeal, in which Maffick submits documentation to Facebook without any discussion about whether the documentation is sufficient, explanation of what else might be needed, or opportunity to supplement, and waits for an indefinite period of time for any response from Facebook, which acts as the sole judge of the propriety of its own decisions. *Id.* at ¶ 43.

With respect to the Notice, the Complaint alleges that Facebook knows or should know that it is false and that Maffick is not controlled, editorially or otherwise, by any Russian government entity or official. *Id.* at ¶ 44.  Facebook also knows that the Notice is based on obsolete ownership information and hearsay news articles and requires further investigation. *Id.*  Facebook's statement that Maffick is Russia state-controlled media is therefore made with, at least, reckless disregard for its falsity. *Id.*  Maffick provided Facebook with evidence that it is not editorially controlled by the Russian government, and is owned and controlled by U.S. citizens from Los Angeles. *Id.* at ¶ 45. Nevertheless, Facebook continues to publish the Notice on Maffick's pages. *Id.*

Maffick further alleged that, by falsely labeling Maffick's pages as "Russia state-controlled media," and thereby falsely representing that Facebook's own criteria support that conclusion, Facebook is making misleading representations and descriptions of fact about its own social media

platform.  *Id.* at ¶ 82.  Specifically, Facebook falsely represents that certain pages that it serves are Russia state-controlled media, when that is not true, as part of an effort to promote itself as a responsible social media company, at a time when it has been under scrutiny concerning whether it has taken sufficient actions to preserve the integrity of U.S. elections from improper social media influence by foreign governments.  *Id.*  Facebook's falsely labeling Maffick as "Russia state-controlled media" is part of a campaign intended to promote Facebook's image as a responsible social media company to users and advertisers, so that they continue to use its social network and generate billions of dollars in revenues.  *Id.*

In deciding that Maffick is controlled by the Russian government, Facebook does not focus on the content Maffick produces, the products it sells, the news stories it publishes, or its status as a U.S. company run by a U.S. citizen.  Facebook focuses not on Maffick LLC as it exists now, but instead on its evolution from the "In the Now" television show created by Naouai when she worked in Moscow for Russia Today.  Dkt. 17-1 at ¶¶ 9-10.)  Naouai is an enterprising woman who found a way to maintain ownership of what she created while working for a previous employer.  Dkt. 1 at ¶ 18; Dkt. 17-1 at ¶ 13.)  She moved back to the United States so that her son could begin elementary school here and because she loves Los Angeles. Dkt. 17-1 at ¶ 12.  She is not an agent of the Russian government and if Facebook cared at all to investigate her story, or to even review the content that is published on Maffick's social media pages, her and Maffick's independence from Russia would be obvious.  Dkt. 1 at ¶ 27; Dkt. 17-1 at ¶ 14.

Maffick's content does not promote or even reflect Russian interests, and often runs directly counter to viewpoints associated with the Russian government. Dkt. 17-1 at ¶ 16.  The very existence of "Waste-Ed," an entire channel dedicated to environmental sustainability, flies in the face of Russia's interest in the economic exploitation of fossil fuels.  Maffick's stories about the arrest of prominent Russian journalists and the torture of homosexuals in Chechya likewise are clearly not the kinds of content that is sanctioned by the Russian government.  Ironically, because of Maffick's avidly anti-Trump, explicitly pro-LGBTQ+, aggressively inclusive, socially responsible content, some critics have accused it of publishing "anti-Russian propaganda!"  Yet, Facebook has declared the complete opposite: without ever identifying the evidence on which they

rely, Facebook has labeled Maffick "Russia state-controlled media," and republishes its false notice

daily on every post that appears on Maffick's pages.  Dkt. 1 at ¶¶ 19-21, 30-40, 42.)

Maffick has tried repeatedly to prove the truth to Facebook, but Facebook remains steadfast

in ignoring the evidence.  Maffick has given Facebook proof of its ownership and organizational

structure, its operational guidelines, and its editorial process.  It has offered to provide any further

documentation that Facebook desires, but Facebook refuses to say what it will deem sufficient to

establish Maffick's editorial independence.  So, Maffick is offering to open its doors to Facebook –

offering full access to Maffick's editorial processes, including both its well-documented past

decisions and its current editorial discussions, as well as its financial records and other materials

that Facebook considers important.  Maffick is also willing to present a third-party expert to assess

the independence of its editorial process and, indeed, is open to engaging an expert of Facebook's

choosing.  In other words, Maffick is confident in the righteousness of its position.  It is not Russia

State-Controlled Media and has nothing to hide.  It is high time for Facebook to take its own

mission seriously and evaluate Maffick's editorial independence based on direct evidence of how

the company operates today, instead of hiding behind obsolete ownership information, hearsay, and

legal arguments intended to prevent this Court from learning the truth.

### III.  STANDARD GOVERNING FACEBOOK'S MOTIONS UNDER RULE 12(B)(6)

Both Facebook's motion to dismiss and special motion to strike are brought under Fed. R.

Civ. P. § 12(b)(6).  The sole issue raised by § 12(b)(6) is whether the facts pled in the Complaint

would, if established, support a claim for relief.  "In reviewing a Rule 12(b)(6) motion, the court

must accept as true all material allegations in the complaint as well as reasonable inferences to be

drawn from them." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). For purposes of this

motion, this Court must therefore accept as true the allegations in Maffick's Complaint that the

SCME notice is false, Maffick's pages are not editorially controlled by Russia, and Facebook was

provided with evidence of these facts but recklessly disregarded it. Dkt.. 1 at ¶¶ 44, 54-57. *Lauter*

*v. Anoufrieva,* 642 F.Supp.2d 1060, 1076-77, 1110 (C.D. Cal. 2009).

To defeat a motion to dismiss challenging the sufficiency of the Complaint, a plaintiff must

proffer enough facts to state a claim to relief that is plausible on its face. *Id.* "Dismissal for failure

1   to state a claim is proper only if it is clear that no relief could be granted under any set of facts that

2   could be proved consistent with the allegations." *Argabright v. United States*, 35 F.3d 472, 474

3   (9th Cir. 1994). Maffick's Complaint alleges, in detail, sufficient facts that, when taken as true,

4   entitle Maffick to the relief it seeks.

5        A Court considering a motion to strike under the Anti-SLAPP statute must engage in a two-

6   part inquiry. *Lauter,* 642 F.Supp.2d at 1108. First, the Court must determine whether the

7   defendant made a showing that the plaintiff's suit arises from an act in furtherance of the

8   defendant's rights of petition or free speech. *Id.* If the defendant is able to make the requisite

9   showing, the burden shifts to the plaintiff, and the Court must then determine if the plaintiff has

10  demonstrated a probability of prevailing on its claims. *Id.*

11       If an anti-SLAPP motion is based on the plaintiff's failure to submit evidence to

12  substantiate its claims, the motion is treated as one for summary judgment and "discovery must be

13  developed sufficiently to permit summary judgment under Rule 56." *Id.* at 1109. If instead an

14  anti-SLAPP motion is based on legal deficiencies in the Complaint, the court will decide

15  "probability of success" based on whether the Complaint satisfied Rules 8 and 12, applying to the

16  standards outlined above. *Id.* Because Maffick's allegations are sufficient to withstand Facebook's

17  motion under Rule 12(b)(6), they should for the same reasons withstand Facebook's special motion

18  to strike, which is styled as a pleadings motion and not one based on evidence. *Id.* at 1110. If the

19  Court decides the motion to strike based on evidence, it should deny Facebook's motion to strike

20  without prejudice, because discovery has not yet been exchanged. *Id.*

21       Finally, even if the Court finds that Facebook's motions have merit, consistent with "Fed.

22  R. Civ. P. 15(a)'s policy favoring liberal amendment," *id*, it should grant Maffick leave to amend,

23  especially because the record before the Court demonstrates that Maffick can plead additional facts

24  in support of its claims, even though it is not required to do so.

25

26

27

28

## IV. ADDITIONAL CONSIDERATIONS GOVERNING FACEBOOK'S SPECIAL MOTION TO STRIKE

### A. California's Anti-SLAPP Statute Does Not Apply to Maffick's Claims.

This is not the sort of case that Civil Code Section 425.16 was intended to address. As the Ninth Circuit has noted, California's "anti-SLAPP" statute provides for pre-trial dismissal of actions that "masquerade as ordinary lawsuits" but are intended to deter ordinary people "from exercising their political or legal rights or to punish them from doing so." *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (quoting *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816-17 (1994)). The paradigm SLAPP suit is "brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff." *Wilcox*, 27 Cal. App. 4th at 816. That is not the situation here. Maffick brought this case to protect its reputation and interest in avoiding unfair competition, not to punish Facebook. Maffick does not challenge Facebook's SCME policy generally or its ability to truthfully identify social media companies as "state-controlled." The case is brought in good faith to challenge Facebook's falsely applying its label to Maffick, which has caused Maffick significant harm. It is by no means a SLAPP suit and should not be subjected to a motion under Section 425.16.

### B. Facebook Previously Argued Its Social Network Is Not a Public Forum.

Facebook argues that this case is subject to Section 425.16 because it arises from statements made in a public forum on a matter of public interest. *See* Cal. Code Civ. P. § 426.15(e)(3). On the question of whether its social media platform is a "public forum," Facebook speaks out of both sides of its mouth. Just last year, Facebook persuaded this Court that it was not a public forum. *See Federal Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1309-1311 (N.D. Cal. 2019). In that case, Facebook prevailed on its arguments that its privately-owned and -operated network did not become a public forum just because the public is able to use it, and did not operate as a public forum because Facebook does not engage in traditionally and exclusively governmental functions. *Id.* In holding that "Facebook is not a public forum under Ninth Circuit law[,]" the court rejected analogies to company towns or shopping center sidewalks and noted that other courts "have rejected the notion that private corporations providing services via the internet are public

1  fora for purposes of the First Amendment." *Id.* at 1309.  To be sure Facebook made these

2  arguments in the context of defending claims that it should be held liable as a state actor for actions

3  that restricted speech over its social network, which was alleged to be a public forum.

4  Nevertheless, Facebook cannot have it both ways.  Either it is a public forum or it is not.  Having

5  convinced this Court (and others) that it is not, Facebook should not now be heard to argue that it

6  is.  *See Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996).

7  **C.**   **Maffick's Claims Are Subject to the Commercial Speech Exception of Cal. Code Civ.**
   **P. § 426.17.**

8

9         Facebook's motion to strike also fails because this case falls within the commercial speech

10  exception to Section 425.16.  *See* Cal. Code Civ. P. § 426.17(c).  Under that exception, Section

11  425.16 does not apply to claims based on statements made by a person "primarily engaged in the

12  business of selling or leasing goods or services" if (1) the statement is a "representation[] of fact

13  about that person's business or a business competitor's business operations . . . ***or*** the statement

14  was made in the course of delivering the speaker's goods or services" and (2) "the intended

15  audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or

16  otherwise influence, an actual or potential buyer or customer…."  *Id.* (emphasis added).

17         Facebook is engaged in the business of providing a social media platform to users and

18  advertisers.  Its false Notice is a factual statement about who exercises editorial control at Maffick

19  and not a statement of opinion.  *See* Section V(A) *infra*.  The Notice is part of an SCME policy that

20  makes representations about Facebook's own business – *i.e.*, that it is trustworthy because it

21  exposes "state-controlled" social media and that certain pages it serves are "state-controlled."

22  Moreover, that Notice was posted "in the course of [Facebook's] delivering" its social network.

23  Facebook's intended audience is its users and advertisers, who are both customers and likely to

24  influence customers in the sense that users who are satisfied with the Notice and the SCME policy

25  will continue to use Facebook and influence advertisers to buy advertising from which Facebook

26  makes enormous profits.  This case therefore fits squarely within the commercial speech exception

27  to Section 425.16 and Facebook's motion to strike should be denied for this reason alone.  Indeed,

28  this analysis, which is entirely consistent with *Simpson Strong Tie Co. v. Gore*, 49 Cal.4th 12, 29-

**TroyGould**
**PC**

MAFFICK, LLC'S COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

04260-0002  341039.1

30 (2010) (applying the statutory language of  Section 425.17(c)), is precisely the one that the Court of Appeal employed to find that claims based on statements made by the social media business review website, Yelp, were subject to the commercial speech exception and therefore could not be challenged under Section 425.16.  *See Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 310-12 (2014).  *See* Section V(B) *infra*.  This Court should reach the same conclusion here.[1]

## V. **LEGAL ARGUMENT**

### A. **Facebook's Labeling Maffick As "Russia State-Controlled Media" Is Not A Statement Of Opinion.**

As an initial matter, the Court should reject out of hand Facebook's argument that the Notice is a constitutionally protected opinion.  The question of whether a challenged statement is an assertion of fact or opinion is one for the jury.  *See* Judicial Council of California Civil Jury Instructions (2020 edition) No. 1707.  In addressing this issue, the Court's role is to determine "whether a 'reasonable fact finder' could conclude that the statements 'as a whole, or any of its parts, directly made or sufficiently implied a false assertion of… fact…." *Issa v. Applegate*, 31 Cal. App. 5th 689,703 (2019).  Not only could a reasonable jury find that Facebook's labeling Maffick as "Russia State-Controlled Media" is a verifiable factual statement, that is the only plausible interpretation of Facebook's Notice.  The Court should therefore allow the jury to decide that the Notice constitutes an actionable statement of fact.  *See Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 963 (9th Cir. 2008).

Facebook argues that an organization's application of multiple criteria to reach a collective judgment constitutes an opinion, but that is not the recognized test.  Statements of opinion do not enjoy absolute protection under the First Amendment.  *See Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18–19 (1990).  To the contrary, the operative question is whether a statement expressly or impliedly represents verifiable facts.  *Id.* at 21; *Okun v. Super. Ct.*, 29 Cal.3d 442, 451-52 (1981).  Facebook's assertion that Maffick is "Russia state-controlled media," which it tells the world

---

[1] If the Court denies Facebook's motion to strike on the ground that this lawsuit is subject to the commercial speech exception, that decision is not immediately appealable.  *See* Cal. Code Civ. P. § 426.17(e).

means that Maffick is controlled editorially by a foreign government, misrepresents verifiable facts. It is therefore a factual representation that can give rise to liability, if it is found false and defamatory.  It is not "the sort of loose, figurative, or hyperbolic language" that can be characterized as non-factual.  *Milkovich*, 497 U.S. at 21.

Moreover, even if Facebook's factual statement is based on an assessment of relevant factors, federal courts frequently resolve fact questions using multi-factor analyses.  For example, the Ninth Circuit has repeatedly held that "likelihood of confusion" in trademark infringement "is a question of fact."  *Gen. Conf. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 231 (9th Cir. 1989); *accord One Indus. LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009).  Yet, courts and juries in this circuit decide likelihood of confusion by applying the eight-factor test articulated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  Similarly, federal courts have held that, in cases under the "results" standard of Section 2 of the Voting Rights Act of 1965, "[t]he ultimate finding that minorities do or do not possess equal opportunities to participate in the political process is a question of fact." *Alabama State Conference of NAACP v. Alabama*, No. 2:16-CV-731-WKW, 2020 WL 583803, at *8 (M.D. Ala. Feb. 5, 2020); *accord Southern Christian Leadership Conf. v. Sessions*, 56 F.3d 1281, 1294 (11th Cir. 1995).  Yet courts decide that factual issue by applying a nine-factor test, set forth in the Senate Report that accompanied the 1982 amendments to Section 2 and later endorsed by the Supreme Court.  *Thornburg v. Gingles*, 478 U.S. 30, 36-37, 44-45 (1986); *see also Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266-67 (1977) (factual question of whether legislative decision was motivated by racial discrimination is determined with reference to a multi-factor analysis of the circumstances surrounding the decision).  Indeed, even the factual question of whether a statement that is challenged in a defamation action is one of fact or opinion is resolved under a "totality of circumstances analysis."  *Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 260 (1986).  Clearly, a multi-factor analysis does not convert a factual statement into an opinion.

The cases Facebook cites reinforce the conclusion that the Notice is a verifiable statement of fact and that Facebook's opinion defense is not a proper basis for a motion to dismiss.  In

MAFFICK, LLC'S COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

04260-0002  341039.1

1   *Gardner v. Martino*, 563 F.3d 981, 985-86 (9th Cir. 2009), which reviewed a decision on an

2   evidence-based anti-SLAPP motion – treated as a motion for summary judgment that can only

3   proceed after discovery has been permitted, *Planned Parenthood v. Center for Medical Progress*,

4   890 F.3d 828, 833-34 (9th Cir. 2018) – plaintiffs challenged a sensationalist talk show host's

5   assertion that they had lied to a customer during a segment in which he interviewed the customer

6   and commented on her story.  The court found that context defeated the conclusion that the talk

7   show host's statements were assertions of facts.  *Id.* at 988-89.  Specifically, the talk show was one

8   that based its appeal on "drama, hyperbolic language, an opinionated and arrogant host, and heated

9   controversy." *Id.* at 988.  It was clear that the host had no independent knowledge of the facts

10  beyond what the guest told him on the air.  The host was therefore clearly interpreting statements

11  equally available to his viewers that were made in the minutes before his commentary.  *Id.* at 989.

12      Similarly, in *Knievel v. ESPN*, 393 F.3d 1068, 1070 (9th Cir. 2005), the court affirmed a

13  finding that the caption of a photo of motorcycle stunt rider Evel Knievel, which read "Evel

14  Knievel proves that you're never too old to be a pimp[,]" was not an actionable statement of fact

15  based on its context and the language used.  It was clear from the context in which the photo and

16  caption were published – on an action sports website in a post about an awards show that Knievel

17  attended – that the defendant did not literally intend to say that Knievel was involved in

18  prostitution.  *Id.* at 1077-78.  Nor would it have been reasonable to interpret the statement that way.

19  Use of the word "pimp" was hyperbolic and intended as a compliment.  *Id.* at 1074.  It was "loose

20  figurative language" on a website that frequently used other slang terms and could not reasonably

21  be interpreted as factual.  *Id.* at 1078.

22      The context and language of Facebook's Notice stand in stark contrast to the facts in

23  *Gardner* and *Knievel*.  Facebook was not making hyperbolic statements, using a sensationalist

24  medium or trying to create drama and heated controversy.  On the contrary, it was trying to show

25  users and advertisers that it was taking reliable steps to expose foreign influence on U.S. elections,

26  so that they continue to use, and advertise on, Facebook's social media platform.  According to

27  Facebook, the Notice means that Maffick is editorially controlled by the Russian government and

28  that determination was made based on criteria developed by  experts from around the world.

Facebook's Notice does not use loose, figurative language or slang.  It is a very specific allegation that Facebook suggests in not only verifiable, but verified, under its published criteria.  The broad context of the Notice (as part of a promotional campaign intended to assure users and advertisers that Facebook is taking steps to address foreign influence over U.S. elections through social media), the narrow context in which the Notice was published (using specific language and avoiding loose hyperbole and appearing on Maffick's social media pages in a manner intended to convey truthful and reliable information), and the nature of the statement that Maffick is Russia State-Controlled Media (which can be proved true or false) all support a finding that the Notice is an actionable statement of verifiable fact.  *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995).  *See also Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (reviewing a decision after trial and finding a statement that a company was "too small" was puffery by a competitor, a statement that they did not have a necessary license was an opinion by a layperson about the meaning of a statute, but a statement that plaintiff did not pay its bills was verifiable and thus actionable).

Finally, Facebook's citation to seven decisions involving statements about various business ratings does not change this analysis.[2]  Ratings are, by their nature, subjective and less likely to be subject to factual verification.  That is a very different context from Facebook's factual statements about editorial control at Maffick, the veracity of which can be proved and, as this Court has recognized, is the central factual dispute in this case.  Facebook's ratings cases are therefore factually distinguishable and inapposite.  Moreover, it bears emphasis that even business ratings can support legal claims if they imply a false and defamatory factual assertion.  *See Milkovich*, 497 U.S. at 20-21.  Here, the implication of the Notice is unambiguous.  Facebook has told the world it

---

[2] Facebook's ratings cases are *Aviation Charter, Inc. v. Avaition Research Grp.*, 416 F.3d 864 (8th Cir. 2005) (aviation safety rating); *Bostos v. Los Angeles County Bar Ass'n*, 151 Cal. App. 3d (1984) (bar association judicial ratings); *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520 (6th Cir. 2007) (credit rating); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534 (S.D.N.Y. 2018) (attorney ratings); *Forsyth v. MPAA*, 2016 WL 6650059 (N.D. Cal. Nov. 10, 2016) (motion picture ratings); *Warren Tech, Inc. v. UL LLC*, 962 F.3d 1324 (11th Cir. 2020) (electrical safety standard); and *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. .Supp. 2d 789 (N.D. Cal. 2010) (ranking computer company as "niche player").

1   means that Maffick is under the editorial control of the Russian government, which is a verifiably

2   false statement that can support liability.

3   **B.   Facebook's Notice Is Actionable Commercial Speech.**

4       Facebook argues that the SCME Notice cannot give rise to a Lanham Act or UCL claim

5   because Maffick has not sufficiently alleged that it is commercial speech.  In making this argument,

6   Facebook relies on an unduly narrow definition of commercial speech, cites inapposite cases, and

7   fails to distinguish the key California Supreme Court case holding that statements like Facebook's

8   Notice, made in the context of an effort to promote a commercial entity's image as a responsible

9   company to its users or customers, constitutes commercial speech that is subject to scrutiny under

10  unfair competition laws like Section 43(a) of the Lanham Act and California's UCL.  *See Kasky v.*

11  *Nike, Inc.*, 27 Cal. 4th 939, 962-69 (2002).   Facebook also ignores the broader implications of the

12  Notice falling into the category of commercial speech, which undermines its First Amendment

13  defenses and is fatal to its concurrently filed motion to strike.

14      In *Kasky*, Nike had come under scrutiny over allegations of unsafe and illegal labor

15  conditions at its factories in Asia.  In response, Nike made public statements concerning working

16  conditions at its factories that the plaintiff claimed were false and misleading.  The statements were

17  made in press releases, letters to newspapers, and letters to university presidents and athletic

18  directors, among other places.  The California Supreme Court rejected Nike's argument that it

19  could not be held liable for unfair competition because the Court found that its comments on labor

20  standards at its factories were commercial speech.

21      To be sure, commercial speech consists at its core of "'speech proposing a commercial

22  transaction.'"  *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562

23  (1980).  But "the category of commercial speech is not limited to this core segment."  *Kasky*, 27

24  Cal. 4th at 253; *see Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481-82 (1995) (statement of

25  alcohol content on a beer bottle label); *Ibanez v. Fla. Dept. of Bus. & Prof. Reg.*, 512 U.S. 136, 142

26  (1994) (statements on attorney letterhead and business cards).  The Supreme Court has recognized

27  "the difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct

28  category," *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419 (1993); *accord Hoffman v.*

**TroyGould**
**PC**

14

MAFFICK, LLC'S COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

1  *Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) ("the boundary between commercial

2  and non-commercial speech has yet to be delineated"), and has further cautioned that statements

3  may properly be categorized as commercial "notwithstanding the fact that they contain discussions

4  of important public issues," and that "advertising which 'links a product to a current public debate'

5  is not thereby entitled to the constitutional protection afforded noncommercial speech." *Bolger v.*

6  *Youngs Drug Prods. Corp.*, 463 U.S. 60, 67–68 (1983).

7      The *Kasky* court considered three factors in determining whether Nike's speech was subject

8  to laws aimed at commercial deception or false advertising: the speaker, the intended audience and

9  the content of the message.  27 Cal. 4th at 960.  In commercial speech, the speaker is typically

10  someone engaged in commerce and the intended audience includes users of the speaker's goods or

11  services.  *Id.*  The content of speech is commercial in character when it "consists of representations

12  of fact about the business operations… or service of the speaker" made for promoting the speaker's

13  goods or services.  *Id*. at 961-62.  Such speech is subject to scrutiny under unfair competition laws

14  because it constitutes part of the commerce that Congress and the states may regulate and because

15  it is more verifiable by the speaker and less likely to be chilled by regulation because it is profit

16  motivated.  *See Virginia. State Bd. of Pharm. v. Va. Consumer Council*, 425 U.S. 748, 772 (1976).

17      In *Kasky*, the court found Nike was a commercial speaker because it was engaged in

18  commerce, *i.e.*, selling athletic gear, and its statements concerning labor conditions at its factories

19  were intended to reach Nike's consumers, both university administrators and the purchasing public.

20  *Kasky*, 27 Cal. 4th at 963.  Finally, Nike's advertising made statements about its own labor

21  practices, which were within Nike's own knowledge, in order to promote its business in the face of

22  allegations that its athletic gear was made in factories using unacceptable labor standards.  *Id.*  For

23  these reasons, the Court found Nike's advertising was commercial speech and subject to regulation

24  of trade against false and misleading statements about products and services.  *Id*. at 963-64.  The

25  fact that Nike's commercial speech touched on issues of public concern, *i.e.*, labor standards in

26  foreign factories, did not change its commercial nature.  *Id.*  at 964-67.

27      The same is true here.  Facebook is a commercial speaker, engaged in the business of

28  operating a social media platform from which it earns billions of dollars annually.  The audience

1    for Facebook's statements about its business consists of users and potential users of its platform,

2    who generate the reach necessary to generate such enormous advertising revenues, and the

3    advertisers themselves, who have recently put considerable pressure on Facebook to modify its

4    content moderating practices.  And Facebook's challenged statements are part of an effort to

5    promote its company to users and advertisers as a responsible social media platform that is taking

6    action to address foreign governmental influence in U.S. elections, so that they continue to use and

7    support Facebook and generate massive revenues.  Under *Kasky* and the federal authorities it

8    analyzes, Facebook's statements are therefore commercial speech that are subject to the Lanham

9    Act, the UCL, and other appropriate commercial regulations.

10       Facebook's attempts to distinguish *Kasky* fall flat.  Facebook argues that the Notice is not

11   directed at purchasers because users can access its social media platform for free, that its

12   "purchasers" are advertisers to whom the Notice is not directed, that the Notice is about Maffick

13   and not Facebook's own service, and that trade laws have not traditionally regulated social media.

14   The fallacy of those arguments is exposed in *Demietriades v. Yelp, Inc.*, 228 Cal. App. 4th 294

15   (2014).  In *Demetriades*, plaintiff challenged statements by Yelp, a social media website and app

16   that publishes crowd-sourced reviews of businesses, about its "review filter," which Yelp claimed

17   helped to address the problem of unreliable reviews.  *Id.* at 299.  Like Facebook, Yelp is available

18   to users for free.  *Id*.  Nevertheless, the Court of Appeal held that "Yelp's statements about its

19   review filter… are commercial speech about the quality of its product (the reliability of its review

20   filter) intended to reach third parties to induce them to engage in commercial transactions

21   (patronizing Yelp's web site, which patronage induces businesses on Yelp to purchase

22   advertising)."  *Id*. at 310.

23       Similarly, in this case, Facebook's Notice is part of a broader effort to promote its social

24   media platform as one that is more reliable, because Facebook takes steps to protect users by

25   identifying social media sources that may be unreliable because they are controlled by foreign

26   governments.  Facebook likewise promotes the reliability of its SCME policy, touting its

27   development by experts and its analysis of a range of relevant factors.  As part of that broader

28   promotional effort, the Notice is one aspect of Facebook's statements about the quality of its own

MAFFICK, LLC'S COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

1   social media platform (which purportedly protects users from foreign governmental efforts to affect

2   U.S. elections) that are intended to induce users to continue using Facebook, thereby inducing

3   advertisers (which even Facebook describes as its customers) to advertise on Facebook.  Under

4   *Kasky* and *Demetriades*, that is commercial speech.[3]  *See id.* at 312 ("Yelp's statements about the

5   accuracy and performance of its review filter are designed to attract users and ultimately purchasers

6   of advertisers on its site" and therefore are commercial speech.).  Moreover, the court in

7   *Demetriades* was clearly untroubled by the prospect that a social media company might be subject

8   to trade regulation when it makes statements that constitute commercial speech and, in any event,

9   the subject of regulating social media to address the influence of foreign governments in U.S.

10  elections is one that Facebook itself has identified as currently under consideration in Congress.

11      At the very least, Facebook's commercial motivations and the issue of whether the Notice

12  and the promotion of the SCME policy of which it is a part constitute commercial speech are fact

13  questions, on which Maffick is entitled to take discovery and present evidence before they are

14  resolved on the merits.[4]  *See Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 557 (5th Cir.

---

16  [3]For similar reasons, *Cross v. Facebook*, 14 Cal. App. 4th 190 (2017) does not support
    Facebook's position.  The challenged statements in that case were third party posts, not statements
17  made by Facebook, and the issue was whether Facebook had to take them down.  *Id.* at 203-04.
    Unlike the Notice and Facebook's SCME policy, none of the statements were representations of
18  fact by Facebook about its services made for the purpose of soliciting users, which the Court
    implied would be commercial speech.  *Id.* at 204.  *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090
19  (C.D. Cal. 2004) is likewise distinguishable.  In that case, another district court found that the
    defendant's statements were akin to a consumer protection group's review of a product — a
20  category of statements widely understood not to constitute commercial speech.  *Id.* at 1118.
    Moreover, the challenged statements were made after the goods were delivered and the court
21  therefore concluded they were not intended to induce a commercial transaction.  *Id.*  By contrast,
    Facebook's statements here are intended to invite future use of its social network by users and
22  advertisers.

23  [4] Facebook argues that Maffick's UCL claim also fails because Maffick has not alleged standing in
    the form of loss of money or property as a result of the Notice and has failed to allege unlawful,
24  unfair or fraudulent conduct.  But Maffick has alleged damage to its reputation and the loss of
    reach, monetization and other revenues from its social media pages as a result of the Notice. Dkt. 1
25  at ¶ 90.  And evidence presented in support of the TRO indicated that the losses were substantial, as
    monetization is a main source of its revenue.  Facebook attacks those losses as speculative, but that
26  is a subject for discovery.  Similarly, Maffick has alleged that Facebook's Notice constitutes both
    defamation and a violation of the Lanham Act, both of which make it "unlawful."  It is also an
27  injurious and false statement of fact and therefore both "unfair" and "fraudulent."  *See Rasmussen
    v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039-40 (N.D. Cal. 2014).  For these reasons, Facebook's
    arguments for dismissal of Maffick's UCL claim fail and should be rejected.

28

1   2001) (speaker's commercial motivation and the ultimate issue of whether speech is commercial

2   are determined by the trier of fact); *Bernardo v. Planned Parenthood*, 115 Cal. App. 4th 322, 343

3   (2004) (same).  The Court cannot resolve them adversely to Maffick at the pleading stage. [5]

4   **C.**     **The Actual Malice Standard Poses No Barrier To Maffick's Claims.**

5         **1.**     **Actual Malice Is Not Required Because The Notice is Commercial Speech.**

6        Facebook cannot rely on the "actual malice" standard as a basis to dismiss Maffick's claims

7   As discussed above, Facebook's effort to promote its service as a responsible social media platform

8   that users and advertisers can rest assured is addressing concerns about foreign governmental

9   efforts to influence U.S. elections constitutes commercial speech, which is not entitled to

10   heightened First Amendment protection and can therefore support liability and damages without a

11   showing of actual malice.  *See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898

12   F.2d 914, 937 (3d Cir. 1990).  As the Fifth Circuit has explained, "if the trier of fact determines that

13   [defendant's] motives… were commercial and that the speech was therefore commercial, this false

14   commercial speech cannot qualify for the heightened protection of the First Amendment, so

15   [plaintiff] is not required to show actual malice."  *Proctor & Gamble*, 242 F.3d at 557.  The law is

16   the same in the Ninth Circuit.  *See Hoffman*, 255 F.3d at 1185 ("When speech is properly classified

17   as commercial, a public figure plaintiff does not have to show that the speaker acted with actual

18   malice.").  These authorities eliminate Facebook's actual malice argument.  At the very least, a

19   finding that proof of actual malice is required for any purpose must await the jury's determination,

20   following discovery and based on an evidentiary record, about whether the Notice is commercial

21   speech.

22

23

---

24   [5]Facebook separately contends that it cannot be liable to Maffick under the Lanham Act or the
UCL because it is not a competitor of Maffick.  That is wrong on the facts and the law.  In addition

25   to offering a social media platform, Facebook also acts as a media organization that publishes news
stories on that platform that compete directly with Maffick. *See* www.facebook.com/news.

26   Moreover, neither the Lanham Act nor the UCL requires the Plaintiff to be in competition with the
Defendant to sustain a claim.  *See Lexmark Int'l., Inc. v. Static Control Components, Inc.*572 U.S.

27   118, 135-37 (2014) (parties to Lanham Act claim do not need to be competitors); *Kasky*, 27 Cal.
4th at 962-69 (upholding UCL claim between non-competitors).

28

**2.    Maffick Is Not a Public Figure and Is Not Required to Plead Actual Malice.**

Facebook wrongly asserts that Maffick is a limited purpose public figure and therefore must plead actual malice.  But Maffick does not meet the common law tests for either a general public figure or limited purpose public figure, so the actual malice standard, at most, could apply in this case to the limited extent that Maffick seeks presumed or punitive damages.

A general public figure is one who is a public personality in all aspects of life.  *Isuzu Motors Ltd. v. Consumer Union of U.S., Inc.,* 66 F.Supp.2d 1117, 1122 (C.D. Cal. 1999).  Maffick does not fit the definition.  "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual is not a public figure for all purposes."  *Makaeff v. Trump University, LLC,* 715 F.3d 254, 265 (9th Cir. 2013) (Trump University is not generally famous and does not wield vast influence in public affairs so is not a general purpose public figure).  A company does not become a public figure because of its association with a public figure owner or shareholder.  *Id.* at 266 (association with Donald Trump did not render Trump University a public figure).  Nothing in the Complaint (or any other materials in the record) supports a finding that Maffick is generally famous or wields vast influence in public affairs.  There is no basis to find that it is a general public figure.

Maffick also is not a limited purpose public figure, because it did nothing to voluntarily "thrust itself to the forefront of a particular public controversy in order to influence the resolution of the issues involved."  *Time, Inc. v. Firestone,* 424 U.S. 448, 453 (1976).  A party's mere involvement in a matter the media deems to be of interest to the public is not sufficient, in itself, to render that party a limited purpose public figure in a subsequent defamation action that relates to that controversy.  *Reader's Digest Ass'n v. Superior Court,* 37 Cal.3d 244, 254 (Cal. 1984).  Instead, Courts should look for "evidence of *affirmative actions* by which purported public figures have thrust themselves to the forefront of particular public controversies."  *Id.* at 254-56 (emphasis added) (parties who were the subject of a full-length movie, four books, and many magazine and newspaper articles, and had engaged in extensive publicity campaigns, injected themselves into the controversy giving rise to their defamation claim).  Nor does filing a lawsuit convert a party into a limited public figure because a "resort to the judicial process is no more voluntary in a realistic

MAFFICK, LLC'S COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

1    sense than that of the defendant called upon to defend his interests in court." *Time*, 424 U.S. at 454-

2    55 (socialite wife of wealthy scion was not a public figure despite her high-profile divorce).  A

3    party's status as a limited public figure is judged based on their active efforts to influence the

4    outcome of the particular controversy giving rise to the defamation.  *See Makaeff,* 715 F.3d at 266.

5          In *Makaeff,* the Court concluded that Trump University had made itself a limited public

6    figure by virtue of its aggressive advertising campaign – online and through social media, local and

7    national newspaper and radio advertisements – in which it made controversial claims about its

8    products and services, which were then the subject of a public debate that gave rise to its

9    defamation claims.  *Id.* at 268-70.  In this case, the controversy at issue is foreign governments

10   using social media to influence U.S. elections.  But nothing in the Complaint (or otherwise before

11   the Court) suggests that Maffick took affirmative actions to voluntarily thrust itself into that

12   controversy to influence its resolution.  To the contrary, the allegations of the Complaint, which

13   must be accepted as true and construed in the light most favorable to Maffick, are that Maffick is a

14   small U.S. company, owned by a single American citizen, that posts stories on social media

15   regarding current events, environmental issues, and social awareness.  Maffick has taken no

16   affirmative action to voluntarily thrust itself into the forefront of a controversy over foreign

17   meddling in U.S. elections or made any effort to influence the outcome of that controversy.  It has

18   simply contested Facebook's false assertions by filing this lawsuit, which is the only effective

19   manner in which Maffick can defend its interests.  That does not convert Maffick into a limited

20   purpose public figure.

21         Moreover, the policies that animate the distinction between public figures and private

22   individuals support the conclusion that Maffick is not a public figure.  The Supreme Court has

23   established heightened burdens for public figure defamation plaintiffs because they voluntarily

24   expose themselves to increased risk of injury from defamatory falsehoods and are generally less

25   vulnerable to the effects of defamation because of their increased access to channels of

26   communication and their greater ability to resort to effective "self-help."  *Time,* 424 U.S. at 455.

27   That is simply not the case here.  Even if the Court were to focus on Maffick's ability to post

28   statements on its social media pages, which is an option available to any private citizen, any

1  statement by Maffick will also bear the Notice, imposed by Facebook, that Maffick is "Russia State

2  Controlled Media." And the Complaint details two separate instances in which Facebook

3  threatened to take down or actually did take down Maffick's social media pages, unless or until

4  Maffick made false disclosures about its ownership or affiliation with Ruptly. Maffick therefore

5  does not have the self-help resources to protect itself from defamation that support the rule that

6  public figures must meet heightened pleading and evidentiary burdens.

7       Facebook's unfounded public criticism does not turn Maffick into a limited purpose public

8  figure. Nor does the number of followers of one of its social media pages or the fact that it seeks to

9  optimize views of its pages or sales of its e-commerce merchandise. *See Vegod Corp. v. ABC, Inc.*,

10  25 Cal.3d 763, 769-70 (1979) (company that advertises its business does not become a public

11  figure simply because its practices are criticized in the press). Maffick is a private entity that seeks

12  to defend its interests from defamatory public commentary. It is not a public figure and therefore is

13  not required to plead or prove actual malice in order to recover damages. At the very least, the

14  factual question of whether Maffick is a public figure cannot be resolved based on the pleadings

15  and should await resolution on the merits by the jury.

16       **3.    Even If Maffick Must Plead Actual Malice, It Has Done So.**

17       To the extent the Court finds that Maffick must plead actual malice, Maffick has satisfied

18  that burden. A defamatory statement is made with actual malice if the speaker had knowledge that

19  it is false or acted with reckless disregard for whether it is false or not. *Masson v. New Yorker*

20  *Magazine, Inc.*, 501 U.S. 496, 510 (1991). "Reckless disregard" encompasses a defendant's serious

21  doubts as to the truth of the publication, and also applies if the defendant had obvious reasons to

22  doubt the veracity of its statements, but engaged in "'purposeful avoidance of the

23  truth.'" *Eastwood v. National Enquirer,* 123 F.3d 1249, 1250–51 (9th Cir. 1997) (quoting *St.*

24  *Amant v. Thompson,* 390 U.S. 727, 732 (1968). Direct evidence of reckless disregard is extremely

25  difficult to obtain, so actual malice may be proven by circumstantial evidence, given the totality of

26  the circumstances. *Kaelin v. Globe Communications Corp.,* 162 F.3d 1036, 1040 (9th Cir. 1998).

27

28

1    A defendant's refusal to retract a false statement tends to support a finding of actual malice.

2  *Zerangue v. TSP Newspapers, Inc.,* 814 F.2d 1066, 1070-71 (5th Cir. 1987); *Golden Bear*

3  *Distributing System of Texas, Inc. v. Chase Revel, Inc.,* 708 F.2d 944, 950 (5th Cir. 1983).

4  Similarly, actual malice will be found where a defendant failed to investigate a story weakened by

5  inherent improbability, internal inconsistency, or contrary information.  *Zerangue,* 814 F.2d at

6  1070; *see Curtis Publishing Co. v. Butts,* 388 U.S. 130 (1967).  And every repetition of defamation

7  is a separate publication, *Flowers v. Carville,* 310 F.3d 1118, 1128 (9th Cir. 2002), that can be

8  made with actual malice, even if earlier publications were not.

9    In this case, the Complaint alleges that Maffick provided Facebook with a detailed

10  explanation and factual showing as to why the Notice was false, but Facebook continued *and still*

11  *continues* to publish the Notice on Maffick's social media pages and to repeat it daily on every post

12  Maffick publishes.  Dkt. at ¶¶ 19-21, 30-45.  Even in the face of a TRO application, Facebook has

13  never identified what evidence it relied upon as the basis for publishing the Notice about Maffick.

14  Facebook's counsel identified certain internet reports about the ownership of Maffick GmbH, a

15  defunct German entity that no longer does business of any kind and has no relationship to Maffick

16  LLC's social media pages.  But those articles all pre-date the formation of Maffick LLC, which is

17  indisputably a Delaware company owned by a United States citizen who lives and works in Los

18  Angeles.  The Complaint thus alleges, and Facebook's own submissions to this Court confirm, that

19  Facebook based the Notice on obsolete hearsay about a defunct German company and refused to

20  reevaluate its statements about Maffick, even when confronted with evidence that its pages are

21  currently owned and operated by a completely different U.S. entity.  Under these circumstances,

22  Maffick has sufficiently pled, and should be allowed to take discovery and prove, that Facebook

23  acted with reckless disregard for whether its Notice is true or false and has purposefully avoided

24  the truth of whether the Russian government has any editorial control over Maffick's social media

25  pages.  Dkt. 1 at ¶¶ 19-21, 30-45; Dkt. 3-3 at pp. 5-11.

26    As the Ninth Circuit has held, while the First Amendment imposes substantive requirements

27  on the state of mind a public figure must prove in order to recover damages for defamation, it does

28  not require her to prove that state of mind in the Complaint.  *Flowers v. Carville,* 310 F.3d 1118,

1   1130 (9th Cir. 2002).  Actual malice is a subjective standard that is typically proven by evidence

2   beyond the defamatory publication itself, and for that reason, "the issue of actual malice cannot be

3   properly disposed of by a motion to dismiss where the plaintiff has had no opportunity to present

4   evidence in support of his allegations." *Id.* at 1131; *see also Church of Scientology Int'l. v. Behar,*

5   238 F.3d 168, 173 (2d Cir. 2001) (resolution of the actual malice inquiry typically requires

6   discovery); *Biro v. Conde Nast,* 963 F.Supp.2d 255, 278 (S.D.N.Y. 2013) (it is often difficult to

7   plead actual malice with specificity "before taking discovery of those responsible for the

8   publication").  Maffick has satisfied its pleading burden to the extent that the actual malice

9   requirement even applies in this case, but if more is required, the Court should allow Maffick to

10  take discovery on the issue, present expert evidence with regard to its editorial independence of

11  government control, and then amend the Complaint.

12       **4.      In Any Event, The Actual Malice Standard Is a Damages Rule Inapplicable to
             Maffick's Request for Injunctive Relief.**

13

14       Even if this Court were to find that the actual malice rule precluded recovery of certain

15  types of damages, that ruling would not affect Maffick's claims for injunctive relief.  The seminal

16  case of *New York Times v. Sullivan*, 376 U.S. 254 (1964), holds that the First Amendment

17  "prohibits a public official *from recovering damages* for a defamatory falsehood relating to his

18  official conduct unless he proves that the statement was made with "actual malice." *Id*. at 279-80

19  (emphasis added).  Similarly, the Supreme Court held in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323

20  (1974) that a private figure plaintiff my recover actual damages for defamation on a lesser showing,

21  but must prove actual malice in order to recover presumed or punitive damages. *Id.* at 350. *New*

22  *York Times*, *Gertz* and their progeny are thus cases about when the First Amendment permits

23  recovery of damages for defamation.  The "actual malice" rule they establish exists to prevent self-

24  censorship by those commenting on public concerns, who might otherwise seek to avoid monetary

25  liability.  To the extent that Maffick seeks injunctive relief, the actual malice rule does not apply to

26  this situation, which does not involve the same risk of self-censorship, when the sole consequence

27  of losing the motion is an order requiring Facebook to stop repeating a false and defamatory factual

28  statement, which has no constitutional value. *See Gertz*, 418 U.S. at 339.  Among the relief that

1  Maffick seeks is an order enjoining Facebook from its repeating statements that have been
2  determined to be false and defamatory at trial (*i.e.*, requiring it to take down the Notice), which is
3  plainly within this Court's authority to grant.  *See Balboa Island Vill. Inn, Inc. v. Lemen,* 40 Cal.
4  4th 1141, 1157 (2007).  Maffick is not required to plead or prove actual malice in order to obtain
5  that limited injunctive relief.

6  **D.    Maffick Sufficiently Pled Intentional Interference.**

7        Federal Rule of Civil Procedure § 8 provides that a pleading states a claim for relief if it sets
8  forth a "short and plain statement of the claim showing that the pleader is entitled to relief" and a
9  plaintiff need not plead a prima facie case in order to survive a motion to dismiss pursuant to Rule
10  12(b)(6).  *Achal v. Gate Gourmet, Inc.,* 114 F.Supp.3d 781, 796 (N.D.Cal. 2015).  Because federal
11  courts simply require "notice pleading," courts must construe pleadings liberally and mere
12  vagueness or lack of detail alone will not be sufficient grounds to dismiss a complaint.  *Id.*  Under
13  Rule 8, rules of strict construction are not in force, and unless it affirmatively appears from what is
14  actually alleged that there is no valid claim or defense, the Court acts appropriately in denying a
15  motion to dismiss or to strike.  *Swierkiewixz v. Sorema N.A.,* 534 US 506, 506-507 (2002).

16        At the pleading stage, Maffick is simply required to put Facebook on fair notice as to the
17  conduct upon which it bases its tortious interference claims, and it did so in the Complaint.  *NGV*
18  *Gaming, Ltd. v. Upstream Point Molate, LLC,* 355 F.Supp.2d 1061, 1064 (N.D.Cal. 2005)(where
19  each element of tortious interference was alleged, the complaint was sufficient on its face); *PKG*
20  *Group, LLC v. Gamma Croma, S.p.A.,* 466 F.Supp.2d 249 (S.D.N.Y. 2006) (allegations that
21  defendant made false statements about plaintiff's conduct and undercut its image and reputation
22  with other companies provided fair notice as to the conduct upon which plaintiff based its claim of
23  tortious interference); *The Bradbury Co., Inc. v Teissier-duCrocs,* 387 F.Supp.2d 1167
24  (D.Kan.2005)(adequate notice was given where plaintiff alleged he was damaged when defendants
25  told current and prospective clients that he was bound by a non-existent non-competition
26  agreement).

27        Maffick alleged all the requisite elements of its interference claims in the Complaint and
28  Facebook unquestionably has notice of the conduct giving rise to Maffick's claims.  In support of

1   its TRO application, Maffick presented evidence of its business relationships with 27 other

2   companies with which it does business through its Facebook pages.  Twelve of them are branded

3   content partners, who pay and/or barter with it to promote their products on Maffick's pages.  *See*

4   Dkt. No. 17-1 at ¶ 18.  Every time Maffick promotes one of their products, such as an

5   advertisement for a bio-degradable phone case, the post is labeled "Russia state-controlled media."

6   *Id.*  The other fifteen companies are content providers whose content Maffick reposts on its pages

7   and vice versa – a process called "cross-posting."  *Id.*  Cross-posting allows social media pages to

8   post a substantial amount of content every day, in addition to the content they create themselves,

9   creating significant cost savings.  *Id.*  Every time Maffick posts a video created by one of its cross-

10  posting partners, the video is flagged as "Russia state-controlled media."  The Notice thus creates

11  viewer confusion about the association of branded posts and cross-posted content with the Russian

12  government and interferes with the messaging of Maffick's business partners.  *Id.*  For this reason,

13  Maffick's branded and cross-posting partnerships are in serious jeopardy and Maffick has been

14  unable to develop new partnerships since the Notice was published.  *Id.*

15      Facebook knows about these business relationships because Maffick's branded and cross-

16  posts are posted on Facebook's social media platform, as to which Facebook has independent

17  access, and because it apparently has closely monitored Maffick's pages.  Facebook also knows

18  that by posting the false Notice, it is creating viewer confusion and threatening Maffick's business

19  relationships with business partners, who do not want their products or their videos associated with,

20  or labeled as belonging to, a company accused of acting as a "weapon of Russian propaganda."

21  Moreover, Facebook's conduct is independently actionable as defamation and in violation of the

22  Lanham Act and California Business and Professions Code Section 17200.  In view of this

23  evidence, which is before the Court and could be added to the Complaint, if necessary, Maffick's

24  allegations should be deemed sufficient to plead actionable claims for interference with business

25  relations, *see Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 392-93 (1995), and

26  to the extent the Court has any contrary concern, it should grant leave to amend so that these and

27  other facts can be added to the Complaint.

28

**TroyGould**
**PC**

25

MAFFICK, LLC'S COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

04260-0002  341039.1

**VI.  <u>CONCLUSION</u>**

For these reasons, Facebook's motions should be denied.  To the extent that any claim is dismissed on the pleadings, the Court should grant leave to amend, so that Maffick can obtain relief for the harm it has suffered as a result of Facebook falsely labeling its social media pages as "Russia State-Controlled Media."

Dated:  September 18, 2020

TROYGOULD PC

By:  _/s/ John Ulin_
John Ulin
Attorneys for Plaintiff
MAFFICK LLC

MAFFICK, LLC'S COMBINED OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

04260-0002  341039.1

**TroyGould
PC**