JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
MARIANNA MAO (State Bar No. 318070)
marianna.mao@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:     (415) 512-4077

DONALD B. VERRILLI, JR. (*pro hac vice* application pending)
donald.verrilli@mto.com
JONATHAN KRAVIS (*pro hac vice* application pending)
Jonathan.kravis@mto.com
ZOE BEDELL (*pro hac vice* application pending)
zoe.bedell@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street, NW, 7th Floor
Washington, DC  20004-1361
Telephone:    (202) 220-1100
Facsimile:     (202) 220-2300

Attorneys for Defendant
FACEBOOK, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MAFFICK LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>    vs.<br><br>FACEBOOK, INC., a Delaware corporation, and Does 1-10, inclusive.<br><br>            Defendants. | Case No. 3:20-cv-05222-JD<br><br>**DEFENDANT FACEBOOK, INC.'S COMBINED REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE COUNTS ONE THROUGH FOUR AND SIX OF PLAINTIFF'S COMPLAINT (PURSUANT TO CAL. CODE CIV. PROC. § 425.16) AND MOTION TO DISMISS THE COMPLAINT**<br><br>Judge:           Hon. James Donato<br>Hearing Date:   October 1, 2020<br>Hearing Time:   10:00 AM |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    ARGUMENT ........................................................................................................2

    A.    The Anti-SLAPP Statute Applies to Maffick's State Law Claims ..............2

    B.    The Commercial Speech Exemption Does Not Apply..................................3

    C.    Maffick Has Failed to State a Claim and Cannot Demonstrate a Probability of Success on its State Law Claims .......................................................................5

        1.    The SCME Label Is a Nonactionable Statement of Opinion ..........5

        2.    As Alleged, the Label is Not Commercial Speech and Not Actionable under the Lanham Act or the UCL .................................................9

        3.    Maffick Does Not Allege Actual Malice ......................................12

            (a)    Maffick Is A Limited Purpose Public Figure ......................12

            (b)    Maffick Has Failed To Allege Actual Malice ....................14

            (c)    The Actual Malice Rule Applies to a Request for Injunctive Relief ...................................................................................15

        4.    Maffick's Tortious Interference Claims Fail................................16

        5.    Maffick Fails to Allege Standing or Actionable Conduct Under the UCL ............................................................................................17

III.    CONCLUSION ..................................................................................................17

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Am. Acad. of Pain Mgmt. v. Joseph,*
    353 F.3d 1099 (9th Cir. 2004)............................................................................10, 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................15

*Aviation Charter, Inc. v. Aviation Research Group/US,*
    416 F.3d 864 (8th Cir. 2005)................................................................................7

*Bio-Medical Rsch. Ltd. v. Thane Int'l, Inc.,*
    249 F. App'x 539 (9th Cir. 2007).......................................................................16, 17

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983) ..............................................................................................10, 11

*Bosley Med. Inst., Inc. v. Kremer,*
    403 F.3d 672 (9th Cir. 2005)................................................................................12

*Church of Scientology Int'l. v. Behar,*
    238 F.3d 168 (2d Cir. 2001).................................................................................15

*Compuware Corp. v. Moody's Inv. Services, Inc.,*
    499 F.3d 520 (6th Cir. 2007)................................................................................7

*Connick v. Myers,*
    461 U.S. 138 (1983) ............................................................................................10

*Cummins v. Lollar,*
    2012 WL 12885117 (C.D. Cal. Nov. 16, 2012) ..................................................13

*Dex Media West, Inc. v. City of Seattle,*
    696 F.3d 952 (9th Cir. 2012)................................................................................11

*DocMagic, Inc. v. Ellie Mae, Inc.,*
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) ..............................................................17

*Federal Agency of News LLC v. Facebook, Inc.,*
    395 F. Supp. 3d 1295 (N.D. Cal. 2019) ..............................................................2, 11

*Flowers v. Carville,*
    310 F.3d 1118 (9th Cir. 2002)..............................................................................15

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ............................................................................................16

## TABLE OF AUTHORITIES
### (Continued)

Page

*Greene v. Wells Fargo Bank, N.A.*,
    2019 WL 1331027 (N.D. Cal. Mar. 25, 2019) ............................................................17

*Harris v. City of Seattle*,
    152 F. App'x 565 (9th Cir. 2005) ...............................................................................15

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) .......................................................................3

*Hoffman v. Cap. Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001) ...................................................................................11

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ...................................................................................11

*Info. Control Corp. v. Genesis One Comput. Corp.*,
    611 F.2d 781 (9th Cir. 1980) .......................................................................................6

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...........................................................................6, 8, 9

*Kournikova v. Gen. Media Commc'ns. Inc.*,
    278 F. Supp. 2d 1111 (C.D. Cal. 2003) .....................................................................16

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) .....................................................................................14

*Manufactured Home Communities, Inc. v. County of San Diego*,
    544 F.3d 959 (9th Cir. 2008) .......................................................................................6

*Mattel, Inc. v. MCA Recs., Inc.*,
    28 F. Supp. 2d 1120 (C.D. Cal. 1998) .......................................................................16

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ...................................................................................15

*Proctor & Gamble Co. v. Amway Corp.*,
    242 F.3d 539 (5th Cir. 2001) .....................................................................................10

*R Power Biofuels, LLC v. Chemex LLC*,
    2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ...........................................................16

*Rasmussen v. Apple Inc.*,
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) .......................................................................17

DEFENDANT'S COMBINED REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page

3

*Resolute Forest Prods., Inc. v. Greenpeace Int'l,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ...........................................................13, 15, 16

4

5

*Roe v. Doe,*
    2009 WL 1883752 (N.D. Cal. June 30, 2009) ...........................................................13

6

*Steaks Unlimited, Inc. v. Deaner,*
    623 F.2d 264 (3d Cir. 1980)...........................................................................14

7

8

*Warren Tech, Inc. v. UL LLC,*
    962 F.3d 1324 (11th Cir. 2020)..........................................................................8

9

*Wynn v. Chanos,*
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ...............................................................15

10

11

*Ziv v. Valley Beth Shalom,*
    156 F.3d 1242 (9th Cir. 1998).............................................................................6

12

13

*ZL Techs., Inc. v. Gartner Grp., Inc.,*
    433 F. App'x 547 (9th Cir. 2011)........................................................................6

14

*ZL Techs., Inc. v. Gartner, Inc.,*
    709 F. Supp. 2d 789 (N.D. Cal. 2010), aff'd sub nom., *ZL Techs., Inc. v. Gartner*
    *Grp., Inc.*, 433 F. App'x 547 (9th Cir. 2011) ...............................................................8, 9

15

16

**STATE CASES**

17

*Balboa Island Village Inn, Inc. v. Lemen,*
    40 Cal. 4th 1141 (2007)..............................................................................16

18

19

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006)..................................................................................2

20

*Bernardo v. Planned Parenthood,*
    115 Cal. App. 4th 322 (2004)...............................................................10, 12

21

22

*Botos v. Los Angeles Cty. Bar Assn.,*
    151 Cal. App. 3d 1083 (1984)........................................................................8

23

*Cross v. Facebook,*
    14 Cal. App. 5th 190 (2017).........................................................................3, 5

24

25

*Demetriades v. Yelp, Inc.,*
    228 Cal. App. 4th 294 (2014)...............................................................5, 11, 12

26

27

28

DEFENDANT'S COMBINED REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS

# TABLE OF AUTHORITIES
### (Continued)

Page

*Equilon Enters. v. Consumer Cause, Inc.*,
    29 Cal. 4th 53 (2002) .................................................................................................2

*Hawran v. Hixson*,
    209 Cal. App. 4th 256 (2012) ....................................................................................4

*Issa v. Applegate*,
    31 Cal. App. 5th 689 (2019) ......................................................................................6

*JAMS, Inc. v. Superior Court*,
    1 Cal. App. 5th 984 (2016) ........................................................................................3

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ........................................................................................11, 12

*Kronemyer v. Internet Movie Database, Inc.*,
    150 Cal. App. 4th 941 (2007) ....................................................................................3

*Prager Univ. v. Google LLC*,
    2019 WL 8640569 (Cal. Super. Nov. 19, 2019) .......................................................3

*Simpson Strong-Tie Co. v. Gore*,
    49 Cal. 4th 12 (2010)..............................................................................................3, 4

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996) ....................................................................................17

*Wilcox v. Superior Court*,
    27 Cal. App. 4th 809 (1994) ......................................................................................2

**FEDERAL STATUTES**

Lanham Act ....................................................................................................1, 5, 8, 9

**STATE STATUTES**

Cal. Bus. & Prof. Code §17200, Unfair Competition Law ...........................................9, 17

Cal. Code Civ. Proc. § 425.16 .................................................................................2

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend I .............................................................................. 1, passim

1

## I.      INTRODUCTION

2      The First Amendment bars Maffick's claims against Facebook.  The speech at issue in this

3 case—Facebook's decision to apply its state controlled media entity ("SCME") label to Maffick's

4 Pages—is at the heart of the First Amendment:  an expression of opinion on a matter of grave public

5 concern.  Facebook made a subjective judgment, based on its consideration of multiple publicly-

6 announced criteria, to apply the label to Maffick, and it had ample basis to do so.  Maffick has deep

7 ties to the Russian state-controlled news network RT.  Indeed, to this day Maffick states on its Pages

8 that it is "Affiliated with RT" (Compl. ¶ 21) and hosts massive amounts of content published when it

9 was indisputably majority-owned by an RT subsidiary (before its alleged corporate restructuring).

10      While Maffick now attempts to portray itself as a small private company that sells eco-

11 friendly merchandise, its channels "often play on tensions in the US," and have been described as

12 "bait to attract audiences," "act[ing] as camouflage to keep the output's ties to Russia's government

13 at least two or three clicks away."  ECF No. 10, Ex. E at 2; Ex. M at 2.  Indeed, as this Court found

14 in denying Maffick's TRO motion, Facebook's conclusion that Maffick meets Facebook's criteria

15 for a state-controlled media entity was based on "a considerable amount of evidence," and the

16 evidence to the contrary from Maffick consisted of "little more than ipse dixit."  ECF No. 29 at 4.

17      Maffick attempts to avoid the First Amendment by distorting the SCME label into something

18 it is not: a statement of fact about Facebook's own commercial activities.  But as the undisputed

19 context for the label shows, it is a factor-specific subjective judgment akin to statements courts have

20 held to be nonactionable statements of opinion.  And as Maffick's allegations make clear, the label is

21 non-commercial speech about *Maffick's* business, not Facebook's; indeed, Maffick's core allegation

22 is that Facebook defamed *it*.  It is equally clear that Maffick is a limited purpose public figure, yet it

23 has failed to plead specific facts necessary to establish actual malice: that Facebook knew its speech

24 was false or acted in reckless disregard of probable falsity.  To the contrary, Maffick's allegations,

25 including its affiliation with RT, refute any claim that Facebook acted with actual malice.

26      In sum, this is precisely the kind of case that the anti-SLAPP statute was intended to

27 prevent—a lawsuit challenging First Amendment activity on a matter of public concern.  Maffick's

28 state law claims should be stricken under the statute, and its federal Lanham Act claim dismissed.

DEFENDANT'S COMBINED REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS

1  II.    **ARGUMENT**

2       A.    **The Anti-SLAPP Statute Applies to Maffick's State Law Claims**

3       The anti-SLAPP statute applies to Maffick's state law claims because those claims arise from

4  Facebook's speech on its own platform about an issue of pressing public interest.  As Maffick

5  alleges, the SCME label reflects Facebook's efforts "to provide an extra layer of protection against

6  various types of foreign influence in the public debate ahead of the November 2020 election."

7  Compl. ¶ 22.  Maffick's arguments that the statute does not apply are without merit.

8       First, Maffick's contention that "[t]his is not the sort of case that Civil Code Section 425.16

9  was intended to address," Opp. at 8, is simply wrong.  Courts routinely apply the anti-SLAPP statute

10  to defamation and like claims arising out of speech on the Internet.  *E.g., Barrett v. Rosenthal*, 40

11  Cal. 4th 33, 41 & n.4 (2006) (collecting authorities).  Maffick cites a 1994 case in support of the

12  proposition that the anti-SLAPP statute requires that the plaintiff have an intent to gain economic

13  advantage over the defendant, *Wilcox v. Superior Court*, 27 Cal. App. 4th 809 (1994), but neglects to

14  mention that the California Supreme Court expressly disapproved that decision on this very point.

15  *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 & n.5 (2002) (there is "no additional

16  requirement of proving [plaintiff's] subjective intent" in filing suit for anti-SLAPP statute to apply).

17       Second, though Maffick does not dispute that the SCME label constitutes speech on a matter

18  of significant public interest, it suggests that Facebook should not be permitted to argue that

19  Maffick's Facebook Pages are a "public forum" for purposes of the anti-SLAPP statute because, in

20  a different case, Facebook argued that its platform was not a public forum for purposes of the First

21  Amendment.  Opp. at 8.  This argument mixes up two distinct legal doctrines.  In *Federal Agency of*

22  *News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1309 (N.D. Cal. 2019), Facebook successfully

23  argued that Facebook is not a public forum for purposes of First Amendment doctrine.  The court

24  concluded that Facebook does not fall within this doctrine because Facebook does not engage in a

25  function that is both traditionally and exclusively governmental, and therefore Facebook is not a

26  public actor subject to liability for a violation of the First Amendment.  *Id.* at 1310.  As courts have

27  recognized, that is a separate question from whether Maffick's Facebook Pages are "a place open to

28  the public or a public forum" (Cal. Civ. Proc. Code § 425.16(e)(3)) for purposes of the anti-SLAPP

statute.  *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116-17 (N.D. Cal. 2017); *Prager Univ. v. Google LLC*, 2019 WL 8640569, at *6 (Cal. Super. Nov. 19, 2019). Because "[t]he reach of the anti-SLAPP statute is broader than the scope of constitutionally protected speech," *hiQ Labs*, 273 F. Supp. 3d at 1116, a website can be a public forum for purposes of the anti-SLAPP statute and yet not constitute a public forum for First Amendment purposes.

Even Maffick appears to recognize this flaw in its argument, as Maffick does not actually argue that its Pages fall outside the statutory definition.  With good reason.  Courts uniformly have concluded that publicly-accessible websites like Maffick's Facebook Pages are places "open to the public or a public forum" under the anti-SLAPP statute.  *See Cross v. Facebook*, 14 Cal. App. 5th 190, 199 (2017); *Kronemyer v. Internet Movie Database, Inc.*, 150 Cal. App. 4th 941, 950 (2007) (a "[w]eb site constitutes a public forum").  Maffick nowhere attempts to distinguish these cases.

### B.        The Commercial Speech Exemption Does Not Apply

The SCME label is speech by Facebook about media outlets that operate on its platform.  As alleged, Facebook applied the SCME label to Maffick's Pages as part of an effort "to label media outlets" that it has determined, based on the application of its own criteria, "are wholly or partially under the editorial control" of a state.  Compl. ¶¶ 22, 24.  As such, the label does not come close to falling within the narrow commercial speech exemption to the anti-SLAPP statute, which "is aimed squarely at false advertising claims."  *JAMS, Inc. v. Superior Court*, 1 Cal. App. 5th 984, 994 (2016).  The SCME label is not advertising, and does not meet any of the four required elements for the commercial exemption to apply.  *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 29-30 (2010).

Maffick largely ignores the *Simpson* test, and does not even address the first or the third elements of that test.  The California Court of Appeals already has held that Facebook does not meet the first element—that the defendant is "primarily engaged in the business of selling or leasing goods or services"—because Facebook "offers a free service to its users."  *Cross*, 14 Cal. App. 5th at 203.  And the SCME label does not meet the third element—that "the statement or conduct [was] made for the purpose of obtaining approval for, promoting, or securing…commercial transactions in, the [defendant's] goods or services"—because the SCME label does not propose, or even discuss, a commercial transaction.  Maffick does not even try to argue to the contrary.  Because a

statement must meet all four elements of the *Simpson* test to qualify for the commercial speech exemption, Maffick's argument should be rejected on this basis alone.

In any event, Maffick's arguments on the remaining elements are not persuasive. Maffick says that the label meets the second element—that the cause of action arises from a representation of fact about the defendant's business—because the SCME label is a representation "about Facebook's own business." Opp. at 9. Maffick is wrong. The SCME label does not make representations about Facebook's "own business," i.e., its social networking platform. Rather, as Maffick alleges, the SCME label is a statement about *Maffick's* business; indeed, Maffick's core allegation is that Facebook defamed *it*. *E.g.,* Compl. ¶ 26 (alleging that SCME label "giv[es] the impression that" Maffick's Pages "are connected or associated with, or originate from, the Russian government"); *id.* ¶ 51 ("The individuals who have viewed Maffick's Facebook pages and posts have reasonably understood that the statements *are about Maffick*….") (emphasis added).

Maffick attempts to avoid its own allegations about the nature of the SCME label by invoking other statements by Facebook about the SCME policy generally, and arguing that those statements are about Facebook's business. Opp. at 9. This effort should be rejected. As an initial matter, those other statements by Facebook do not meet any other element of the *Simpson* test. More fundamentally, courts repeatedly have rejected attempts to impermissibly broaden the commercial speech exemption inquiry beyond the specific statements challenged in the lawsuit. The relevant question is whether the challenged statement itself, and not some other statement by the defendant, meets the elements of the *Simpson* test. *E.g., Simpson,* 49 Cal. 4th at 30; *Hawran v. Hixson,* 209 Cal. App. 4th 256, 273 (2012) (commercial speech exemption "is not triggered by the presence of other representations of fact concerning [plaintiff's] business operations or services . . . if [plaintiff] does not seek to impose liability based on those statements"). Here, Maffick's claims arise from the application of the SCME label to its Pages and content, and not from Facebook's statements about the SCME policy generally.

Finally, Maffick incorrectly states that the SCME label meets the fourth element of the *Simpson* test because the "intended audience" for the SCME label is Facebook's "users and

advertisers." Opp. at 9. As Maffick alleges, the intended audience of the SCME label is Facebook users, Compl. ¶ 50, and Facebook users are not its customers because Facebook offers its services for free, *see Cross*, 14 Cal. App. 5th at 203. Facebook's customers are its advertisers, and Maffick nowhere alleges that advertisers are the intended audience of the SCME labels on Maffick's Pages.

The case cited by Maffick, *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294 (2014), is not to the contrary. In that case, an advertiser sued Yelp for false advertising and unfair competition based on allegedly false statements by Yelp about its own customer review filter feature. The Court of Appeals concluded that the commercial speech exemption applied to those claims because, as opposed to the reviews themselves, Yelp's statements were representations "about the quality of its product (the reliability of its review filter)" that were directed to Yelp's customers, namely potential advertisers who were less likely to advertise on Yelp "without assurances that potential patrons of their business establishments would be reading only reliable reviews." *Id.* at 310-12. Here, by contrast, the SCME label does not concern Facebook's statements to its advertisers about the quality of any of Facebook's products or services; rather, it is a statement about Maffick's products.

### C.   Maffick Has Failed to State a Claim and Cannot Demonstrate a Probability of Success on its State Law Claims

Maffick has failed to state a claim for all of its causes of actions, warranting the striking of all of its state-law claims under the anti-SLAPP statute and the dismissal of its Lanham Act claim.

#### 1.   The SCME Label Is a Nonactionable Statement of Opinion

The SCME label reflects Facebook's subjective judgment based on weighing and considering multiple criteria. As Facebook's motions establish, the label is thus a nonactionable statement of opinion under the First Amendment, warranting dismissal of all of Maffick's claims.[1] Maffick's arguments to the contrary ignore controlling authority and are meritless.

First, Maffick claims that this is a jury issue, Opp. at 10, but Ninth Circuit law is clear that the "determination of whether an allegedly defamatory statement is a statement of fact or statement of opinion is a question of law" for the court. *Info. Control Corp. v. Genesis One Comput. Corp.*,

---

[1] Maffick does not dispute that if the label is a statement of opinion, this bars all of its causes of action. *See* Motion To Dismiss (MTD) at 4-5; Motion To Strike (MTS) at 9.

611 F.2d 781, 783 (9th Cir. 1980); *Ziv v. Valley Beth Shalom*, 156 F.3d 1242 (9th Cir. 1998) (same). Indeed, Maffick's own cited authorities state the same.  In *Manuf. Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 963 (9th Cir. 2008), the Ninth Circuit held that "whether the statements giving rise to the complaint are actionable at all" presents a "context-bound determination [which] is a question of law for the court."  Only if *the court* finds that the statement is "reasonably susceptible of an interpretation which *implies a provably false assertion of fact*'" does the jury then "determine *whether such an interpretation was in fact conveyed*."  *Id.* (emphases added); *accord. Jud. Council of Cal. Civ. Jury Instructions* (2020), CACI No. 1707 (same); *Issa v. Applegate*, 31 Cal. App. 5th 689, 695 (2019) (affirming anti-SLAPP dismissal of defamation claims).[2]

The SCME label cannot reasonably be interpreted as a factual assertion because, as Maffick concedes in its opposition (and alleges in its complaint), Facebook expressly informs users that the label reflects Facebook's own "determination … based on criteria developed by" Facebook, reflecting its own "analysis of a range of relevant factors," Opp. at 12-13, 16; *see also* Compl. ¶¶ 23-24 (alleging the label reflects Facebook's own "*assessment of editorial control*" reflecting weighing and consideration of multiple different criteria (emphasis added)).  Indeed, Maffick does not dispute that in evaluating whether a challenged statement is actionable, this Court must consider not only the statement itself but also "the totality of the circumstances" including "[t]he context in which the statement appears."  *Knievel v. ESPN*, 393 F.3d 1068, 1074-75 (9th Cir. 2005).

Here, the context surrounding the SCME label shows that it is a nonactionable statement of opinion regarding Facebook's application of its own multi-factor analysis to a particular entity, a "subjective and qualitative approach [that] is not given to the assertion of objective facts" and is thus "not susceptible of being proved true or false."  *ZL Techs., Inc. v. Gartner Grp., Inc*., 433 F. App'x 547, 548 (9th Cir. 2011).[3]  It is undisputed that on Maffick's Pages, Facebook explains that

---

[2] Facebook's Motions also cited numerous cases in which district courts and courts of appeals have, on the pleadings, dismissed claims challenging nonactionable statements of opinion, *see* MTD at 5; MTS at 9.  Maffick does not acknowledge or attempt to distinguish any of these authorities.

[3] This context is illustrated by the materials attached to the Blavin Declaration (ECF No. 37) that Facebook requested be incorporated by reference and the subject of judicial notice (ECF No. 36), a request that Maffick did not oppose or even address.

the label "is determined by a range of factors, including but not limited to funding, structure and journalistic standards," Blavin Decl. ¶¶ 5-6 & Exs. D, E; that every SCME label provides a link to a Help Page stating that "*Facebook defines* state-controlled media as media outlets that *Facebook has determined* are partially or wholly under the editorial control of their government;" and that "Facebook identifies these organizations by using *our definition and standards* to review their ownership, governance, sources of funding, and processes that ensure editorial independence," *id*. ¶¶ 2, 6, 8 & Exs. B, E, G. (emphases added).  Facebook further explains that its definition accounts for how "[g]overnments may exert editorial control over state-controlled media in a range of ways and to different degrees."  *Id*., Ex. B.  As Maffick itself alleges, Facebook considers and weighs at least half a dozen complex factors in making this determination.   Compl. ¶ 24.

As this context makes clear, the SCME label reflects Facebook's own subjective and discretionary assessment of multiple, distinct criteria.  Facebook's views of the relevance and weight of diverse types of evidence are paradigmatic opinions, not falsifiable statements of fact. Because a speaker's ultimate assessment of multiple criteria, based on the speaker's own standards or methodology, cannot be proven false, the courts consistently have held such assessments to be constitutionally protected statements of opinion.  Facebook's Motions cited and discussed many cases applying this standard, and Maffick cites no cases to the contrary.

For example, in *Compuware Corp. v. Moody's Inv. Services, Inc.*, 499 F.3d 520, 522, 529 (6th Cir. 2007), the Sixth Circuit affirmed the dismissal of a defamation claim based on Moody's "*credit rating itself*," because Moody's assessment of a "company's overall creditworthiness" was "dependent on a subjective and discretionary weighing of complex factors."  Similarly, in *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 871 (8th Cir. 2005), the Eighth Circuit affirmed dismissal of defamation claims based on a publisher's statement that an airline carrier had an "unfavorable safety record," where the publisher explained in a report that it "chose which underlying data to prioritize, performed a subjective review of those data, and defined 'safety' relative to its own methodology."  In *Warren Tech, Inc. v. UL LLC*, 962 F.3d 1324, 1326 (11th Cir. 2020), the Eleventh Circuit rejected Lanham Act and other state law claims challenging UL's

1   certification, based on the "interpretation of its own standards," that a competitor's heater complied

2   with such standards.  And in *Botos v. Los Angeles Cty. Bar Assn.*, 151 Cal. App. 3d 1083, 1086 n.3

3   (1984), the California Court of Appeal affirmed dismissal of defamation claims based on a bar

4   association's evaluation that a candidate for judicial office was "not qualified," where the

5   association explained in a report that it considered "professional ability, experience, competence,

6   integrity and temperament indicative of fitness to perform the judicial function satisfactorily."

7            In each of these cases, the challenged statement was a protected statement of opinion

8   because, like the SCME label, it represented the speaker's judgment, interpretation, and assessment

9   of its own criteria and various types of data and evidence.  Nor does it matter, as Maffick suggests,

10  that the criteria themselves may reflect facts, Opp. at 13, because the "weight [Facebook] applies to

11  these facts is not verifiable, as it is reflective of [its] subjective assessment of what is important."  *ZL*

12  *Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 798 (N.D. Cal. 2010), *aff'd sub nom., ZL Techs.,*

13  *Inc. v. Gartner Grp., Inc.*, 433 F. App'x 547 (9th Cir. 2011).  Maffick does not meaningfully respond

14  to or attempt to distinguish this body of caselaw, except to say that these cases are only about

15  "ratings" of businesses.  Opp. at 13.  Not only is that inaccurate—*Warren Tech* involved, for

16  example, a laboratory's certification of compliance with its standards—it is irrelevant because, as

17  Maffick itself argues, "business ratings can support legal claims if they imply a false and defamatory

18  factual assertion."  *Id.*  The key legal question under these cases is whether the challenged speech at

19  issue reflects a qualitative assessment and judgment based on the weighing and application of

20  multiple criteria that is not capable of being proven false—which is precisely the case here.

21           Maffick's efforts to distinguish the SCME label from the speech at issue in *Gardner* and

22  *Knievel* involving "hyperbolic" language, Opp. at 12, is nothing more than a red herring.  Hyperbolic

23  language is only one type of statement that may be constitutionally protected as a statement of

24  opinion.  Even if a statement "lacks hyperbolic or figurative language," it is still nonactionable

25  where, as here, it "explicitly reflects [a party's] interpretation and opinion."  *ZL Techs.*, 709 F. Supp.

26  2d at 798.  As discussed above and in Facebook's Motions, non-hyperbolic statements that reflect

27  the speaker's ultimate assessment of multiple criteria based on the speaker's own methodology, are

28

also constitutionally protected as statements of opinion.  Moreover, Facebook cited *Gardner* for the proposition that a statement of opinion is not actionable under tortious interference, and *Knievel* for the proposition that the statement of opinion analysis looks to the entire context in which a statement is made.  MTD at 5; MTS at 9.  These legal standards are not in dispute.

Finally, Maffick's long-winded analogy to juridical fact-finding, Opp. at 11, is entirely beside the point.  Maffick appears to argue that Facebook's assessment of multiple criteria in the SCME labeling process is a verifiable statement of fact because juries or judges may issue "findings of fact" after engaging in multi-factor analyses.  But Maffick cites no authority for the proposition that juridical "findings of fact" are in any way related to statements by private parties that are actionable as statements of fact under the First Amendment.  Nor does Maffick's proposed equivalence make any sense.  Indeed, jury resolutions of disputed issues of fact are typically *not* falsifiable in the First Amendment sense.  Juries are asked to resolve genuine factual disputes precisely because reasonable persons weighing the same evidence could reach different conclusions based on their views of the relevance, weight, and credibility of such evidence.

Because the label is nonactionable opinion, all of Maffick's claims should be dismissed.

### 2. As Alleged, the Label is Not Commercial Speech and Not Actionable under the Lanham Act or the UCL

As Maffick concedes, Opp. at 14, the Lanham Act (Maffick's only federal claim) and the UCL apply only to commercial speech.  *See* MTD at 10; MTS at 14.  The allegations in the complaint do not support the proposition that the SCME label is commercial speech.  Nor could they.  The label reflects Facebook's effort to increase transparency on its platform and to provide its users with accurate information on a matter of public concern, namely foreign influence in U.S. political discourse.   Maffick's arguments to the contrary ignore the allegations in its own complaint and rely on a breathtakingly expansive definition of commercial speech that has no legal support.

At the outset, Maffick is again wrong, Opp. at 17, in suggesting that the commercial speech inquiry is a factual question for the jury.  It is well-settled that whether speech is commercial under the First Amendment is a question of law for the Court.  *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983) ("Because the degree of protection afforded by the First Amendment depends on

whether the activity sought to be regulated constitutes commercial or non-commercial speech, we must first determine the proper classification of" speech); *Connick v. Myers,* 461 U.S. 138, 148 n.7, 150 n.10 (1983) ("The inquiry into the protected status of speech is one of law, not fact.").[4]

Maffick's core argument is that the SCME label is commercial speech because it was purportedly adopted to "induce users to continue using Facebook, thereby inducing advertisers . . . to advertise on Facebook." Opp. at 17; *id.* at 5 (citing Compl. ¶ 82). Maffick's complaint says *nothing* about Facebook's purported intention to adopt the SCME label as part of an effort to induce advertising on its platform. Rather, it states that Facebook's label is "part of an effort to promote itself as a responsible social media company, at a time when it has been under scrutiny by the press and the federal government concerning whether it has taken sufficient actions to preserve the integrity of U.S. elections from improper social media influence by foreign governments." Compl. ¶ 82. Taking action in response to scrutiny by the U.S. government hardly conveys an intention to induce advertising on the platform. This is no more than attorney argument, made out of thin air.

Even more to the point, it would make no difference if Maffick had alleged that Facebook applied the SCME label as part of a broader campaign to attract more advertisers to its platform, because the SCME label is too attenuated from any commercial transaction. "Commercial speech represents 'expression related solely to the economic interests of the speaker and its audience,' . . . and 'does no more than propose a commercial transaction.'" *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004). Under *Bolger* and the Ninth Circuit cases that have applied it, speech "*could* properly be characterized as commercial when (1) the speech is admittedly advertising, (2) the speech references a specific product, *and* (3) the speaker has an economic motive for engaging in the speech." *Id.* (citing *Bolger*, 463 U.S. at 66-67) (emphasis added).

Here, Maffick fails to allege any facts establishing that the SCME label is (1) an advertisement (2) referencing a product or service that Facebook sells to its customers (advertisers

---

[4] Maffick's cited cases are not to the contrary. In *Bernardo v. Planned Parenthood*, 115 Cal. App. 4th 322, 343 (2004), the court ruled as a matter of law on an anti-SLAPP motion that the speech was noncommercial. In *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 557 (5th Cir. 2001), the court held that to the extent a court's analysis of commercial speech turns on disputed facts, resolution of the facts may be for the jury to resolve. That is not the case here. Even taking Maffick's claim about potential economic motives as true, the label is not commercial speech.

1    on Facebook).  At best, Maffick's argument that Facebook sought to induce advertisers to advertise

2    on Facebook through the label only goes to the third factor of economic motive.  But as *Bolger* held,

3    a speaker's "economic motivation" is "clearly [] insufficient by itself to turn [a statement] into

4    commercial speech."   463 U.S. at 67.  In *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 960,

5    965 (9th Cir. 2012), for example, the Ninth Circuit held that an "economic motive in itself is

6    insufficient to characterize a publication [of speech] as commercial" because "[a] profit motive and

7    the inclusion or creation of noncommercial content in *order to reach a broader audience and attract*

8    *more advertising*" characterizes all media.  Indeed, everything published in a major newspaper—

9    from its editorial page to investigative journalism to sports scores—would be commercial speech

10    under Maffick's wildly expansive definition of the term.  Several other Ninth Circuit cases have held

11    the same.  *E.g., Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1186 (9th Cir. 2001) (claim that

12    article was "intended in part to 'rev up' the magazine's profile" did not make article commercial

13    speech); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) ("even assuming IMDb has

14    a financial interest in its public profiles, these profiles are not commercial speech" because "nothing

15    in the record indicates that IMDb.com profiles either (1) are an advertisement or (2) refer to a

16    particular product").  These controlling authorities foreclose Maffick's commercial speech argument.

17         Maffick's reliance on *Kasky* and *Demetriades,* Opp. at 14-17, is misconceived.  It is self-

18    evident that Facebook's assessment that Maffick is state-controlled media pertains to *Maffick*'s

19    editorial independence.  It is not a "factual representation[] about a product or service that

20    [*Facebook*] offer[s] for sale."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 967 (2002); *Demetriades*, 228

21    Cal. App. 4th at 311 ("Yelp's statements about the efficacy of its review filter consist of

22    representations of fact about its services.").  *Kasky* and *Demetriades* both involved defendant's

23    statements in advertising to customers about specific products or services that the defendants were

24    selling.  In *Kasky*, Nike bought "full-page advertisements" and sent "a letter to university presidents

25    and athletic directors," who were "major purchasers of athletic shoes and apparel," making factual

26    representations about the labor and working conditions under which Nike's shoes and apparel were

27    manufactured.  27 Cal. 4th at 963.  As discussed above, *Demetriades* involved Yelp's statements

28

"about the quality of its product (the reliability of its review filter)," 228 Cal. App. 4th at 310, that were challenged by a business that purchased advertising on Yelp in reliance on those statements.

Unlike Nike's statements to potential buyers about its shoes, or Yelp's statements to potential advertisers about its review filter, the SCME label is neither about Facebook nor directed to potential purchasers of a product that Facebook sells. Rather, as Maffick alleges, *supra* at 3, the SCME label is a statement about Maffick's business, accessible to the general public on Facebook. *See Bernardo*, 115 Cal. App. 4th at 349 (for purposes of commercial speech analysis, "statements [that] were published on the Internet, on Web sites accessible by the general public, [] were not directed to any particular audience"). Maffick's argument is that the SCME label is nevertheless commercial speech because the label is connected to the SCME policy, which is intended to enhance Facebook's image with its users, which will thereby increase Facebook's attractiveness to advertisers, who might therefore increase their advertising business with Facebook. This roundabout path Maffick traces from the SCME label to the possibility of future revenue is far "too attenuated to render [the label] commercial." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 678 (9th Cir. 2005).

And neither *Kasky* nor *Demetriades* nor any other case supports such a broad definition of commercial speech—one that would transform any statement by any company on any topic of public importance into unprotected speech. As the cases cited above make clear, that is not the law. When a company offers its subjective judgments about matters of public concern, as Facebook has done here, it is engaged in non-commercial speech that is fully protected by the First Amendment.

### 3. Maffick Does Not Allege Actual Malice

#### (a) Maffick Is A Limited Purpose Public Figure

Maffick engages in political discourse and it actively promotes that content, which is the subject of the SCME label. Indeed, Maffick's speech includes a statement about its affiliation with RT. Maffick's efforts to increase its visibility and participation in public debate about current affairs, including foreign influence in U.S. politics, makes it a limited purpose public figure here.

Maffick's argument to the contrary misconstrues the limited purpose public figure analysis. Maffick says that it is not a limited purpose public figure unless it has made "active efforts to influence the outcome of the particular controversy giving rise to the defamation." Opp. at 20.

1   That is incorrect.  Courts in this jurisdiction have repeatedly held that the limited purpose public

2   figure inquiry is not restricted to the "particular controversy giving rise to the defamation," and

3   instead considers the plaintiff's public participation in the field more generally.  *E.g., Resolute*

4   *Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1017 (N.D. Cal. 2017) (plaintiff's

5   "public…work in forestry and sustainability" made it a limited purpose public figure in suit

6   challenging statements about plaintiff's practices in that industry); *Roe v. Doe*, 2009 WL 1883752,

7   at *13 (N.D. Cal. June 30, 2009) (plaintiff was limited purpose public figure in suit challenging

8   statements that "arose out of the performance of the public role he voluntarily undertook").

9       Here, Maffick meets that standard in several ways.[5]  First, Maffick has injected itself into

10   public discourse by regularly publishing content on its Facebook Pages that directly seeks to

11   influence public debate.  Compl. ¶¶ 11, 13 (Maffick publishes on Facebook "important, curious and

12   purpose-driven content" on issues like "social justice" and "delivers political opinion and seeks to

13   expose hypocrisy across the political spectrum.").  That content includes discussions of U.S. foreign

14   policy and often plays on political tensions in the U.S.  ECF No. 9, Ex. E at 2.  Maffick's efforts to

15   influence the public debate on such issues render it a limited public figure.  *E.g., Cummins v.*

16   *Lollar*, 2012 WL 12885117, at *5 (C.D. Cal. Nov. 16, 2012) (plaintiff a limited public figure as

17   "postings on the Internet evidence her voluntary acts seeking to … influence the public debate");

18   *Resolute Forest*, 302 F. Supp. 3d at 1017 ("Resolute's own allegations about their world-wide reach

19   and influence…show that the company is a limited public figure").  Indeed, Maffick's publication

20   of that content is the subject of the SCME label that gives rise to this action.

21       In addition, Maffick has made public statements about the very controversy in this case—its

22   relationship with RT and the Russian government—stating on its own Facebook Pages that it is

23   "Affiliated with RT."  Compl. ¶ 21.  Likewise, its CEO, Anissa Naouai, has made public statements

24   about Maffick's affiliation with the Russian government and the effect of that relationship on

25   Maffick's Facebook pages.  ECF No. 9 at 2-3.  These public statements by Maffick are more than

26

27   _____

28   [5] Maffick's claim that it is a "private entity," Opp. at 21, is beside the point.  Under the Supreme
    Court's defamation jurisprudence, a "public figure" (as distinct from a "public official") is a private
    entity by definition.

-13-   Case No. 3:20-cv-05222-JD

DEFENDANT'S COMBINED REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS

1   sufficient to establish it as a limited purpose public figure for purposes of a lawsuit concerning

2   Facebook's assessment of foreign government influence on the content of Maffick's Pages.

3         Finally, Maffick actively promotes the product that is the subject of the SCME label, namely

4   its Facebook content, and that promotion too makes it a limited purpose public figure.  Compl. ¶ 10.

5   Maffick's efforts in this regard have included public statements about this lawsuit.  ECF No. 9 at 1

6   n.2.  As the Ninth Circuit and other courts have held, "[a]dvertising, conducted on a large scale and

7   addressing or creating a public controversy," is one way that a company can become a limited

8   purpose public figure.  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 268 (9th Cir. 2013); *see Steaks*

9   *Unlimited, Inc. v. Deaner*, 623 F.2d 264, 274 (3d Cir. 1980) (party a limited purpose public figure in

10  suit challenging statements about quality of products given its advertising promoting these products).

11        *(b)     Maffick Has Failed To Allege Actual Malice*

12        Maffick does not dispute that the First Amendment's actual malice requirement applies to *all*

13  of Maffick's claims, and that actual malice must be pled with specificity.  MTS at 9; MTD at 8 n.7.

14  Nor does Maffick dispute that its only allegations related to actual malice consist of its own self-

15  serving denials, the sort of evidence courts consistently have held insufficient as a matter of law.

16  Instead, Maffick attempts to distort both the facts and the law to obscure these obvious deficiencies.

17        Thus, Maffick says that Facebook relied on "obsolete hearsay" and refused to consider

18  "evidence" contrary to its position.  Opp. at 22.[6]  That is incorrect.  As this Court noted in its order

19  denying Maffick's application for a TRO, Facebook "has tendered a substantial amount of evidence

20  in support of its view that Maffick is linked to the Russian government."  ECF No. 29 at 3.  Indeed,

21  Maffick itself alleges that it is affiliated with RT (Compl. ¶ 21) and its Pages still host massive

22  amounts of content published between January 2014 and July 2019, a *five-and-a-half year period*

23  when it was indisputably majority-owned by an RT subsidiary.  And the "evidence" Maffick

24  references from its complaint consists of, as the Court held in its TRO order, "purely conclusory

25  statements to the effect that Maffick is free and clear of Maffick Media and Russia."  *Id.* at 4; *see*

26

27  ───────────────────
    [6] Maffick references "evidence" it says supports its position but that it has never presented to

28  Facebook.  Opp. at 1, 6.  As Facebook repeatedly has advised Maffick, Decl. of John Ulin Ex. 3,
    ECF No. 3-3, Facebook is willing to consider additional evidence from Maffick at any time.

*also* Compl. ¶ 54 ("Facebook knows that Maffick is not a Russia state-controlled media entity and has been provided with information regarding Maffick's true nature, ownership structure and operations.").  But for actual malice purposes, a speaker "need not believe self-serving denials, 'as such denials are so commonplace in the world of polemical charge and countercharge.'"  *Harris v. City of Seattle*, 152 F. App'x 565, 569 (9th Cir. 2005)  Otherwise, the standard would be meaningless, as any public figure could simply deny a statement and then point to the defendant's refusal to accept the denial as evidence of a reckless disregard for the truth.

Finally, Maffick's suggestion that actual malice cannot be resolved at the motion to dismiss stage, Opp. at 23, is just wrong.  On the contrary, as discussed in Facebook's motions, courts in this District routinely grant motions to dismiss where the complaint does not include specific allegations that would support a claim of actual malice.  For purposes of this inquiry, "the court must 'disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are insufficient to support a cause of action.'"  *Resolute Forest*, 302 F. Supp. 3d at 1018 (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703-04 (11th Cir. 2016) (quoting in turn *Ashcroft v. Iqbal*, 556 U.S. 662, 678) (2009)).  This is a "demanding burden" because "general allegations that a defendant should have known or should have investigated the truth of his or her statements do not adequately plead actual malice."  *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).  The cases cited by Maffick (*Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002); *Church of Scientology Int'l. v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001)) predate the Supreme Court's decision in *Iqbal* upon which *Resolute Forest* and *Wynn* relied.  Maffick's conclusory allegations of actual malice are legally insufficient.

(c)      *The Actual Malice Rule Applies to a Request for Injunctive Relief*

Maffick's contention that the actual malice standard does not apply to a request for injunctive relief, Opp. at 23, is incorrect.  Courts in this jurisdiction have routinely dismissed or granted summary judgment on defamation claims seeking injunctive relief as well as damages on actual malice grounds.  *E.g., Resolute Forest*, 302 F. Supp. 3d at 1020 (granting motion to dismiss

defamation claim "for failure to state a claim showing actual malice" where plaintiff sought both damages and an injunction); *Kournikova v. Gen. Media Commc'ns. Inc.*, 278 F. Supp. 2d 1111 (C.D. Cal. 2003) (granting summary judgment to defendant on actual malice grounds in suit seeking damages and injunctive relief); *Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal. 1998) (same). If Maffick were correct that the actual malice standard does not apply to a request for injunctive relief, then all of these cases should have been decided differently.

Unsurprisingly, there is no legal support for this novel proposition. The case upon which Maffick primarily relies, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), had nothing to do with injunctions. There, the Supreme Court held that the actual malice standard does not apply to a suit brought by a non-public figure against a publisher, unless the plaintiff seeks punitive damages. *Id.* at 332, 350. *Gertz* did not hold, or even suggest, that the actual malice standard would not apply to a suit brought by a public figure requesting an injunction. And Facebook is aware of no case in the 46 years since *Gertz* was decided where a court has applied that case as Maffick suggests.

The other case cited by Maffick, *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141 (2007), also does not support its position. In that case, the California Supreme Court held that an injunction issued after a defamation trial was overly broad. *Balboa Island* does not mention the actual malice standard, let alone hold or even suggest that the actual malice standard would not apply to a defamation action seeking an injunction brought by a limited purpose public figure.

### 4.    Maffick's Tortious Interference Claims Fail

Apart from being barred by the First Amendment, Maffick's tortious interference claims also fail because Maffick has failed to "identify" any "existing economic relationship that has been disrupted." *Bio-Medical Rsch. Ltd. v. Thane Int'l, Inc.*, 249 F. App'x 539, 542 (9th Cir. 2007). Accordingly, "multiple district courts have set aside tortious interference" claims "where no specific parties . . . were alleged." *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *17 (N.D. Cal. Nov. 11, 2016) (California law "requir[es] the identification of specific parties . . . for both tortious interference with prospective economic advantage and tortious interference with contract."); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1144 (N.D. Cal. 2010) ("DocMagic does

1   not identify any particular relationship that was disrupted because of Ellie Mae's actions").

2        Maffick does not even attempt to argue that its allegations meets this standard.  Instead, it

3   simply refers to a list of "branded content partners" and "content providers" in a supplemental

4   affidavit filed with its TRO reply and states that all (or some) of these partnerships "are in serious

5   jeopardy" as a result of the label.  Opp. at 25.  This is insufficient.  Maffick was required to identify

6   specific economic relationships with which Facebook is alleged to have interfered, and allege facts

7   that would establish that Facebook *knew* about these relationships and caused their disruption.

8   Maffick has not done so, and its tortious interference claims should be dismissed.

9        Maffick fares no better with its assertion that it "has been unable to develop new

10  partnerships since the Notice was published." *Id.*  "The tort of interference with prospective

11  economic advantage does not…protect mere 'potential' relationships—which are 'at most a hope

12  for an economic relationship and a desire for a future benefit.'" *Bio-Med. Rsch.*, 249 F. App'x at

13  542 (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996)).

14  Maffick's vague references to "new partnerships" do not sufficiently identify a particular

15  prospective economic relationship with which Facebook is alleged to have interfered.

16       **5.**    **Maffick Fails to Allege Standing or Actionable Conduct Under the UCL**

17       Maffick's UCL claim should also be dismissed because Maffick has failed to adequately

18  allege that it lost any money or property as a result of the SCME label.  In a footnote, Maffick

19  simply repeats the conclusory assertion that it lost "monetization and other revenues from its social

20  media pages as a result of the Notice."  Opp. at 17 n.4.  As the authorities cited in the motions make

21  clear, such a "conclusory" allegation is insufficient to plead a "causal link" between the defendant's

22  alleged conduct and the plaintiff's purported injury.  *Greene v. Wells Fargo Bank, N.A.*, 2019 WL

23  1331027, at *10 (N.D. Cal. Mar. 25, 2019).  Further, because the label is not a statement of

24  objective fact that is capable of being proved false, it is not unlawful, unfair, or fraudulent conduct.

25  *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039-40 (N.D. Cal. 2014).

26  **III.**    **CONCLUSION**

27       Facebook's anti-SLAPP motion to strike and motion to dismiss should be granted.

28

1    DATED:  September 25, 2020                    MUNGER, TOLLES & OLSON LLP

2

3                                                  By:   */s/ Jonathan H. Blavin*
                                                         JONATHAN H. BLAVIN
4                                                  Attorneys for Facebook, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S COMBINED REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS