UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAFFICK LLC,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>FACEBOOK, INC.,<br><br>　　　　　　Defendant. | Case No. 20-cv-05222-JD<br><br>**ORDER RE MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 34, 35 |

Plaintiff Maffick LLC runs social media pages on defendant Facebook, Inc.'s platform. These pages consist of "In the Now," "Waste-Ed," and "Soapbox." Facebook concluded that Maffick was under the editorial control of the Russian government, and posted an advisory comment on the Maffick pages identifying them as "Russia state-controlled media." Maffick objected to this characterization, and sued Facebook predominantly on California state law claims of defamation, interference with contractual and economic relations, and unfair competition under Cal. Bus. & Prof. Code Section 17200 *et seq*. (UCL). Dkt. No. 1. It also alleged a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which is the sole basis for subject matter jurisdiction in this Court. Dkt. No. 1 ¶ 8.

With the complaint, Maffick filed an application for a temporary retraining order requiring Facebook to take down the advisory comment. The Court denied the application because Maffick had not demonstrated that it was likely to succeed on the merits of showing that the "Russia state-controlled media" comment was false. Dkt. No. 29. That conclusion was based in large measure on unrebutted evidence establishing that Maffick had multiple ties to the Russian government and known Russian propaganda outlets. *Id*. at 3-4.

Facebook has asked to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), and to strike the state law claims under the California Anti-SLAPP statute, Cal. Code of Civil Procedure § 425.16. Dkt. Nos. 34 (motion to dismiss), 35 (motion to strike). After discussing the motions with the parties at a hearing, Dkt. No. 52, the Court has concluded that the only issue that requires resolution at this time is whether the complaint plausibly alleges a Lanham Act claim. It does not, and so the complaint is dismissed with leave to amend. Because the Lanham Act claim was the sole basis of federal jurisdiction, the Court declines to exercise supplemental jurisdiction over the state law claims until a plausible federal claim is alleged.

## BACKGROUND

As alleged in the complaint, plaintiff Maffick LLC is a limited liability company organized under the laws of the State of Delaware and it engages in social media and e-commerce. Dkt. No. 1 ¶¶ 1-3. Its principal place of business is in Los Angeles, California, and its sole member, Anissa Naouai, lives in Los Angeles. *Id*.

Maffick's pages on Facebook provide a variety of content. The "In the Now" page "tells stories about social justice, everyday heroism, acts of kindness and doing good." The "Waste-Ed" page "focuses on environmental issues and sustainability." The "Soapbox" page "delivers political opinion and seeks to expose hypocrisy across the political spectrum." *Id*. ¶¶ 11-13.

In June 2020, Facebook "published a notice on the 'Page Transparency' section of In the Now, Waste-Ed, and Soapbox, indicating that each page is 'Russia state-controlled media.'" *Id*. ¶ 25. That notice "now appears on every social media post by In the Now, Waste-Ed, and Soapbox." *Id*. ¶ 26. Maffick says that the notice is false, and that it "has caused and will continue to cause immediate and irreparable harm to Maffick's reputation, its ongoing business relationships, and the viability of several current business development opportunities." *Id*. ¶¶ 46-47.

The complaint alleges claims for: (1) libel per se; (2) intentional interference with contractual relations; (3) intentional interference with prospective economic relations; (4) negligent interference with prospective economic relations; (5) violation of Section 43(a) of the Lanham Act; and (6) unfair competition under the UCL. Dkt. No. 1 ¶¶ 49-91. Subject matter

1  jurisdiction is premised on a federal question raised by the Lanham Act claim. *See id.* ¶ 8
2  ("Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1337."). Diversity jurisdiction is unavailable
3  because the complaint alleges that Facebook, like Maffick, is incorporated in Delaware and has its
4  principal place of business in California. *Id.* ¶ 4.

5        The Court took up Maffick's application for a TRO in short order after the complaint was
6  filed. Dkt. No. 3. A TRO was denied because Facebook had "tendered a substantial amount of
7  evidence in support of its view that Maffick is linked to the Russian government." Dkt. No. 29 at
8  3. In addition, "[e]ven assuming that the 'Russia state-controlled media' label is a statement of
9  fact -- and not merely an opinion, as Facebook contends -- the record before the Court
10 establishe[d] only that the question of falsity is disputed." *Id.* Consequently, a TRO was not
11 warranted because Maffick had failed to establish a "likelihood of success on the merits" or even
12 "a 'serious question' for injunctive purposes," and it had also failed to demonstrate irreparable
13 harm. *Id.* at 4-6. Facebook moved to dismiss and to strike after the TRO proceedings.

**DISCUSSION**

**I.  MOTION TO DISMISS**

    **A.  The Lanham Act Claim**

17       Although the complaint alleges six causes of action, the fifth claim under Section 43(a) of
18 the Lanham Act is the main event for present purposes. That is because "[f]ederal courts are
19 courts of limited jurisdiction," possessing "only that power authorized by Constitution and
20 statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). If there is no
21 plausible basis for a Lanham Act claim, the Court would lack jurisdiction over the case, and
22 Maffick would need to proceed in California state court.

23       Determining the plausibility of Maffick's Lanham Act claim begins with the plain text of
24 the statute itself. As the Supreme Court has noted, the interests protected by the Lanham Act are
25 illuminated by "an unusual, and extraordinarily helpful, detailed statement" of the statute's goals
26 and purposes provided by Congress. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572
27 U.S. 118, 131 (2014) (internal quotations omitted). This statement expresses in pertinent part
28 Congress's intent to regulate commerce within its control by "making actionable the deceptive and

3

misleading use of marks in such commerce" and "to protect persons engaged in such commerce against unfair competition." *Id*. (quoting 15 U.S.C. § 1127).

The Lanham Act is primarily a trademark protection statute designed to prevent opportunistic business from trading on the brand identity and reputation of competitors by exploiting their marks. Section 43(a), which is the basis of Maffick's claim, "is one of the few provisions that goes beyond" trademark misuse. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). Section 43(a) addresses two types of unfair trade practices: (1) false association under Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), which arises when a person uses, in connection with goods or services, a false designation of origin or false or misleading representation of fact which is likely to cause confusion or deception about the origin, sponsorship, or approval of that person's goods, or their association with another person; and (2) false advertising under Section 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B), which arises when a person misrepresents, in commercial advertising or promotion, "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." *See also Lexmark*, 572 U.S. at 122. Maffick seeks to allege a Lanham Act claim under both subsections. *See* Dkt. No. 1 ¶ 82 (alleging "violation of Section 43(a)(1)(A)"); ¶ 83 (alleging violation of "Section 43(a)(1)(B)").

Section 43(a) has its limits. It is not a boundless remedy for unfair trade practices in all their multivarious forms, or "a federal 'codification' of the overall law of 'unfair competition,'" but applies only to the trade practices that it specifically prohibits. *Dastar*, 539 U.S. at 29. The prohibited practices in turn must be associated with the sale of goods and services. Section 43(a)(1) of the Lanham Act imposes civil liability on a person who, "on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name," and the like, to commit a practice prohibited by subsections (a)(1)(A) and (a)(1)(B). Our circuit has determined that "'[u]se in commerce' is simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause," and that the substantive requirement is that "[the] use was 'in connection with a sale of goods or services' rather than a 'use in commerce.'" *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).

4

Put plainly, the Lanham Act guards against commercial transactions in which a person tries to profit by unfairly trading on the good will another has built up in her goods or services, or by mischaracterizing goods and services to divert sales to himself. *Bosley*, 403 F.3d at 679; *see also Dastar*, 539 U.S. at 32 (Section 43(a) prohibits actions "that deceive consumers and impair a producer's goodwill."). Conduct that is not commercial, and does not involve the sale of goods and services, is outside the "dangers that the Lanham Act was designed to address," and consequently not actionable under Section 43(a). *Bosley*, 403 F.3d at 679.

With these principles in mind, it is hard to see how the Lanham Act might apply to Maffick in this case. To start, it is not at all clear what line of business Maffick is in. Maffick alleges that its Facebook pages provide social media content ranging from feel-good stories about "a delivery man who received a surprise gift from a customer" and "an eleven-year-old who recycled nearly one million cans," to "political opinion" pieces about Nelson Mandela and racial disparities in prison sentences. Dkt. No. 1 at ¶¶ 11-13. There is no obvious connection between this content and the sale of goods or services. The complaint certainly does not provide any facts that plausibly bridge this gap. It makes a few highly general allegations about "e-commerce merchandise" and "monetization of media content," *see id.* ¶ 10, but never puts any factual meat on those bare bones. Nor does the complaint plausibly allege that Facebook's Russian state-controlled media advisory label was commercial conduct that diverted sales away from Maffick, allowed Facebook to profit from Maffick's business goodwill, or otherwise amounted to the type of unfair conduct prohibited by Section 43(a).

A comparison of Maffick's allegations with Section 43(a) puts a finer point on the inadequacy of the complaint. At the hearing on the motions, Maffick said its Section 43(a)(1)(A) for false association "addresses the aspect of Facebook's statement -- Maffick is Russian state-controlled media -- that is about Maffick." Dkt. No. 52 at 15:8-10. In Maffick's view, this "is a false or misleading statement of fact . . . that is likely to lead to confusion about the qualities and geographic origin and sponsorship of Maffick's social media . . . pages." *Id*. at 15:10-14; Dkt. No. 1 ¶ 82. But that concern does not fit the statutory language of Section 43(a)(1)(A), or the type of practices it prohibits. The section makes liable "[a]ny person," which is Facebook here, who

uses a false or misleading description of fact that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person [meaning Facebook] with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." That is not what Maffick is claiming, and Maffick's version of false association is outside the plain language of Section 43(a)(1)(A). By posting the Russia media advisory comment, Facebook is certainly not making a false representation of origin or sponsorship about its own goods or services, and such a claim would be inherently implausible. The "Russia state-controlled media" advisory clearly applies only to the content that was created and posted by Maffick, and not to Facebook itself.

The Section 43(a)(1)(B) claim for false advertising is equally unavailing. To state a plausible claim, Maffick was required to allege a misrepresentation by Facebook that was made "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Maffick's main allegation on that score is that Facebook identified Maffick as "'Russia state-controlled media' as part of a campaign intended to promote Facebook's image as a responsible social media company." Dkt. No. 1 ¶ 83. That will not do for Lanham Act pleading purposes. Maffick's statement is nothing more than its own characterization of Facebook's conduct, and not a statement of fact on which a plausible claim might stand. In addition, nothing in the complaint ties Facebook's alleged virtue-signaling speech to anything that might amount to a commercial ad or promotion of Facebook's platform.

For these reasons, a conceptually similar claim against YouTube was readily rejected in recent litigation. *See Prager University v. Google LLC*, 951 F.3d 991 (9th Cir. 2020). YouTube had "tagged several dozen of PragerU's videos as appropriate for the Restricted Mode," which, "when activated by a user, makes unavailable certain age-inappropriate content." *Id.* at 996. In affirming the district court's dismissal of Prager University's Lanham Act false advertising claim, the circuit had no trouble concluding that "PragerU did not allege any facts to overcome the commonsense conclusion that representations related to Restricted Mode, such as those in the terms of service, community guidelines, and contracts are not advertisements or a promotional campaign." *Id*. at 1000. "The statements about Restricted Mode were made to explain a user tool,

not for a promotional purpose to 'penetrate the relevant market' of the viewing public." *Id*. (citations omitted).

So too, here. Maffick has not alleged that Facebook attached the "Russia state-controlled media" label to "penetrate the relevant market," whatever that might be, nor has Maffick alleged any facts to overcome the "commonsense conclusion" that neither the label itself nor Facebook's "campaign" around it constituted an advertisement or promotion as required by Section 43(a)(1)(B).

To be sure, a Lanham Act claim does not demand that Maffick and Facebook be direct competitors or in direct competition in a market. The Supreme Court made clear in *Lexmark* that there is no "direct-competitor test" to determine standing to sue under Section 43(a). *Lexmark*, 572 U.S. at 136. But that by no means reads a commercial conduct element out of the Lanham Act. *Lexmark* expressly rejected the proposition that the language in Section 43(a) stating that "any person who believes that he or she is likely to be damaged" allows anyone claiming unfair conduct to sue. *Id*. at 129. "Read literally, that broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III," but "the unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that [§ 1125(a)] should not get such an expansive reading." *Id*. (quotations omitted).

In lieu of a direct competitor requirement, the Supreme Court determined that a commercial "zone-of-interests test" and a "proximate-cause requirement" supply the limits on who may sue under the Lanham Act. *Lexmark*, 572 U.S. at 134. Maffick comes up short on each count. To be within the zone of interests of Section 43(a), "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*. at 131-32. The plaintiff in *Lexmark* qualified because it alleged injuries of "lost sales and damage to its business reputation," which were "injuries to precisely the sorts of commercial interests the Act protects." *Id*. at 137. The plaintiff was suing "not as a deceived consumer, but as a 'perso[n] engaged in' 'commerce within the control of Congress' whose position in the marketplace has been damaged by Lexmark's false advertising." *Id*. Maffick presents no similarly plausible allegations here. It merely glances at commercial injury with conclusory comments that "monetization of its social media content

7

(through advertising, e-commerce and otherwise) is down" and that its "'reach,' a metric that measures the number of people who encounter its social media content, is down." Dkt. No. 1 ¶ 48. What being "down" might mean commercially is left unsaid, and such shapeless allegations of harm do not satisfy the requirement that a Section 43(a) plaintiff "must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation." *Lexmark*, 572 U.S. at 140.

Maffick also failed to adequately plead that its ostensible commercial injuries were proximately caused by Facebook. Maffick again did not need to allege the "diversion of sales to a direct competitor," or direct competition generally, for a claim of reputational injury from disparagement. *Lexmark*, 572 U.S. at 138. But the reputational injury must still be of a commercial nature and clearly flow from the disparagement. *Lexmark* underscored this point by observing that the plaintiff's "allegations suggest[ed] that if the remanufacturers sold 10,000 fewer refurbished cartridges because of Lexmark's false advertising, then it would follow more or less automatically that [the plaintiff] sold 10,000 fewer microchips for the same reason, without the need for any 'speculative . . . proceedings' or 'intricate, uncertain inquiries.'" *Id*. at 140.

Maffick alleged nothing of this sort in its complaint. All it said was that "Facebook's false and misleading labeling of Maffick has actually deceived and has the tendency to deceive a substantial segment of the public and is material in that it is likely to influence economic decisions by Maffick's existing and potential customers and business relations. Facebook has thus caused and threatened to cause Maffick significant reputational harm and damage to its business interests, including lost sales." Dkt. No. 1 ¶ 84. This is ipse dixit and not the pleading of facts. It is also a far cry from *Lexmark*, where "the causal chain linking [the plaintiff's] injuries to consumer confusion [was] not direct" but it was nevertheless clear how the injury to the remanufacturers translated to "something very close to a 1:1 relationship" to an injury to the plaintiff. *Lexmark*, 572 U.S. at 139. In contrast, Maffick provided no clues about how the alleged deception of the public by the "Russia state-controlled media" label might have affected the "economic decisions by Maffick's existing and potential customers," whoever they might be, and how those "decisions" caused a commercial injury to Maffick's sales or business reputation.

1   Maffick did not have much to offer in response to any of these issues. In its opposition
2   brief and at the hearing, Maffick relied heavily on two California state cases, *Kasky v. Nike, Inc.*,
3   27 Cal. 4th 939 (2002), and *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294 (2014), as ostensible
4   support of the Lanham Act claim. *See* Dkt. No. 39 at 14-18; Dkt. No. 52 at 6:11-21 & 17:8-18:17.
5   In addition to being non-binding on the Court on any issue of federal law, neither *Kasky* nor
6   *Demetriades* involved a Lanham Act claim, or even mentioned it in passing. Both cases discussed
7   "commercial speech" in completely unrelated legal contexts, and consequently are of no help to
8   Maffick in establishing the soundness of its Lanham Act claim. After coming up short on the law,
9   Maffick suggested that "Facebook's commercial motivations and the issue of whether the Notice
10  and the promotion of the SCME policy of which it is a part constitute commercial speech are fact
11  questions, on which Maffick is entitled to take discovery and present evidence before they are
12  resolved on the merits." Dkt. No. 39 at 17. But the Lanham Act does not confer a special license
13  to shoot first, and ask questions later. A plaintiff suing under the Lanham Act is no different from
14  any other plaintiff, and must plausibly allege a claim "at the pleading stage in order for the case to
15  proceed." *Lexmark*, 572 U.S. at 134 n.6. Maffick has failed to do so.

### B. State Law Claims

The complaint consists primarily of claims under California state law. Dkt. No. 1 ¶¶ 49-77, 86-91. Because the Court has dismissed the only federal claim, it declines to exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367(c)(3); *Parra v. PacifiCare of Arizona, Inc.*, 715 F.3d 1146, 1156 (9th Cir. 2013).

## II. SPECIAL MOTION TO STRIKE

In light of the dismissal under Rule 12(b)(6) and 12(h)(3), Facebook's special motion to strike under the anti-SLAPP statute is denied as moot.

## CONCLUSION

The complaint is dismissed without prejudice. Maffick may file an amended complaint consistent with this order by June 11, 2021. The amended complaint may not add any new claims

//
//

9

or defendants without express leave of Court.  Failure to amend by the deadline will result in a dismissal under Rule 41(b).

**IT IS SO ORDERED.**

Dated:  May 11, 2021

JAMES DONATO
United States District Judge